FILED
JAMES J. WALDRON

SEP 2 0 2001

U.S. BANKRUPTCY COURT
CAMDEN, NJ

BY _____ DEPUTY

UNITED STATES BANKRUPTCY COURT
DISTRICT OF DELAWARE

-----------------------------------------------------x
                                                    :
In re                                               :     Chapter 11 Case No.
                                                    :
GENESIS HEALTH VENTURES INC., *et al.*,             :     00-2692 (JHW)
                                                    :
                        Debtors.                    :
                                                    :     (Jointly Administered)
-----------------------------------------------------x
                                                    :
In re                                               :     Chapter 11 Case No.
                                                    :
MULTICARE AMC, INC., *et al.*,                      :     00-2494 (JHW)
                                                    :
                        Debtors.                    :
                                                    :     (Jointly Administered)
-----------------------------------------------------x

FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER
UNDER 11 U.S.C. § 1129(a) AND (b) AND FED. R. BANKR. P. 3020
CONFIRMING DEBTORS' JOINT PLAN OF REORGANIZATION

# TABLE OF CONTENTS

FINDINGS OF FACT AND CONCLUSIONS OF LAW.................................................... 7

1. Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a))................................................................................................................... 7

2. Judicial Notice ............................................................................................................. 7

3. Burden of Proof............................................................................................................ 7

4. Transmittal and Mailing of Materials; Notice .......................................................... 7

5. Voting ........................................................................................................................... 8

6. Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(l)) ........................ 8

    (a)    Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)) .............................. 8

    (b)    Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).......................... 9

    (c)    Specified Treatment of Impaired Classes (11 U.S.C. §1123(a)(3))........... 9

    (d)    No Discrimination (11 U.S.C. § 1123(a)(4)) ............................................. 9

    (e)    Implementation of Plan (11 U.S.C. § 1123(a)(5)) ...................................... 9

    (f)    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)) ........................... 9

    (g)    Designation of Directors (11 U.S.C. § 1123(a)(7)) ................................. 10

    (h)    Additional Plan Provisions (11 U.S.C. § 1123(b)) .................................. 10

    (i)    Bankruptcy Rule 3016(a) ......................................................................... 10

7. Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)) ............. 10

8. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))......................................... 10

9. Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)) ............ 11

10. Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5))................................... 11

11. No Rate Changes (11 U.S.C. § 1129(a)(6)) ............................................................ 11

12. Best Interests of Creditors (11 U.S.C. § 1129(a)(7)) ............................................ 12

13. Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))...................................... 12

14. Treatment of Administrative and Tax Claims (11 U.S.C. § 1129(a)(9))............. 13

15. Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10)) ................................ 13

16. Feasibility (11 U.S.C. § 1129(a)(11)) ..................................................................... 13

17. Payment of Fees (11 U.S.C. § 1129(a)(12)) ........................................................... 14

18. Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))................................. 14

19. Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)) ............... 14

i

# TABLE OF CONTENTS
## (continued)

20. Principal Purpose of the Plan (11 U.S.C. § 1129(d)) ........................................... 15
21. Modifications to the Plan ..................................................................................... 15
22. Good Faith Solicitation (11 U.S.C. § 1125(e)) .................................................... 15
23. Assumption and Rejection .................................................................................... 16
24. Deemed Consolidation .......................................................................................... 16
25. Genesis/Multicare Settlement .............................................................................. 16
26. Synthetic Lease ..................................................................................................... 17
27. Satisfaction of Confirmation Requirements ........................................................ 17
28. Retention of Jurisdiction ...................................................................................... 17
DECREES ........................................................................................................................ 17
29. Technical Amendments ......................................................................................... 17
30. Confirmation ......................................................................................................... 17
31. Objections .............................................................................................................. 18
    (a)   THCI Objection .......................................................................................... 18
    (b)   Commonwealth of Pennsylvania, Department of Revenue Objection ................................................................................................... 19
    (c)   Massachusetts Housing Finance Agency Objection ................................. 19
    (d)   JSM Objection .......................................................................................... 19
32. Plan Classification Controlling ............................................................................. 21
33. Binding Effect ....................................................................................................... 21
34. Service ................................................................................................................... 21
35. Vesting of Assets (11 U.S.C. § 1141(b), (c)) ...................................................... 22
36. Assumption or Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. §1123(b)(2)) ...................................................................................... 22
37. Assumption of Cardinal Agreement ..................................................................... 23
38. Bar Date for Rejection Damage Claims ............................................................... 23
39. General Authorizations ......................................................................................... 24
40. Corporate Action ................................................................................................... 25
41. Synthetic Lease Lenders ....................................................................................... 25
42. Annual Meeting of Shareholders .......................................................................... 26

# TABLE OF CONTENTS
## (continued)

Page

43. Issuance of New Securities .................................................................................. 26

44. Securities Laws Exemption.................................................................................. 26

45. Deemed Consolidation ........................................................................................ 26

46. DIP Credit Agreements........................................................................................ 29

47. Exit Financing Facility......................................................................................... 30

48. Plan Supplement .................................................................................................. 30

49. Governmental Approvals Not Required .............................................................. 31

50. Exemption from Certain Taxes............................................................................ 31

51. Distributions on Account of Genesis Senior Lender Claims, Genesis General Unsecured Claims, Genesis Senior Subordinated Note Claims, Multicare Senior Lender Claims, Multicare General Unsecured Claims, and Multicare Senior Subordinated Note Claims ................................................. 32

52. Waiver of Subordination...................................................................................... 33

53. Final Fee Applications ........................................................................................ 34

54. Discharge of Claims and Termination of Equity Interests.................................. 35

55. Discharge of Debtors ........................................................................................... 36

56. Indenture Trustees' Fees and Expenses .............................................................. 36

57. Survival of Corporate Indemnitees ..................................................................... 37

58. Releases, Exculpations, and Injunctions ............................................................ 37

59. Subsidiary Guaranties ......................................................................................... 38

60. Termination of Injunctions and Automatic Stay................................................. 38

61. Cancellation of Existing Securities and Agreements.......................................... 39

62. Nonoccurrence of Effective Date........................................................................ 39

63. Notice of Entry of Confirmation Order .............................................................. 40

64. Notice of Effective Date ...................................................................................... 40

65. Authorization to File Conformed Plan................................................................ 41

66. Binding Effect...................................................................................................... 41

67. Severability .......................................................................................................... 41

68. Conflicts Between Order and Plan....................................................................... 41

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
------------------------------------------------x
                                       :
In re                                  :    Chapter 11 Case No.
                                       :
GENESIS HEALTH VENTURES, INC., et al., :    00-2692 (JHW)
                                       :
            Debtors.                   :
                                       :    (Jointly Administered)
------------------------------------------------x
                                       :
In re                                  :    Chapter 11 Case No.
                                       :
MULTICARE AMC, INC., et al.,           :    00-2494 (JHW)
                                       :
            Debtors.                   :
                                       :    (Jointly Administered)
------------------------------------------------x
```

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER UNDER 11 U.S.C. § 1129(a) AND (b) AND FED. R. BANKR. P. 3020 CONFIRMING DEBTORS' JOINT PLAN OF REORGANIZATION

WHEREAS, Genesis Health Ventures, Inc. ("Genesis"), The Multicare

Companies, Inc. ("Multicare"), and the other above-captioned debtors and debtors in

possession (collectively with Genesis and Multicare, the "Debtors"),[1] as "proponents of

the plan" within the meaning of section 1129 of title 11, United States Code (the

"Bankruptcy Code"), filed the Debtors' Joint Plan of Reorganization Under Chapter 11 of

the Bankruptcy Code, dated July 6, 2001 (such plan, as transmitted to parties in interest

being the "Original Plan" and, as subsequently modified by (i) the Technical

---

[1] This Confirmation Order shall not apply to Norristown Nursing and Rehabilitation
Associates, L.P. ("Norristown"), a Genesis Debtor, to the extent necessary to preserve the
rights set forth in ¶ 30 hereof, and the Plan is not confirmed as to Norristown.

Amendments to Debtors' Joint Plan of Reorganization, dated August 27, 2001, and (ii) the Amendments to Debtors' Joint Plan of Reorganization to Comply with Opinion on Confirmation, dated September 13, 2001, the "Plan")[2] and the Disclosure Statement for Debtors' Joint Plan of Reorganization, dated July 6, 2001 (as transmitted to parties in interest, the "Disclosure Statement"); and

WHEREAS, on July 6, 2001, the Bankruptcy Court entered an order (the "Solicitation Order") that, among other things, (a) approved the Disclosure Statement under section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (b) established August 28, 2001, as the date for the commencement of the hearing to consider confirmation of the Plan (the "Confirmation Hearing"), (c) approved the form and method of notice of the Confirmation Hearing (the "Confirmation Hearing Notice"), and (d) established certain procedures for soliciting and tabulating votes with respect to the Original Plan; and

WHEREAS, the Confirmation Hearing Notice and, (i) as to Subclasses G1-13 through G1-17, Classes G2, G4, G5, Subclass M1-7, and Classes M2, M4, and M5, the Disclosure Statement and erratum sheet, the Original Plan, the Solicitation Order, the Letter from the Official Committee of Unsecured Creditors appointed in the Genesis

---

[2] Unless otherwise defined herein, capitalized terms used herein shall have the meanings ascribed to such terms in the Plan, a copy of which is annexed hereto as Exhibit "A." A copy of the Technical Amendments to the Plan is annexed hereto as Exhibit "B," and a copy of the Amendments to the Plan to Comply with the Opinion on Confirmation is annexed hereto as Exhibit "C." Any term used in the Plan or this Confirmation Order that is not defined in the Plan or this Confirmation Order, but that is used in the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), shall have the meaning ascribed to that term in the Bankruptcy Code or the Bankruptcy Rules.

Reorganization Cases (the "Genesis Creditors' Committee"), the Notice of Supplemental Disclosure Statement Hearing (if applicable), and a ballot and return envelope (such ballot and envelope being referred to as a "Ballot"), and (ii) as to Subclasses G1-1 through G1-12, G3, G6, G7, G8, G9, G10, G11, Subclasses M1-1 through M1-6, and Classes M3, M6, M7, and M8, a Notice of Non-Voting Status, the Solicitation Order, and the Notice of Supplemental Disclosure Statement Hearing (if applicable) were transmitted as set forth in the Certificates of Service of Debrah Reyes of Poorman-Douglas Corporation, sworn to on August 27, 2001 (the "Reyes Certificate") and of Frank Gebhartdt of Burrups Packard, sworn to on August 24, 2001, and such service is adequate as provided by Bankruptcy Rule 3017(d); and

WHEREAS, upon the Debtors' learning that, because of a computer error, certain creditors of the Genesis Debtors did not receive notice of the July 6, 2001 hearing to consider the Disclosure Statement, the Debtors requested that the Bankruptcy Court schedule a supplemental hearing to consider the Disclosure Statement (the "Supplemental Disclosure Statement Hearing") so that those creditors which did not receive notice of the July 6, 2001 hearing would have the opportunity to file objections to the Disclosure Statement and the Debtors could make any necessary revisions to the Disclosure Statement; and

WHEREAS, the Bankruptcy Court held the Supplemental Disclosure Statement Hearing on August 9, 2001, and ruled that (i) it is not necessary for the Debtors to provide any additional information to the Disclosure Statement, and (ii) the form and manner of supplemental notice of the Supplemental Disclosure Statement Hearing and the time set for filing objections to the Disclosure Statement were adequate; and

WHEREAS, the Debtors filed the certificates of publication of Janice Frazier, Advertising Clerk of the Publisher of *The Wall Street Journal*, sworn to on July 27, 2001; Cathy Zike, Principal Clerk of the Publisher of *The New York Times*, sworn to on July 23, 2001; Cheryl Rothlein, Principal Clerk of *USA Today*, sworn to on July 24, 2001; J. Rosenthal, Classified Billing Manager of *The Tampa Tribune*, sworn to on July 23, 2001; The Baltimore Sun Company by J. Pendelton, publisher of *The Baltimore Sun*, sworn to on July 24, 2001; Anna Dickerson, employee of the publisher of *The Philadelphia Inquirer*, sworn to on July 23, 2001; and Susan M. Boulanger-Smith, Classified Sales Representative of the Globe Newspaper Co., publishers of *The Boston Globe*, sworn to on July 23, 2001, attesting to the fact that the Confirmation Hearing Notice was published in accordance with the Solicitation Order; and

WHEREAS, on August 10, 2001, the Debtors filed the Plan Supplement with respect to the Plan; and

WHEREAS, the Debtors filed the Declaration of Laura DiBiase Certifying the Acceptances and Rejections of the Debtors' Joint Plan of Reorganization, sworn to on August 27, 2001, attesting and certifying the method and results of the ballot tabulation for the Classes of Claims (Subclasses G1-13 through G1-17, Classes G2, G4, G5, Subclass M1-7, and Classes M2, M4, and M5), entitled to vote to accept or reject the Plan (the "Voting Report"); and

WHEREAS, as set forth on the annexed Exhibit "D," 18 objections or purported objections to confirmation of the Plan were timely filed and served (the "Objections"); and

WHEREAS, as set forth on the annexed Exhibit "E," 9 Objections have been withdrawn or partially resolved on the terms and conditions described on the record of the Confirmation Hearing (collectively, the "Resolved Objections"), and the remaining Objections either are overruled on the merits pursuant to this Confirmation Order or, with respect to the Objection of THCI Company LLC, f/k/a New Meditrust Company LLC and THCI Mortgage Holding Company LLC (collectively, "THCI"), the hearing on such Objection is continued, by agreement with these parties, to a mutually convenient date; and

WHEREAS, on August 24, 2001, the Debtors filed (i) an omnibus response to the Objections (the "Response"), (ii) a memorandum of law in support of confirmation of the Plan (the "Confirmation Memorandum"), (iii) the Declaration of William C. McGahan in Support of Confirmation of Joint Plan of Reorganization (the "McGahan Affidavit"), and (iv) the Affidavit of Stephen B. Darr in Support of Confirmation of the Joint Plan of Reorganization (the "Darr Affidavit"); and

WHEREAS, on August 27, 2001, the Debtors filed the Affidavit of J. Halisey Kennedy in Support of Confirmation of the Joint Plan of Reorganization (the "Kennedy Affidavit"); and

WHEREAS, on August 24, 2001, (i) the holders of the Genesis Senior Lender Claims and the Multicare Senior Lender Claims filed the Affidavit of David M. Schulte in Support of Confirmation of Joint Plan of Reorganization (the "Schulte Affidavit"), and the Response of Mellon Bank, N.A., as Agent, to the Objections of the GMS Group LLC and Charles L. Grimes to Confirmation of the Debtors' Joint Plan of Reorganization, and (ii) the Genesis Creditors' Committee filed the Declaration of

Patrick M. Hurst in Support of Confirmation of the Debtors' Joint Plan of Reorganization

(the "Hurst Affidavit," and collectively with the McGahan Affidavit, the Kennedy

Affidavit, the Darr Affidavit, and the Schulte Affidavit, the "Confirmation Affidavits"),

and the Reply of the Official Committee of Unsecured Creditors of Genesis Health

Ventures, Inc., et al., to the Objections to the Confirmation of Debtors' Joint Plan of

Reorganization; and

WHEREAS, on August 27, 2001, the Debtors filed the Technical

Amendments to Debtors' Joint Plan of Reorganization (the "Technical Amendments");

and

WHEREAS, the Confirmation Hearing was held on August 28 and 29,

2001; and

WHEREAS, on September 12, 2001, this Court issued its opinion on

confirmation of the Plan, determining that the Plan is confirmable if modified in

accordance with such opinion; and

WHEREAS, on September 13, 2001, the Debtors filed the Amendments to

Debtors' Joint Plan of Reorganization to Comply with the Opinion on Confirmation (the

"Amendments to Comply with Confirmation Opinion").

NOW, THEREFORE, based upon the Bankruptcy Court's review of the

Voting Report, Confirmation Affidavits, Response, and Confirmation Memorandum; and

upon (a) all the evidence proffered or adduced at, memoranda and Objections filed in

connection with, and arguments of counsel made at, the Confirmation Hearing, and

(b) the entire record of these Reorganization Cases; and after due deliberation thereon

and good cause appearing therefor:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY FOUND AND DETERMINED THAT:[3]

1. Exclusive Jurisdiction; Venue; Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)). This Bankruptcy Court has jurisdiction over the Reorganization Cases pursuant to sections 157 and 1334 of title 28 of the United States Code. Venue is proper pursuant to sections 1408 and 1409 of title 28 of the United States Code. Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(L), and this Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

2. Judicial Notice. This Bankruptcy Court takes judicial notice of the docket of the Reorganization Cases maintained by the Clerk of the Bankruptcy Court and/or its duly-appointed agent, including, without limitation, all pleadings and other documents filed, all orders entered, and evidence and argument made, proffered, or adduced at the hearings held before the Bankruptcy Court during the pendency of the Reorganization Cases, including, but not limited to, the hearings to consider the adequacy of the Disclosure Statement.

3. Burden of Proof. The Debtors have the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of evidence.

4. Transmittal and Mailing of Materials; Notice. The Disclosure Statement and erratum sheet, the Original Plan, the Ballots, the Solicitation Order, and

---

[3] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate.

the Confirmation Hearing Notice, which were transmitted and served as set forth in the Reyes Certificate, shall be deemed to have been transmitted and served in compliance with the Solicitation Order and the Bankruptcy Rules, and such transmittal and service were adequate and sufficient, and no other or further notice is or shall be required.

5. Voting. Votes to accept and reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules, the Solicitation Order, and industry practice.

6. Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(a) Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). In addition to Administrative Expense Claims, Priority Tax Claims, and Claims under the Debtors' Revolving Credit and Guaranty Agreement, which need not be designated, the Plan designates 19 Classes of Claims and Equity Interests. Each Genesis Other Secured Claim and Multicare Other Secured Claim shall be deemed to be separately classified in a subclass of Class G1 and M1, respectively, and shall have all rights associated with separate classification under the Bankruptcy Code. The Claims and Equity Interests placed in each Class are substantially similar to other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Equity Interests. The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(b) Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)). Section 4 of the Plan specifies that Subclasses G1-1 through G1-12, Classes G3 and G6, Subclasses M1-1 through M1-6, and Classes M3 and M6 are unimpaired under the Plan, thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(c) Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Section 4 of the Plan designates Subclasses G1-13 through G1-17, Classes G2, G4, G5, G7, G8, G9, G10, and G11, Subclass M1-7, and Classes M2, M4, M5, M7, and M8 as impaired and specifies the treatment of Claims and Equity Interests in those Classes, thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(d) No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by the Debtors for each Claim or Equity Interest in each respective Class unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest, thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(e) Implementation of Plan (11 U.S.C. § 1123(a)(5)). The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the Plan's implementation, including (i) the deemed consolidation of the Genesis Debtors, (ii) the deemed consolidation of the Multicare Debtors, (iii) the merger of Genesis and Multicare, and (iv) the Exit Financing Facility (as hereinafter defined), thereby satisfying section 1123(a)(5) of the Bankruptcy Code.

(f) Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)). Section 5.13 of the Plan provides that the Amended Certificate of Incorporation for Reorganized Genesis and the amended certificates of incorporation for each of the other Reorganized

Debtors that are corporations shall prohibit the issuance of nonvoting equity securities. Thus, the requirements of section 1123(a)(6) of the Bankruptcy Code are satisfied.

(g) Designation of Directors (11 U.S.C. § 1123(a)(7)). Section 5.12 of the Plan contains provisions with respect to the manner of selection of directors of Reorganized Genesis that are consistent with the interests of creditors, equity security holders, and public policy in accordance with section 1123(a)(7).

(h) Additional Plan Provisions (11 U.S.C. § 1123(b)). The Plan's provisions are appropriate and not inconsistent with the applicable provisions of the Bankruptcy Code.

(i) Bankruptcy Rule 3016(a). The Plan is dated and identifies the entities submitting it as proponents, thereby satisfying Bankruptcy Rule 3016(a).

7. Debtors' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Debtors have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(2) of the Bankruptcy Code. Specifically:

    a.    The Debtors are proper debtors under section 109 of the Bankruptcy Code.

    b.    The Debtors have complied with applicable provisions of the Bankruptcy Code, except as otherwise provided or permitted by orders of the Bankruptcy Court.

    c.    The Debtors have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Solicitation Order in transmitting the Original Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating votes on the Original Plan.

8. Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Debtors have proposed the Plan in good faith and not by any means forbidden by law, thereby

satisfying section 1129(a)(3) of the Bankruptcy Code. The Debtors' good faith is evident from the facts and records of these Reorganization Cases, the Disclosure Statement and the hearings thereon, and the record of the Confirmation Hearing and other proceedings held in these Reorganization Cases. The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' estates and to effectuate a successful reorganization of the Debtors.

9. Payments for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by any of the Debtors for services or for costs and expenses in or in connection with the Reorganization Cases, or in connection with the Plan and incident to the Reorganization Cases, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable, thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

10. Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)). The Debtors have complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as initial directors or officers of Reorganized Genesis after confirmation of the Plan have been fully disclosed on the Debtors' web site (www.ghv.com), and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against and Equity Interests in the Debtors and with public policy. The identity of any insider that will be employed or retained by the Reorganized Debtors and the nature of such insider's compensation have also been fully disclosed.

11. No Rate Changes (11 U.S.C. § 1129(a)(6)). After confirmation of the Plan, the Debtors' businesses will not involve rates established or approved by, or

NY2:\1076583\03\W2P303!.DOC\50505.0003
RLF1-2360484-1 9/17/01 12:31 PM

11

otherwise subject to, any governmental regulatory commission. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable in these Reorganization Cases.

12. <u>Best Interests of Creditors (11 U.S.C. § 1129(a)(7))</u>. The Plan satisfies section 1129(a)(7) of the Bankruptcy Code. The liquidation analyses provided in the Disclosure Statement, Plan Supplement, the Darr Affidavit, and other evidence proffered or adduced at the Confirmation Hearing (a) are persuasive and credible, (b) have not been controverted by other evidence, and (c) establish that each holder of an impaired Claim or Equity Interest either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

13. <u>Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8))</u>. Subclasses G1-1 through G1-12, Classes G3 and G6, Subclasses M1-1 through M1-6, and Classes M3 and M6 of the Plan are Classes of unimpaired Claims that are conclusively presumed to have accepted the Plan under section 1126(f) of the Bankruptcy Code. Subclasses G1-13, G1-14, G1-15, and G1-17 , Classes G2 and G4, Subclass M1-7, Classes M2, M4 and M5, and certain other holders of Genesis Other Secured Claims and Multicare Other Secured Claims in Classes G1 and M1, respectively (each of which is considered to be in a separate subclass of Class G1 or M1, respectively), have voted to accept the Plan in accordance with sections 1126(c) and (d) of the Bankruptcy Code. Classes G7, G8, G9, G10, G11, M7, and M8 are not entitled to receive or retain any property under the Plan and, therefore, are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although section 1129(a)(8) has not been satisfied with respect to

Subclass G1-16 and Class G5, as well as the deemed rejecting Classes identified above, the Plan is confirmable because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to Class G5 and the deemed rejecting Classes identified above and the parties have agreed to reserve all rights with respect to Subclass G1-16 as set forth in ¶ 31 hereof.

14. Treatment of Administrative and Tax Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Expense Claims, Genesis Priority Non-Tax Claims, and Multicare Priority Non-Tax Claims pursuant to Sections 2.1, 4.3, and 4.14 of the Plan satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code, and the treatment of Priority Tax Claims pursuant to Section 2.3 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

15. Acceptance By Impaired Classes (11 U.S.C. § 1129(a)(10)). At least one Class of Claims against (a) the Genesis Debtors and (b) the Multicare Debtors that is impaired under the Plan has accepted the Plan, determined without including any acceptance of the Plan by any insider, thus satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

16. Feasibility (11 U.S.C. § 1129(a)(11)). The evidence proffered or adduced at the Confirmation Hearing (a) is persuasive and credible, (b) has not been controverted by other evidence, and (c) establishes that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors, thus satisfying the requirements of section 1129(a)(11) of the Bankruptcy Code.

17. Payment of Fees (11 U.S.C. § 1129(a)(12)). All fees payable under section 1930 of title 28, United States Code, as determined by the Bankruptcy Court, have been paid or will be paid pursuant to Section 12.1 of the Plan from the funds deposited by the Debtors into an escrow account pursuant to an escrow arrangement, the terms of which are satisfactory to the Debtors and the United States Trustee, thus satisfying the requirements of section 1129(a)(12) of the Bankruptcy Code.

18. Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Section 12.2 of the Plan provides that, on and after the Effective Date, the Reorganized Debtors will continue to pay all "retiree benefits" (as defined in section 1114(a) of the Bankruptcy Code), at the level established pursuant to section 1114(e)(1)(B) or 1114(g) at any time prior to confirmation of the Plan, for the duration of the period the Debtors have obligated themselves to provide such benefits. Thus, the requirements of section 1129(a)(13) of the Bankruptcy Code are satisfied.

19. Fair and Equitable; No Unfair Discrimination (11 U.S.C. § 1129(b)). Subclass G1-16 and Class G5 voted to reject the Plan, and Classes G7, G8, G9, G10, G11, M7, and M8 are deemed to reject the Plan (collectively, the "Rejecting Classes"). Based upon the Confirmation Affidavits and the evidence proffered, adduced, or presented by the Debtors at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the Rejecting Classes (other than Subclass G1-16, as set forth in ¶ 31 hereof), as required by section 1129(b)(1) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the Debtors' failure to satisfy section 1129(a)(8) of the Bankruptcy Code. Except as provided in ¶ 31 hereof,

upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of the Rejecting Classes.

20. Principal Purpose of the Plan (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933.

21. Modifications to the Plan. The modifications to the Plan set forth in the Technical Amendments constitute technical changes and/or changes with respect to particular Claims by agreement with holders of such Claims, and do not materially adversely affect or change the treatment of any Claims or Equity Interests. Accordingly, pursuant to Bankruptcy Rule 3019, these modifications do not require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code, nor do they require that holders of Claims or Equity Interests be afforded an opportunity to change previously cast acceptances or rejections of the Plan.

22. Good Faith Solicitation (11 U.S.C. § 1125(e)). Based on the record before the Bankruptcy Court in these Reorganization Cases, the Debtors and their directors, officers, employees, shareholders, members, agents, advisors, accountants, investment bankers, consultants, attorneys, and other representatives have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code in compliance with the applicable provisions of the Bankruptcy Code and Bankruptcy Rules in connection with all their respective activities relating to the solicitation of acceptances to the Plan and their participation in the activities described in section 1125 of the Bankruptcy Code,

and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code
and the exculpation provisions set forth in Section 10.6 of the Plan.

23. Assumption and Rejection. Section 8 of the Plan governing the
assumption and rejection of executory contracts and unexpired leases satisfies the
requirements of section 365(b) of the Bankruptcy Code. Pursuant to Section 8.2 of the
Plan, except as may otherwise be agreed to by the parties, within thirty (30) days of the
Confirmation Date, the Debtors shall file and serve a pleading with the Bankruptcy Court
listing the cure amounts of all executory contracts or unexpired leases to be assumed,
consistent with section 365 of the Bankruptcy Code. The parties to such executory
contracts or unexpired leases to be assumed by the Debtors shall have fifteen (15) days
from service to object to the cure amounts listed by the Debtors. The Debtors shall retain
their right to reject any of their executory contracts or unexpired leases, including those
that are not listed in Schedule 8.1 to the Plan, and including contracts or leases that are
subject to a dispute concerning amounts necessary to cure any defaults.

24. Deemed Consolidation. No creditor of any of the Debtors will be
prejudiced by the deemed consolidation of the Genesis Debtors and the deemed
consolidation of the Multicare Debtors; such deemed consolidation will benefit all
creditors of the Debtors.

25. Genesis/Multicare Settlement. The compromise and settlement
between the Genesis Debtors and the Multicare Debtors, incorporated into the Plan, is
hereby approved pursuant to Bankruptcy Rule 9019 as a fair, prudent, and reasonable
compromise of the controversies resolved by such settlement and is binding upon all
entities affected thereby.

26. Synthetic Lease. The Genesis Debtors are the actual owners and hold full legal title in any Collateral securing the transaction described in Section 1.35(ii) of the Plan. Mellon Financial Services Corporation #4 holds title for security purposes only in any such Collateral.

27. Satisfaction of Confirmation Requirements. The Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

28. Retention of Jurisdiction. The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Section 11 of the Plan and section 1142 of the Bankruptcy Code.

## DECREES

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

29. Technical Amendments. The modifications of the Original Plan reflected in the Technical Amendments meet the requirements of sections 1127(a) and (c), such modifications do not adversely change the treatment of the Claim of any creditor or Equity Interest of any equity security holder within the meaning of Bankruptcy Rule 3019, and no further solicitation or voting is required.

30. Confirmation. The Plan, which consists of the Original Plan as modified by the Technical Amendments and the Amendments to Comply with Confirmation Opinion annexed hereto, is approved and confirmed under section 1129 of the Bankruptcy Code. The terms of the Plan and the Plan Supplement are incorporated by reference into and are an integral part of the Plan and this Confirmation Order.

31. Objections. Except with respect to the Objection filed by THCI (the "THCI Objection"), all Objections that have not been withdrawn, waived, or settled, and all reservations of rights pertaining to confirmation of the Plan included therein, are overruled on the merits.

(a) THCI Objection. With respect to the THCI Objection, THCI shall retain any and all rights in connection with issues raised by the THCI Objection, and the Debtors shall retain any and all rights that they may raise as a response to the THCI Objection pending resolution of the matter, including but not limited to, (i) whether or not Norristown Nursing and Rehabilitation Associates, L.P. ("Norristown"), a Genesis Debtor, should be deemed consolidated among the Genesis Debtors pursuant to Section 5.1(a) of the Plan for voting and distribution purposes, (ii) whether the treatment the Plan provides to Subclass G1-16 satisfies the "cram down" requirements of section 1129(b)(2)(A) and is "fair and equitable," (iii) whether in connection with the Multicare Debtors' assumption of that certain lease agreement, dated November 30, 1995, between THCI and Glenmark Limited Liability Company, I, a Multicare Debtor, the Debtors would be required to pay in full the Alleged Unsecured Deficiency Claim (as defined in the THCI Objection), and (iv) whether in connection with the Multicare Debtors' reinstatement of that certain loan agreement, dated on or about October 13, 1992, between Meditrust Mortgage Investments, Inc. and three Multicare Debtors (Glenmark Associates – Dawnview Manor, Inc., Glenmark Properties, Inc., and The House of Campbell), the Debtors would be required to pay the Alleged Unsecured Deficiency Claim.

(b) Commonwealth of Pennsylvania, Department of Revenue Objection. With respect to the Objection filed by the Commonwealth of Pennsylvania, Department of Revenue, (i) the Multicare Debtors shall use their reasonable best efforts to file the purported delinquent tax returns listed in paragraph 2 of such objection on or before September 30, 2001, and (ii) corporate officers of the Multicare Debtors shall not be released under the Plan from any liability, if any, for the payment of Pennsylvania state trust fund taxes.

(c) Massachusetts Housing Finance Agency Objection. With respect to the Objection filed by the Massachusetts Housing Finance Agency ("MHFA") and MHFA's motion to temporarily allow its claim for voting purposes only, (i) except as provided in Section 5.10 of the Plan, Section 5.14 of the Plan shall not discharge, release, or extinguish any claim held by MHFA against or any obligation to MHFA of any entity which is not a Debtor in the Reorganization Cases, and (ii) MHFA's claim (which shall remain subject to allowance for purposes of distribution) shall be temporarily allowed for voting purposes only in the amount of $750,000 in the Multicare Reorganization Cases.

(d) JSM Objection. With respect to the Objection of the JSM Company ("JSM"), pursuant to section 365 of the Bankruptcy Code, the construction contract entered into on or about June 18, 1998 (the "JSM Contract") between the Genesis Debtors and JSM is rejected as of the date hereof. JSM may file a proof of claim (the "JSM Proof of Claim") for any damages arising from the rejection of the JSM Contract within thirty (30) days from the date hereof, and any claims resulting from the rejection of the JSM Contract not so filed shall be forever barred from participating in the Genesis Debtors' chapter 11 cases and receiving any dividend or distribution thereon. The

Genesis Debtors may file an objection to the JSM Proof of Claim on or before the sixtieth (60th) day following the date on which the JSM Proof of Claim is filed. If the Genesis Debtors do not timely file an objection to the JSM Proof of Claim as set forth in the preceding sentence, JSM's claim shall be deemed an Allowed Claim against the Genesis Debtors. To the extent that any portion of JSM's claim is Allowed as a Secured Claim, JSM shall have an Allowed Class G1 Genesis Other Secured Claim and the Genesis Debtors shall pay the portion of the Claim that is Allowed as a Secured Claim in Cash in full within ten (10) days from the date on which that portion of JSM's Claim is Allowed as a Secured Claim. To the extent that any portion of JSM's Claim is Allowed as an unsecured Claim, JSM shall have an Allowed Class G4 Genesis General Unsecured Claim and shall be paid in accordance with Section 4.4 of the Plan. Nothing in the Plan shall be deemed to (i) affect or discharge JSM's asserted construction lien or (ii) affect or bar the Genesis Debtors' rights to object to such lien on any grounds. In the event the Genesis Debtors and JSM are unable to agree upon a settlement resolving JSM's claims, the Genesis Debtors may, in addition to the Genesis Debtors' objection to the JSM Proof of Claim as set forth above, object to any claim or lien asserted by any subcontractor (collectively, the "Subcontractor Claims") filed against the Genesis Debtors' lease of the Madison Avenue Assisted Living Facility or against the property underlying such lease. Thereafter, a hearing shall be held before the Bankruptcy Court to (i) determine the validity and amount of the JSM Proof of Claim and any Subcontractor Claim the Genesis Debtors are required to satisfy and (ii) ensure that the Genesis Debtors are not required to satisfy any Subcontractor Claims that are also included as a portion of any of JSM's claims, as such payment will be duplicative.

32. Plan Classification Controlling. The classifications of Claims and Equity Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan. The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan, (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Equity Interests under the Plan for distribution purposes, and (c) shall not be binding on the Debtors or the Reorganized Debtors.

33. Binding Effect. The Plan and its provisions shall be binding upon the Debtors, the Reorganized Debtors, the Disbursing Agent, any entity acquiring or receiving property or a distribution under the Plan, and any holder of a Claim against or Equity Interest in the Debtors, including all governmental entities, whether or not the Claim or Equity Interest of such holder is impaired under the Plan and whether or not such holder or entity has accepted the Plan.

34. Service. (i) Service of the Solicitation Package upon holders of Claims in Subclasses M1-2 and M1-7 and certain holders of Claims in Class G5, as set forth in the Reyes Certificate, (ii) the extension for such creditors of (a) the Voting Deadline (as defined in the Solicitation Order), and (b) the time fixed for filing objections to the Plan through and including August 24, 2001, and (iii) the notices of such extensions, copies of which are annexed hereto as Exhibit "F" and "G," are hereby approved.

35. Vesting of Assets (11 U.S.C. § 1141(b), (c)). Pursuant to Sections 5.1 and 10.1 of the Plan, except as otherwise provided in the Plan (including Section 5.2 of the Plan), each Debtor will, as a Reorganized Debtor, continue to exist after the Effective Date as a separate corporate entity, with all the powers of a corporation under applicable law and without prejudice to any right to alter or terminate such existence (whether by merger, dissolution, or otherwise) under applicable state law. Except as otherwise provided in the Plan, upon the Effective Date all property of the Debtors' estates shall vest in the Reorganized Debtors free and clear of all Claims, liens, encumbrances, charges, and other interests, and all such Claims, liens, encumbrances, charges, and other interests shall be extinguished. From and after the Effective Date, each Reorganized Debtor may operate its business and may use, acquire, and dispose of property, and compromise or settle any Claims and Equity Interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules, other than those restrictions expressly imposed by the Plan or this Confirmation Order.

36. Assumption or Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)). Pursuant to Section 8.1 of the Plan, as of the Effective Date, all executory contracts and unexpired leases as to which any of the Debtors are parties are assumed, including the bonds executed by Liberty Bond Services on behalf of the Debtors, except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court, (ii) is specifically designated as a contract or lease to be rejected on Schedule 8.1 to the Plan (Schedule of Rejected Contracts and Leases), (iii) is the subject of a separate motion to assume or reject filed

under section 365 of the Bankruptcy Code by the Genesis Debtors or Multicare Debtors prior to the Confirmation Date, or (iv) is an option or warrant to purchase common stock of any of the Debtors or right to convert any Equity Interest into common stock of any of the Debtors to the extent such option, warrant, or conversion right is determined not to be an Equity Interest.

37. <u>Assumption of Cardinal Agreement</u>. Pursuant to Section 8.1 of the Plan, the Debtors' assumption of (i) the prime vendor agreement (the "Cardinal Agreement"), dated May 5, 1999, between the Genesis Debtors and Cardinal Distribution, as modified, (ii) the related security agreement (the "Cardinal Security Agreement"), and (iii) the related guaranty is approved, and the Collateral (as defined in the Cardinal Security Agreement) shall secure any and all existing and future obligations of the Genesis Debtors to Cardinal Distribution under the Cardinal Agreement as provided in the Cardinal Security Agreement, and the Lien (as defined in the Cardinal Security Agreement) is valid and fully perfected, and, except as required under applicable state law, Cardinal Distribution is not required to file any UCC financing statements in connection with the Lien other than the financing statements filed prior to the Commencement Date on Cardinal Distribution's behalf in connection with the Cardinal Agreement.

38. <u>Bar Date for Rejection Damage Claims</u>. Pursuant to Section 8.3 of the Plan, if the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to Section 8.1 of the Plan results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their

respective properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the date that is thirty (30) days after the Confirmation Date or such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults.

39. General Authorizations. Each of the Debtors or Reorganized Debtors is authorized to execute, deliver, file, or record such contracts, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and any notes or securities issued pursuant to the Plan. The Debtors and the Reorganized Debtors and their respective directors, officers, members, agents, and attorneys, are authorized and empowered to issue, execute, deliver, file, or record any agreement, document, or security, including, without limitation, the documents contained in the Plan Supplement, as modified, amended, and supplemented, in substantially the form included therein, and to take any action necessary or appropriate to implement, effectuate, and consummate the Plan in accordance with its terms, or take any or all corporate actions authorized to be taken pursuant to the Plan, including the merger of Genesis and Multicare, and any release, amendment, or restatement of any bylaws, certificates of incorporation, or other organization documents of the Debtors, whether or not specifically referred to in the Plan or the Plan Supplement, without further order of the Court, and any or all such documents shall be accepted by each of the respective state filing offices and recorded in accordance with applicable state law and shall become effective in accordance with their terms and the provisions of state law.

40. Corporate Action. Reorganized Genesis shall file the Amended Certificate of Incorporation with the Secretary of State of the State of Pennsylvania on the Effective Date. The Amended Certificate of Incorporation and the certificates of incorporation for each of the Reorganized Debtors that are corporations, other than Reorganized Genesis, shall prohibit the issuance of nonvoting equity securities, subject to further amendment of such certificates of incorporation as permitted by applicable law. The Amended Bylaws shall be deemed adopted by the board of directors of Reorganized Genesis as of the Effective Date.

41. Synthetic Lease Lenders. With respect to the treatment provided in the Plan for Subclass G1-17 (Synthetic Lease Lenders), Mellon Bank, N.A., as administrative agent, is authorized to (i) file quitclaim deeds to transfer the property securing the claims of Subclass G1-17 to Genesis, (ii) transfer any non-real property subject to the Amended and Restated Synthetic Lease Financing Facility, dated as of October 7, 1996, among Genesis, Genesis Eldercare Properties, Inc., Mellon Financial Services Corporation #4, Mellon Bank, N.A., as administrative agent, certain co-agents named therein, and the lender parties thereto (the "Synthetic Lease") to Genesis, and (iii) file any other release and termination documents necessary to terminate the Synthetic Lease and the parties' obligations thereunder (including those of Mellon Bank, N.A., as administrative agent). Title in the property subject to the Synthetic Lease is held by Genesis free and clear of all liens, claims, interests, and other encumbrances, subject only to the mortgages and security interest to be held by those Synthetic Lease Lenders refinancing such property and the second liens in favor of the holders of the New Senior Notes.

42. Annual Meeting of Shareholders. For purposes of section 1755 of the Pennsylvania Business Corporation Law, the first annual meeting of shareholders of Reorganized Genesis shall be deemed to have taken place on the Effective Date.

43. Issuance of New Securities. Pursuant to Sections 5.2 and 5.3 of the Plan, based upon the record of the Reorganization Cases, including the instruments included in the Plan Supplement (and any amendments thereto), the issuance of the Plan Securities by Reorganized Genesis and the New Multicare Stock by Multicare is hereby authorized without further act or action under applicable law, regulation, order, or rule.

44. Securities Laws Exemption. The offering, issuance, and distribution by Reorganized Genesis of the Plan Securities and the offering and issuance by Multicare of the New Multicare Stock is exempt from the provisions of section 5 of the Securities Act of 1933, as amended, and any state or local law requiring registration for the offer, issuance, distribution, or sale of a security by reason of section 1145(a) of the Bankruptcy Code. The Plan Securities will be freely tradable by the recipients thereof subject only to the provisions of section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(11) of the Securities Act of 1933, as amended, and compliance with any applicable rules and regulations of the Securities Exchange Commission.

45. Deemed Consolidation.

(a) Subject to the occurrence of the Effective Date, the Genesis Debtors shall be deemed consolidated for the following purposes under the Plan: (i) no distributions shall be made under the Plan on account of the Genesis Intercompany Claims; (ii) all guaranties by any of the Genesis Debtors of the obligations of any other

Genesis Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Genesis Debtor and any guaranty thereof executed by any other Genesis Debtor and any joint and several liability of any of the Genesis Debtors shall be deemed to be one obligation of the deemed consolidated Genesis Debtors; and (iii) each and every Claim filed or to be filed in the Reorganization Case of any of the Genesis Debtors shall be deemed filed against the deemed consolidated Genesis Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Genesis Debtors. Such deemed consolidation, however, shall not (other than for purposes related to funding distributions under the Plan affect: (i) the legal and organizational structure of the Reorganized Debtors; (ii) intercompany Claims by and among the Genesis Debtors or Reorganized Debtors; (iii) pre- and post-Commencement Date guaranties, liens, and security interests that are required to be maintained (A) in connection with executory contracts or unexpired leases that were entered into during the Genesis Reorganization Cases or that have been or will be assumed, (B) pursuant to the Plan, or (C) in connection with any financing entered into, or New Senior Notes issued, by the Reorganized Debtors on the Effective Date; and (iv) distributions out of any insurance policies or proceeds of such policies. Notwithstanding anything contained in the Plan to the contrary, the deemed consolidation of the Genesis Debtors shall not have any effect on the Claims being reinstated and unimpaired in Class G1 of the Plan, and the legal, equitable, and contractual rights to which the holders of any such Claims is entitled shall be left unaltered by the Plan.

(b) Subject to the occurrence of the Effective Date, the Multicare Debtors shall be deemed consolidated for the following purposes under the Plan: (i) no

distributions shall be made under the Plan on account of Multicare Intercompany Claims; (ii) all guaranties by any of the Multicare Debtors of the obligations of any other Multicare Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Multicare Debtor and any guaranty thereof executed by any other Multicare Debtor and any joint and several liability of any of the Multicare Debtors shall be deemed to be one obligation of the deemed consolidated Multicare Debtors; and (iii) each and every Claim filed or to be filed in the Reorganization Case of any of the Multicare Debtors shall be deemed filed against the deemed consolidated Multicare Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Multicare Debtors. Such deemed consolidation, however, shall not (other than for purposes related to funding distributions under the Plan) affect: (i) the legal and organizational structure of the Reorganized Debtors; (ii) intercompany Claims by and among the Multicare Debtors or Reorganized Debtors; (iii) pre- and post-Commencement Date guaranties, liens, and security interests that are required to be maintained (A) in connection with executory contracts or unexpired leases that were entered into during the Multicare Reorganization Cases or that have been or will be assumed, (B) pursuant to the Plan of Reorganization, or (C) in connection with any financing entered into by the Reorganized Debtors on the Effective Date; and (iv) distributions out of any insurance policies or proceeds of policies. Notwithstanding anything contained in the Plan to the contrary, the deemed consolidation of the Multicare Debtors shall not have any effect on the Claims being reinstated and unimpaired in Class M1 of the Plan, and the legal, equitable, and contractual rights to which the holders of any such Claims is entitled shall be left unaltered by the Plan.

## 46. DIP Credit Agreements.

(a) Notwithstanding anything that may be contained herein to the contrary, on the Effective Date, (i) Genesis shall pay or arrange for the payment of all amounts outstanding under that certain Revolving Credit and Guaranty Agreement, dated as of June 22, 2000, as amended, among Genesis, certain other Genesis Debtors named therein, Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lenders party thereto (the "Genesis DIP Credit Agreement"), and (ii) Multicare shall pay or arrange for payment of all amounts outstanding under that certain Revolving Credit and Guaranty Agreement, dated as of June 22, 2000, as amended, among Multicare, certain other Multicare Debtors named therein, Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lenders party thereto (the "Multicare DIP Credit Agreement," and together with the Genesis DIP Credit Agreement, the "DIP Credit Agreements"). Once such payments have been made, the DIP Credit Agreements and any agreements or instruments related thereto shall be deemed terminated, except as otherwise provided in the DIP Credit Agreements (subject in all respects to any carve-out approved by the Bankruptcy Court in the Bankruptcy Court orders approving the DIP Credit Agreements on a final basis), and Mellon Bank, N.A., as administrative agent, and the lenders thereunder shall take all reasonable action to confirm the removal of any liens on the properties of the Genesis Debtors and the Multicare Debtors securing the DIP Credit Agreements. On the Effective Date, any outstanding letters of credit issued under the DIP Credit Agreements shall be either replaced or secured by letters of credit issued under the exit facility described in Section

5.4 of the Plan. The DIP Credit Agreements shall be continued through the Effective Date.

47. Exit Financing Facility.

(a) The Debtors are authorized to enter into new financing arrangements (the "Exit Financing Facility") for purposes of funding obligations under the Plan, including the payment of Administrative Expense Claims, the repayment of obligations under the DIP Credit Agreements, financing the Reorganized Debtors' working capital requirements, and satisfying the treatment of Subclass G1-17 Claims as well as any other Genesis Other Secured Claims and Multicare Other Secured Claims that the Debtors elect to satisfy with Cash payments.

(b) On the Effective Date, all the liens and security interests to be created under the Exit Financing Facility shall be deemed approved. In furtherance of the foregoing, the Reorganized Debtors and the other persons granting such liens and security interests are authorized to make all filings and recordings, and to obtain all governmental approvals and consents necessary to establish and perfect such liens and security interests under the provisions of state, provincial, federal, or other law (whether domestic or foreign) that would be applicable in the absence of this Confirmation Order, and will thereafter cooperate to make all other filings and recordings that otherwise would be necessary under applicable law to give notice of such liens and security interests to third parties.

48. Plan Supplement. The documents contained in the Plan Supplement and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing

(including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereof by the Reorganized Debtors, is authorized and approved, including, but not limited to, (a) the Plan of Merger, (b) the Term B Note Indenture, (c) the Certificate of Designation for the New Convertible Preferred Stock, and (d) the Registration Rights Agreement. Without need for further order or authorization of the Bankruptcy Court, the Debtors and Reorganized Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan Supplement that do not materially modify the terms of such documents and are consistent with the Plan. The Debtors are authorized to implement the New Management Incentive Plan without the necessity of shareholder approval required under any applicable law, including, without limitation, Sections 162(m) and 422(b)(1) of the Internal Revenue Code.

49. Governmental Approvals Not Required. This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or any other governmental authority with respect to the implementation or consummation of the Plan and any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in or contemplated by the Plan, the Disclosure Statement, and any documents, instruments, or agreements, and any amendments or modifications thereto.

50. Exemption from Certain Taxes. Pursuant to section 1146(c) of the Bankruptcy Code: (a) the issuance, transfer, or exchange of notes or equity securities under the Plan; (b) the creation of any mortgage, deed of trust, lien, pledge, or other security interest; and (c) the making or delivery of any deed or other instrument of

transfer under, in furtherance of, or in connection with, the Plan, including, without limitation, the Plan of Merger; agreements of consolidation, restructuring, disposition, liquidation, or dissolution; deeds; bills of sale; and transfers of tangible property, will not be subject to any stamp tax, recording tax, personal property transfer tax, real estate transfer tax, sales or use tax, or other similar tax, including, without limitation, the Florida intangible and documentary stamp taxes.

51. Distributions on Account of Genesis Senior Lender Claims, Genesis General Unsecured Claims, Genesis Senior Subordinated Note Claims, Multicare Senior Lender Claims, Multicare General Unsecured Claims, and Multicare Senior Subordinated Note Claims. Pursuant to Section 6.3 of the Plan, on the Effective Date, the Disbursing Agent shall distribute the New Senior Notes, the New Convertible Preferred Stock, the New Common Stock, and any Cash allocable to Classes G2 and M2 to the individual holders of the Genesis Senior Lender Claims and Multicare Senior Lender Claims in such denominations and registered in the names of the holders as Mellon Bank, N.A. shall have advised the Debtors in writing. On the Effective Date, the Disbursing Agent shall distribute the New Common Stock and the New Warrants to holders of Allowed Claims in Classes G4, G5, M4, and M5. For the purpose of calculating the amount of New Common Stock and New Warrants to be distributed to holders of Allowed Claims in Classes G4, G5, M4, and M5 on the Effective Date, all Disputed Claims in such Classes will be treated as though such Claims will be Allowed Claims in the amounts asserted, Allowed pursuant to Section 6.12 of the Plan, or as estimated by the Bankruptcy Court, as applicable. On the Final Distribution Date, each holder of an Allowed Claim in Classes G4, G5, M4, and M5 shall receive a Catch-up Distribution of New Common Stock and/or

New Warrants, as applicable. After the Effective Date but prior to the Final Distribution Date, the Reorganized Debtors, in their sole discretion, may direct the Disbursing Agent to distribute shares of New Common Stock and/or New Warrants, as applicable, to a holder of a Disputed Claim in Class G4 or M4 which becomes an Allowed Claim after the Effective Date such that the holder of such Claim receives the same shares of New Common Stock and/or New Warrants, as applicable, that such holder would have received had its Claim been an Allowed Claim in such amount on the Effective Date. Notwithstanding anything in the Plan or this Confirmation Order to the contrary, any assignment of a portion of the Subclass G1-17 Claims, the Genesis Senior Lender Claims, or the Multicare Senior Lender Claims by the holders thereof on account of confirmed trades of such claims or participations purchased or sold by the holders of such Claims in such claims in each case in existence as of the Distribution Record Date shall be deemed made as of the Distribution Record Date if such assignment is received by Mellon Bank, N.A. no later than nine (9) days after the Distribution Record Date and such assignment is subsequently duly recorded by Mellon Bank, N.A. prior to the Effective Date. Pursuant to Section 6.4 of the Plan, each Indenture Trustee shall be the Disbursing Agent for its respective noteholders in Classes G5 and M5, and the Care Haven Indenture Trustee shall be the Disbursing Agent for its respective bondholders in Subclass M1-2.

52. Waiver of Subordination. The distributions to holders of Claims in Classes G5 and M5 shall not be subject to levy, garnishment, attachment, or other legal process by any holder of indebtedness senior to the indebtedness of the holders of the Claims in Classes G5 and M5, in each case by reason of claimed contractual

subordination rights. On the Effective Date, all creditors shall be deemed to have waived any and all contractual subordination rights which they may have with respect to such distribution, and, as of the Effective Date, all holders of senior indebtedness shall be permanently enjoined from enforcing or attempting to enforce any such rights with respect to the distributions under the Plan to the holders of Claims in Classes G5 and M5.

53. Final Fee Applications. Pursuant to Section 2.2 of the Plan, all entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, and (ii) shall be paid in full in such amounts as are allowed by the Bankruptcy Court (A) upon the later of (i) the Effective Date, and (ii) the date upon which the order relating to any such Administrative Expense Claim is entered, or (B) upon such other terms as may be mutually agreed upon between the holder of such an Administrative Expense Claim and the Debtors or, on and after the Effective Date, the Reorganized Debtors. The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course and without the need for Bankruptcy Court approval. Notwithstanding the foregoing, with respect to any personal injury tort Claims arising on or after the Commencement Date, the Debtors shall remain obligated to pay such Claims as and when they become due and payable in the ordinary course of business to the extent the applicable insurance policy does not provide coverage, without the need

for the holder of such pospetition personal injury tort Claim to file an application with the Court in any event and such personal injury tort claimant shall not be subject to any bar date, including any bar date for filing applications for administrative expenses. Holders of postpetition personal injury tort Claims are authorized to liquidate such Claims to judgment, settlement, or otherwise without further order of the Bankruptcy Court and to seek payment as set forth herein.

54. Discharge of Claims and Termination of Equity Interests. Pursuant to Section 10.2 of the Plan, except as otherwise provided in the Plan, the Final Order approving the DIP Credit Agreement, or this Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made under the Plan shall discharge all existing debts and Claims, and terminate all Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Equity Interests in the Debtors, shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest, such Claim is allowed under section 502 of the Bankruptcy Code, or such holder has accepted the Plan. Notwithstanding any provision of the Plan to the contrary, any valid setoff or recoupment rights held against any of the Debtors, including any such rights that HCR Manor Care,

Inc., Manor Care, Inc., and/or ManorCare Health Services, Inc. may have in connection with the pending prepetition litigation actions described in section V.D of the Disclosure Statement, shall not be affected by the Plan and shall be expressly preserved.

55. Discharge of Debtors. Pursuant to Section 10.3 of the Plan, upon the Effective Date and in consideration of the distributions to be made under the Plan, except as otherwise expressly provided in the Plan, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors. Notwithstanding any provision of the Plan to the contrary, any valid setoff or recoupment rights held against any of the Debtors, including any such rights that HCR Manor Care, Inc., Manor Care, Inc., and/or ManorCare Health Services, Inc. may have in connection with the pending prepetition litigation actions described in section V.D of the Disclosure Statement, shall not be affected by the Plan and are expressly preserved.

56. Indenture Trustees' Fees and Expenses.

(a) The reasonable fees and expenses of each trustee under an Indenture described in Sections 1.37 and 1.50 of the Plan shall be paid in accordance with the procedures established in Section 2.5 of the Plan.

(b) With respect to Allowed Claims in Subclass M1-1 (Rosewood Center (Taylor County, West Virginia)), (i) all past due trustee fees and expenses, if any, shall be paid in full within thirty (30) days of the Effective Date and all trustee fees and expenses thereafter shall be paid in accordance with the terms of the relevant trust indenture and loan documents, and (ii) all amounts necessary to cure and reinstate such Allowed Claims shall be paid within thirty (30) days of the Effective Date.

57. Survival of Corporate Indemnitees. Pursuant to Section 8.5 of the Plan, any obligations of the Debtors pursuant to their corporate charters and bylaws or agreements entered into any time prior to the Effective Date, to indemnify current directors, officers, agents, and/or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, agents, and/or employees, based upon any act or omission for or on behalf of the Debtors shall not be discharged or impaired by confirmation of the Plan. Such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors pursuant to the Plan of Reorganization, and shall continue as obligations of the Reorganized Debtors.

58. Releases, Exculpations, and Injunctions.

(a) The release, exculpation, and injunction provisions contained in the Plan are fair and equitable, are given for valuable consideration, and are in the best interests of the Debtors and their chapter 11 estates, and such provisions shall be effective and binding upon all persons and entities.

(b) Notwithstanding anything to the contrary in the Plan, including Sections 10.2 and 10.3 of the Plan, and this Confirmation Order, with respect to the collective bargaining agreements between the Debtors and Service Employees

International Union and/or its affiliated local unions (collectively, the "Union"), no grievance that is unresolved or unliquidated under the applicable dispute resolution procedures as of the Effective Date shall be released, waived, or discharged. The foregoing shall not require the Debtors to pay, except under the terms of the Plan, any such grievance ultimately resolved in the Union's favor arising under a collective bargaining agreement under negotiation for which no collective bargaining agreement is concluded after the Effective Date; however, nothing in this Confirmation Order shall prevent the parties from reaching agreement regarding the disposition and payment of any such grievance other than under the terms of the Plan.

59. Subsidiary Guaranties. Pursuant to Section 5.14 of the Plan, Claims based upon guaranties of collection, payment, or performance of any obligation of the Debtors made by any direct or indirect subsidiary of Genesis or Multicare which is not a Debtor and all Claims against any such subsidiary for which any of the Debtors are jointly or severally liable, in each case which arise at any time prior to the Confirmation Date, shall be discharged, released, extinguished, and of no further force and effect, unless the appropriate Debtor otherwise agrees in writing to the beneficiary of such guaranties, including, without limitation, the Multicare Debtors' agreement to re-execute any guaranty by any direct or indirect subsidiary of Multicare on the bonds relating to Subclass M1-1 (Rosewood Center (Taylor County, West Virginia)).

60. Termination of Injunctions and Automatic Stay. Pursuant to Section 10.4 of the Plan, all injunctions or stays arising under or entered during the Reorganization Cases under sections 105 or 362 of the Bankruptcy Code or otherwise,

and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such order.

61. Cancellation of Existing Securities and Agreements. Pursuant to Section 5.11 of the Plan, except for purposes of evidencing a right to distributions under the Plan or otherwise provided in the Plan, on the Effective Date all the agreements and other documents evidencing the Claims or rights of any holder of a Claim against the Debtors, including all indentures and notes evidencing such Claims and any options or warrants to purchase Equity Interests, obligating the Debtors to issue, transfer, or sell Equity Interests or any other capital stock of the Debtors, shall be canceled; *provided, however*, that the indentures relating to the Genesis Senior Subordinated Note Claims and the Multicare Senior Subordinated Note Claims shall continue in effect solely for the purposes of (i) allowing the indenture trustees to make any distributions on account of Classes G5 and M5 pursuant to the Plan and to perform such other necessary administrative functions with respect thereto, and (ii) permitting the indenture trustees to maintain any rights or liens they may have for fees, costs, and expenses under the indentures.

62. Nonoccurrence of Effective Date. In the event that the Effective Date does not occur, then (i) the Plan, (ii) assumption or rejection of executory contracts or unexpired leases pursuant to the Plan, (iii) any document or agreement executed pursuant to the Plan, and (iv) any actions, releases, waivers, or injunctions authorized by this Confirmation Order or any order in aid of consummation of the Plan shall be deemed null and void. In such event, nothing contained in this Confirmation Order, any order in aid of consummation of the Plan, or the Plan, and no acts taken in preparation for

consummation of the Plan, (a) shall be deemed to constitute a waiver or release of any Claims or Equity Interests by or against the Debtors or any other persons or entities, to prejudice in any manner the rights of the Debtors or any person or entity in any further proceedings involving the Debtors or otherwise, or to constitute an admission of any sort by the Debtors or any other persons or entities as to any issue, or (b) shall be construed as a finding of fact or conclusion of law in respect thereof.

63. Notice of Entry of Confirmation Order. On or before the tenth (10th) Business Day following the date of entry of this Confirmation Order, the Debtors shall serve notice of entry of this Confirmation Order pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c) on all creditors and interest holders, the United States Trustee, and other parties in interest, by causing notice of entry of the Confirmation Order (the "Notice of Confirmation"), to be delivered to such parties by first-class mail, postage prepaid. The notice described herein is adequate under the particular circumstances and no other or further notice is necessary. The Debtors also shall cause the Notice of Confirmation to be published as promptly as practicable after the entry of this Confirmation Order once in each of *The New York Times* (National Edition), *The Wall Street Journal* (National Edition), *USA Today*, *The Tampa Tribune*, *The Baltimore Sun*, *The Philadelphia Inquirer*, and *The Boston Globe*.

64. Notice of Effective Date. Within five (5) Business Days following the occurrence of the Effective Date, the Reorganized Debtors shall file notice of the occurrence of the Effective Date and shall serve a copy of same on the parties identified in the General Service List as defined in the Order Pursuant to Sections 102 and 105 of

the Bankruptcy Code and Bankruptcy Rules 2002(m) and 9007 Establishing Notice

Procedures, dated July 28, 2000.

        65. Authorization to File Conformed Plan.  The Debtors are authorized to

file a conformed Plan, dated on the date hereof, which incorporates the Technical

Amendments and the Amendments to Comply with Confirmation Opinion within thirty

(30) days of the entry of this Confirmation Order.

        66. Binding Effect.  Pursuant to sections 1123(a) and 1142(a) of the

Bankruptcy Code and the provisions of this Confirmation Order, the Plan, the Plan

Supplement, and the Plan Documents shall apply and be enforceable notwithstanding any

otherwise applicable nonbankruptcy law.

        67. Severability.  Each term and provision of the Plan, as it may have been

altered or interpreted by the Bankruptcy Court in accordance with Section 12.7 of the

Plan, is valid and enforceable pursuant to its terms.

        68. Conflicts Between Order and Plan.  To the extent of any inconsistency

between the provisions of the Plan and this Confirmation Order, the terms and conditions

contained in this Confirmation Order shall govern.  The provisions of this Confirmation

Order are integrated with each other and are nonseverable and mutually dependent unless

expressly stated by further order of this Bankruptcy Court.

Dated: September 2⓪, 2001
       Wilmington, Delaware

                                        _____
                                        UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT A

----------------------------------------------------------x

| | |
|---|---|
| In re | : **Chapter 11 Case No.** |
| | : |
| **GENESIS HEALTH VENTURES, INC.**, *et al.*, | : **00-2692 (JHW)** |
| | : |
| Debtors. | : **(Jointly Administered)** |

----------------------------------------------------------x

| | |
|---|---|
| In re | : **Chapter 11 Case No.** |
| | : |
| **MULTICARE AMC, INC.**, *et al.*, | : **00-2494 (JHW)** |
| | : |
| Debtors. | : **(Jointly Administered)** |

----------------------------------------------------------x

## DEBTORS' JOINT PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

Genesis Health Ventures, Inc., The Multicare Companies, Inc., and the other above-captioned debtors and debtors in possession propose the following joint chapter 11 Plan of Reorganization, pursuant to section 1121(a) of title 11 of the United States Code:

## SECTION 1. DEFINITIONS AND INTERPRETATION

### A. Definitions.

The following terms used herein shall have the respective meanings defined below (such meanings to be equally applicable to both the singular and plural):

1.1. *Administrative Expense Claim* means any right to payment constituting a cost or expense of administration of any of the Reorganization Cases allowed under sections 503(b), 507(a)(1), and 1114(e) of the Bankruptcy Code, including, without limitation, any actual and necessary costs and expenses of preserving the Debtors' estates, any actual and necessary costs and expenses of operating the Debtors' businesses, any indebtedness or obligations incurred or assumed by the Debtors, as debtors in possession, during the Reorganization Cases, including, without limitation, for the acquisition or lease of property or an interest in property or the rendition of services, any allowances of compensation and reimbursement of expenses to the extent allowed by Final Order under sections 330 or 503 of the Bankruptcy Code, and any fees or charges assessed against the estates of the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

1.2. *Allowed* means, with reference to any Claim, (i) any Claim against any Debtor which has been listed by such Debtor in the Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (ii) any timely filed Claim as to which no objection to allowance has been interposed in accordance with Section 7.1 hereof or such other applicable period of limitation fixed by the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or as to which any objection has been determined by a Final Order to the extent such objection is determined in favor of the respective holder, or (iii) any Claim expressly allowed by a Final Order or hereunder.

1

1.3. **Amended Bylaws** means the Bylaws of Reorganized Genesis, as restated, and which shall be substantially in the form set forth in the Plan Supplement.

1.4. **Amended Certificate of Incorporation** means the Certificate of Incorporation of Reorganized Genesis, as restated, and which shall be substantially in the form set forth in the Plan Supplement.

1.5. **Bankruptcy Code** means title 11 of the United States Code, as amended from time to time, as applicable to the Reorganization Cases.

1.6. **Bankruptcy Court** means the United States District Court for the District of Delaware having jurisdiction over the Reorganization Cases and, to the extent of any reference made under section 157 of title 28 of the United States Code, the unit of such District Court having jurisdiction over the Reorganization Cases under section 151 of title 28 of the United States Code.

1.7. **Bankruptcy Rules** means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, applicable to the Reorganization Cases, and any Local Rules of the Bankruptcy Court.

1.8. **Business Day** means any day other than a Saturday, a Sunday, or any other day on which banking institutions in New York, New York are required or authorized to close by law or executive order.

1.9. **Cash** means legal tender of the United States of America.

1.10. **Catch-up Distribution** means with respect to each holder of an Allowed Claim in Classes G4, G5, M4, and M5, the difference between (i) the number of shares of New Common Stock or New Warrants such holder would have received if the resolution of all Disputed Claims in such Classes had been known on the Effective Date, and (ii) the aggregate number of shares of New Common Stock or New Warrants previously received by such holder.

1.11. **Claim** has the meaning set forth in section 101 of the Bankruptcy Code.

1.12. **Class** means any group of Claims or Equity Interests classified by the Plan of Reorganization pursuant to section 1122(a)(1) of the Bankruptcy Code.

1.13. **Collateral** means any property or interest in property of the estate of any Debtor subject to a lien, charge, or other encumbrance to secure the payment or performance of a Claim, which lien, charge, or other encumbrance is not subject to avoidance under the Bankruptcy Code.

1.14. **Commencement Date** means (i) June 22, 2000 with respect to the Genesis Debtors (other than Healthcare Resources Corp.) and the Multicare Debtors, and (ii) July 31, 2000 with respect to Healthcare Resources Corp.

1.15. **Confirmation Date** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

1.16. **Confirmation Hearing** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan of Reorganization, as such hearing may be adjourned or continued from time to time.

1.17. **Confirmation Order** means the order of the Bankruptcy Court confirming the Plan of Reorganization pursuant to section 1129 of the Bankruptcy Code.

1.18. **Debtors** means the Genesis Debtors and the Multicare Debtors.

1.19. **Disbursing Agent** means any entity (including any applicable Debtor if it acts in such capacity) in its capacity as a disbursing agent under Section 6.4 hereof.

1.20. **Disputed Claim** means any Claim which has not been Allowed pursuant to the Plan of Reorganization or a Final Order, *and*

(a)      if no proof of claim has been filed by the applicable deadline: (i) a Claim that has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; or (ii) a Claim that has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but as to which the Debtors or Reorganized Debtors or any other party in interest has interposed an objection or request for estimation which has not been withdrawn or determined by a Final Order; *or*

(b)      if a proof of claim or request for payment of an Administrative Claim has been filed by the applicable deadline: (i) a Claim for which no corresponding Claim has been or hereafter is listed on the Schedules; (ii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as other than disputed, contingent, or unliquidated, but the nature or amount of the Claim as asserted in the proof of claim varies from the nature and amount of such Claim as listed on the Schedules; (iii) a Claim for which a corresponding Claim has been or hereafter is listed on the Schedules as disputed, contingent, or unliquidated; (iv) a Claim for which a timely objection or request for estimation is interposed by the Debtors or the Reorganized Debtors which has not been withdrawn or determined by a Final Order; or (v) any Tort Claim.

1.21. **Distribution Record Date** means the Confirmation Date.

1.22. **Effective Date** means a Business Day on or after the Confirmation Date specified by Genesis and Multicare on which (i) no stay of the Confirmation Order is in effect, and (ii) the condition to the effectiveness of the Plan of Reorganization specified in Section 9 hereof has been satisfied or waived.

1.23. **Equity Interest** means the interest of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common or preferred stock or other instrument evidencing a present ownership interest in any of the Debtors, whether or not transferable, or any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.24. **Final Distribution Date** means, in the event there exist on the Effective Date any Disputed Claims classified in Classes G4, G5, M4, or M5, a date selected by the Reorganized Debtors, in their sole discretion, on which all such Disputed Claims have been resolved by Final Order.

1.25. **Final Order** means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Reorganization Cases, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall have been denied or

resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, reargument, or rehearing shall have expired; *provided, however*, that the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

1.26. **Genesis** means Genesis Health Ventures, Inc., a Pennsylvania corporation, the parent debtor or debtor in possession, as the context requires.

1.27. **Genesis Common Stock Interest** means the Equity Interest of any holder of the authorized common stock issued by Genesis or any option, warrant, or right, contractual or otherwise, to acquire any such Equity Interest.

1.28. **Genesis Debtors** means Genesis and the entities listed on Exhibit A hereto.

1.29. **Genesis General Unsecured Claim** means any Claim against any of the Genesis Debtors that (a) is not a Genesis Other Secured Claim, Genesis Senior Lender Claim, Administrative Expense Claim, Priority Tax Claim, Genesis Priority Non-Tax Claim, Genesis Senior Subordinated Note Claim, Genesis Intercompany Claim, or Genesis Punitive Damage Claim, or (b) is otherwise determined by the Bankruptcy Court to be a Genesis General Unsecured Claim.

1.30. **Genesis Intercompany Claim** means a Claim held by a wholly-owned Genesis Debtor against another wholly-owned Genesis Debtor.

1.31. **Genesis Other Secured Claim** means any Secured Claim against any of the Genesis Debtors not constituting a secured Genesis Senior Lender Claim.

1.32. **Genesis Priority Non-Tax Claim** means any Claim against any of the Genesis Debtors other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.33. **Genesis Punitive Damage Claim** means any Claim against any of the Genesis Debtors, whether secured or unsecured, for any fine, penalty, forfeiture, attorneys' fees (to the extent such attorneys' fees are punitive in nature), or for multiple, exemplary, or punitive damages, to the extent that such fine, penalty, forfeiture, attorneys' fees, or damages is not compensation for actual pecuniary loss suffered by the holder of such Claim and not statutorily prescribed.

1.34. **Genesis Reorganization Cases** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Genesis Debtors on June 22, 2000, and July 31, 2000 in the United States District Court for the District of Delaware and styled *In re Genesis Health Ventures, Inc., et al.*, 00-2692 (JHW).

1.35. **Genesis Senior Lender Agreements** means (i) that certain Fourth Amended and Restated Credit Agreement, dated as of August 20, 1999, among Genesis, certain other Genesis Debtors named therein , Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lender parties thereto, and any of the documents and instruments relating thereto or referred to therein, (ii) that certain Amended and Restated Synthetic Lease Financing Facility, dated as of October 7, 1996, among Genesis, Genesis Eldercare Properties, Inc., Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lender parties thereto, and any of the documents and instruments relating thereto, and (iii) any Swap Agreement (as defined in that certain Fourth Amended and Restated Collateral Agency Agreement, dated as of August 20, 1999, among Genesis, Mellon Bank, N.A., as agent for the lenders party to the Fourth Amended and Restated Credit Agreement, as agent for the lenders party

to the Amended and Restated Synthetic Lease Financing Facility, and as collateral agent for the secured parties thereto), among Genesis and the counterparties to such Swap Agreement.

1.36. **Genesis Senior Lender Claim** means any Claim against any of the Genesis Debtors based on the Genesis Senior Lender Agreements (inclusive of postpetition interest) net of all Cash payments made by the Genesis Debtors to the holders of such Claims on or after the Commencement Date; *provided, however,* that the Claims of Citibank, N.A. in connection with the prepetition termination of interest rate hedging agreements are Genesis Senior Lender Claims to the extent of $17,290,962.

1.37. **Genesis Senior Subordinated Note Claim** means a Claim against Genesis arising under or in connection with (i) the Indenture, dated as of June 15, 1995, between Genesis and State Street Bank and Trust Company, as trustee, as such Indenture may have been amended or modified, and the $120,000,000 of 9-3/4% Senior Subordinated Notes due 2005 issued thereunder, (ii) the Indenture, dated as of October 7, 1996, between Genesis and State Street Bank and Trust Company, as successor trustee, as such Indenture may have been amended or modified, and the $125,000,000 of 9-1/4% Senior Subordinated Notes due 2006 issued thereunder, (iii) the Indenture, dated as of December 23, 1998, between Genesis and The Bank of New York, as trustee, as such Indenture may have been amended or modified, and the $125,000,000 of 9-7/8% Senior Subordinated Notes due 2009 issued thereunder, or (iv) the Indenture, dated as of September 15, 1995, between Grancare, Inc. and Marine Midland Bank, as trustee, as such Indenture may have been amended or modified, and the $100,000,000 of 9-3/8% Senior Subordinated Notes due 2005 issued thereunder, of which $1,590,000 remains outstanding, excluding the fees and expenses of the trustees under these Indentures, which shall be paid pursuant to Section 2.5 hereof.

1.38. **Insured Claim** means any Claim arising from an incident or occurrence that is covered under any of the Debtors' insurance policies.

1.39. **Multicare** means Genesis ElderCare Corp., a Delaware corporation, the parent debtor or debtor in possession, as the context requires, and the owner of all the common stock of The Multicare Companies, Inc., a Delaware corporation.

1.40. **Multicare Common Stock Interest** means the Equity Interest of any holder of the authorized common stock issued by Multicare or any option, warrant, or right, contractual or otherwise, to acquire any such Equity Interest.

1.41. **Multicare Debtors** means Multicare, a Delaware corporation, and the entities listed on Exhibit B hereto.

1.42. **Multicare General Unsecured Claim** means any Claim against any of the Multicare Debtors that (i) is not a Multicare Other Secured Claim, Multicare Senior Lender Claim, Administrative Expense Claim, Priority Tax Claim, Multicare Priority Non-Tax Claim, Multicare Senior Subordinated Note Claim, Multicare Intercompany Claim, or Multicare Punitive Damage Claim, or (ii) is otherwise determined by the Bankruptcy Court to be a Multicare General Unsecured Claim.

1.43. **Multicare Intercompany Claim** means a Claim held by a wholly-owned Multicare Debtor against another wholly-owned Multicare Debtor.

1.44. **Multicare Other Secured Claim** means any Secured Claim against any of the Multicare Debtors not constituting a secured Multicare Senior Lender Claim.

1.45.   ***Multicare Priority Non-Tax Claim*** means any Claim against any of the Multicare Debtors, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.46.   ***Multicare Punitive Damage Claim*** means any Claim against any of the Multicare Debtors, whether secured or unsecured, for any fine, penalty, forfeiture, or attorneys' fees (to the extent such attorneys' fees are punitive in nature), or for multiple, exemplary, or punitive damages, to the extent that such fine, penalty, forfeiture, attorneys' fees, or damages is not compensation for actual pecuniary loss suffered by the holder of such Claim and not statutorily prescribed.

1.47.   ***Multicare Reorganization Cases*** means the jointly administered cases under chapter 11 of the Bankruptcy Code commenced by the Multicare Debtors on June 22, 2000 in the United States District Court for the District of Delaware and styled *In re Multicare AMC, Inc., et al.*, 00-2494 (JHW).

1.48.   ***Multicare Senior Lender Agreements*** means that certain Credit Agreement dated as of October 9, 1997, as amended, among Multicare, certain other Multicare Debtors named therein, Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lender parties thereto, and any of the documents and instruments relating thereto.

1.49.   ***Multicare Senior Lender Claim*** means any Claim against any of the Multicare Debtors based on the Multicare Senior Lender Agreements net of all Cash payments made by the Multicare Debtors to the holders of such Claims on or after the Commencement Date.

1.50.   ***Multicare Senior Subordinated Note Claim*** means a Claim against The Multicare Companies, Inc. arising under or in connection with the Indenture, dated as of August 11, 1997, between Genesis ElderCare Acquisition Corp. (now known as The Multicare Companies, Inc.) and PNC Bank, National Association, as trustee, and the $250,000,000 of 9% Senior Subordinated Notes due 2007 issued thereunder.

1.51.   ***New Common Stock*** means the 41,000,000 shares of common stock of Reorganized Genesis authorized and issued hereunder on the Effective Date and any additional shares authorized for the purposes specified herein or in the Plan Securities.

1.52.   ***New Convertible Preferred Stock*** means the shares of convertible 6% PIK preferred stock of Reorganized Genesis with a liquidation preference of $42,600,000 authorized and issued hereunder on the Effective Date. The conversion rate for this preferred stock is $20.33 of liquidation value for each share of New Common Stock.

1.53.   ***New Management Incentive Plan*** means the management incentive plan for certain employees of Reorganized Genesis, as set forth in the Plan Supplement.

1.54.   ***New Multicare Stock*** means the common stock of Reorganized Multicare authorized and issued hereunder on the Effective Date.

1.55.   ***New Senior Notes*** means the Term B Notes in the aggregate principal amount of $242,605,000, authorized and issued hereunder by Reorganized Genesis on the Effective Date, the terms of which are governed by the Note Indenture, dated as of the Effective Date, between Reorganized Genesis and an indenture trustee acceptable to Reorganized Genesis and the steering group for the holders of the Senior Lender Claims, in the form set forth in the Plan Supplement and the security agreements, mortgages, and guaranties, dated as of the Effective Date, in the form set forth in the Plan Supplement.

The New Senior Notes are guarantied by all of the subsidiaries of Reorganized Genesis and are secured by the real estate and related fixtures of the Reorganized Debtors and each other subsidiary of Reorganized Genesis in accordance with the Security Agreement, in the form set forth in the Plan Supplement, subject to (i) any existing validly perfected and unavoidable security interests in Class G1 or Class M1, and (ii) any security interests granted to lenders providing financing under Section 5.4 hereof (and to lenders providing a replacement for or refinancing of such financing); *provided,* that a subsidiary of Reorganized Genesis shall not guaranty the New Senior Notes and/or grant a security interest in its assets to secure the New Senior Notes to the extent the existing debt instruments of such subsidiary or, in the case of Classes G1 and M1, the reinstated debt instruments of such Debtor, would prohibit such a guaranty or grant of a security interest. The New Senior Notes are also secured by a junior lien on the property securing the claims in Subclass G1-17.

1.56. *New Warrants* means warrants to purchase 4,559,475 shares of New Common Stock. The New Warrants shall expire on the first anniversary of the Effective Date and shall have an exercise price of $20.33 per share of New Common Stock. The New Warrants will be in the form set forth in the Plan Supplement.

1.57. *Plan Documents* means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan of Reorganization on the Effective Date, including but not limited to (i) the Amended Bylaws, (ii) the Amended Certificate of Incorporation, (iii) the Term B Note Indenture, (iv) the security agreements, mortgages, and guaranties, (v) the Certificate of Designation for the New Convertible Preferred Stock, (vi) the Plan of Merger, (vii) the Registration Rights Agreement, (viii) the settlement agreement referred to in Section 5.15 hereof, (ix) the settlement agreement referred to in Section 5.16 hereof, and (x) the New Management Incentive Plan. Each of the Plan Documents to be entered into as of the Effective Date will be filed in draft form in the Plan Supplement.

1.58. *Plan of Merger* means that certain Plan of Merger among Genesis, Multicare Acquisition Corporation, a wholly-owned, indirect subsidiary of Genesis, and Multicare, in the form set forth in the Plan Supplement.

1.59. *Plan of Reorganization* means this joint chapter 11 plan of reorganization, including the exhibits hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms hereof.

1.60. *Plan Securities* means, collectively, the New Senior Notes, the New Convertible Preferred Stock, the New Common Stock, and the New Warrants.

1.61. *Plan Supplement* means a supplemental appendix to the Plan of Reorganization that will contain the draft form of the Plan Documents to be entered into as of the Effective Date, to be filed 10 days before the date of the Confirmation Hearing, and in any event no later than 5 days prior to the last date by which votes to accept or reject the Plan of Reorganization must be submitted. Documents to be included in the Plan Supplement will be posted at www.ghv.com as they become available, but no later than 5 days prior to the last date by which votes to accept or reject the Plan must be submitted.

1.62. *Priority Non-Tax Claim* means any Claim, other than an Administrative Expense Claim or a Priority Tax Claim, entitled to priority in payment as specified in section 507(a)(3), (4), (5), (6), (7), or (9) of the Bankruptcy Code.

1.63. *Priority Tax Claim* means any Claim of a governmental unit of the kind entitled to priority in payment as specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

1.64. **Ratable Proportion** means the ratio (expressed as a percentage) of the amount of an Allowed Claim in a Class to the aggregate amount of all Allowed Claims in the same Class.

1.65. **Reorganization Cases** means the Genesis Reorganization Cases and the Multicare Reorganization Cases.

1.66. **Reorganized Debtors** means Reorganized Genesis and each of the Debtors listed on Exhibits A and B hereto.

1.67. **Reorganized Genesis** means Genesis, as reorganized as of the Effective Date in accordance with the Plan of Reorganization and after giving effect to the merger described in Section 5.2 hereof.

1.68. **Reorganized Multicare** means Multicare, as reorganized as of the Effective Date in accordance with the Plan of Reorganization before giving effect to the merger described in Section 5.2 hereof.

1.69. **Schedules** means the schedules of assets and liabilities and the statement of financial affairs filed by the Genesis Debtors or the Multicare Debtors under section 521 of the Bankruptcy Code, Bankruptcy Rule 1007, and the Official Bankruptcy Forms of the Bankruptcy Rules as such schedules and statements have been or may be supplemented or amended through the Confirmation Date.

1.70. **Secured Claim** means a Claim to the extent (i) secured by Collateral, the amount of which is equal to or less than the value of such Collateral (A) as set forth in the Plan of Reorganization, (B) as agreed to by the holder of such Claim and the Debtors, or (C) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code, or (ii) secured by the amount of any rights of setoff of the holder thereof under section 553 of the Bankruptcy Code.

1.71. **Senior Lender Claim** means the Genesis Senior Lender Claims and the Multicare Senior Lender Claims.

1.72. **Tort Claim** means any Claim related to personal injury, property damage, products liability, wrongful death, employment litigation, or other similar Claims against any of the Debtors which arise out of events which occurred, in whole or in part, prior to the Commencement Date.

B. *Interpretation; Application of Definitions and Rules of Construction.*

Unless otherwise specified, all section or exhibit references in the Plan of Reorganization are to the respective section in, or exhibit to, the Plan of Reorganization, as the same may be amended, waived, or modified from time to time. The words "herein," "hereof," "hereto," "hereunder," and other words of similar import refer to the Plan of Reorganization as a whole and not to any particular section, subsection, or clause contained therein. A term used herein that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the Plan of Reorganization. The headings in the Plan of Reorganization are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.

## SECTION 2.  ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS

### 2.1.  *Administrative Expense Claims.*

Except to the extent that a holder of an Allowed Administrative Expense Claim agrees to a different treatment, the Debtors shall pay to each holder of an Allowed Administrative Expense Claim Cash in an amount equal to such Claim in, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim; *provided, however,* that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course of business by the Debtors, as debtors in possession, or liabilities arising under loans or advances to or other obligations incurred by the Debtors, as debtors in possession, whether or not incurred in the ordinary course of business, shall be paid by the Debtors in the ordinary course of business, consistent with past practice and in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions; and *provided further, however,* that the liabilities of Genesis and Multicare under the Revolving Credit and Guaranty Agreement referred to in Section 2.4 hereof shall be paid as set forth in such Section.

### 2.2.  *Compensation and Reimbursement Claims.*

All entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under section 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code (i) shall file their respective final applications for allowance of compensation for services rendered and reimbursement of expenses incurred by the date that is forty-five (45) days after the Effective Date, and (ii) shall be paid in full in such amounts as are allowed by the Bankruptcy Court (A) upon the later of (i) the Effective Date, and (ii) the date upon which the order relating to any such Administrative Expense Claim is entered, or (B) upon such other terms as may be mutually agreed upon between the holder of such an Administrative Expense Claim and the Debtors or, on and after the Effective Date, the Reorganized Debtors.  The Reorganized Debtors are authorized to pay compensation for services rendered or reimbursement of expenses incurred after the Confirmation Date and until the Effective Date in the ordinary course and without the need for Bankruptcy Court approval.

### 2.3.  *Priority Tax Claims.*

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, each holder of an Allowed Priority Tax Claim shall receive, at the sole option of the Debtors, (i) Cash in an amount equal to such Allowed Priority Tax Claim on, or as soon thereafter as is reasonably practicable, the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date such Priority Tax Claim becomes an Allowed Priority Tax Claim, or (ii) equal annual Cash payments in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate equal to eight percent (8%), over a period not exceeding six (6) years after the date of assessment of such Allowed Priority Tax Claim.  All Allowed Priority Tax Claims that are not due and payable on or before the Effective Date shall be paid in the ordinary course of business as such obligations become due.

### 2.4.  *DIP Credit Agreement Claims.*

On the Effective Date, (i) Genesis shall pay or arrange for the payment of all amounts outstanding under that certain Revolving Credit and Guaranty Agreement, dated as of June 22, 2000, as amended, among Genesis, certain other Genesis Debtors named therein, Mellon Bank N.A., as

administrative agent, certain co-agents named therein, and the lenders party thereto, and (ii) Multicare shall pay or arrange for payment of all amounts outstanding under that certain Revolving Credit and Guaranty Agreement, dated as of June 22, 2000, as amended, among Multicare, certain other Multicare Debtors named therein, Mellon Bank N.A., as administrative agent, certain co-agents named therein, and the lenders party thereto. Once such payments have been made, these agreements and any agreements or instruments related thereto shall be deemed terminated (subject in all respects to any carve-out approved by the Bankruptcy Court in the Bankruptcy Court orders approving the Revolving Credit and Guaranty Agreements on a final basis), and Mellon Bank, N.A., as administrative agent, and the lenders thereunder shall take all reasonable action to confirm the removal of any liens on the properties of the Genesis Debtors and the Multicare Debtors securing such Revolving Credit and Guaranty Agreements. On the Effective Date, any outstanding letters of credit issued under such agreements shall be either replaced or secured by letters of credit issued under the exit facility described in Section 5.4 hereof.

2.5. **_Special Provisions Regarding the Indenture Trustees' Fees and Expenses._**

(a)    The reasonable fees and expenses of each trustee under an Indenture described in Sections 1.37 and 1.50 hereof (an "Indenture Trustee") (which includes the reasonable fees and expenses of any professionals retained by the Indenture Trustees), shall be paid in accordance with the procedures established in this Section 2.5. Provided that such fees and expenses are paid in Cash in full by Genesis or Reorganized Genesis, distributions received by holders of Allowed Genesis Senior Subordinated Note Claims and Allowed Multicare Senior Subordinated Note Claims pursuant to this Plan will not be reduced on account of the payment of any Indenture Trustee's fees and expenses.

(b)    Ten (10) days prior to the Effective Date, each Indenture Trustee will submit to Genesis appropriate documentation in support of the fees and expenses incurred by such Indenture Trustee through that date (including any estimated fees and expenses through the Effective Date), whether incurred prior to or subsequent to the Commencement Date, together with a detailed, reasonable estimate of any fees and expenses to be incurred thereafter. Such estimate may include, without limitation, projected fees and expenses relating to surrender and cancellation of notes, distribution of securities, and fees and expenses to be incurred in respect of any challenge to the claims asserted by the Indenture Trustee, whether based on the notes or the claimed amount of such fees and expenses. On or prior to the Effective Date, Genesis will pay the undisputed amount of each Indenture Trustee's fees and expenses.

(c)    No later than thirty (30) days after the Effective Date, or as soon thereafter as may be practical, each Indenture Trustee will deliver to Reorganized Genesis a final invoice for its reasonable fees and expenses incurred through the Effective Date. Reorganized Genesis will have a period of thirty (30) days after receipt to review the final invoice and provide the Indenture Trustee with any objection to the final invoice, stating with specificity its objections to particular charges. If no objection is received by the Indenture Trustee within thirty (30) days after the Indenture Trustee provided Reorganized Genesis with its final invoice, then the Indenture Trustee shall be paid such amount without the need for any further approval of the Bankruptcy Court. If Reorganized Genesis timely advises the Indenture Trustee in writing that it objects to all or a portion of such fees, which objection states with specificity its objection to particular charges, (i) Reorganized Genesis shall pay the undisputed portion of the fees and expenses, and (ii) such Indenture Trustee, at its option, may either submit the disputed portion to the Bankruptcy Court for resolution or exercise its rights under its respective indenture. The Indenture Trustee will not be required to file a fee application or to comply with guidelines and rules applicable to a fee application, and will not be subject to section 330 or 503(b) of the Bankruptcy Code.

(d)    Subject to Section 5.11 hereof, each Indenture Trustee's charging lien will be discharged solely upon payment in full of such fees and expenses and termination of the Indenture Trustee's duties. Accordingly, nothing herein shall be deemed to impair, waive, or discharge the

Indenture Trustee charging lien for any fees and expenses not paid by Reorganized Genesis. Pursuant to Section 6.5(b) hereof, each Indenture Trustee shall be entitled to its fees and expenses incurred after the Effective Date as a Disbursing Agent.

## SECTION 3. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The following tables designate the Classes of Claims against and Equity Interests in the Genesis Debtors and the Multicare Debtors, respectively, and specify which of those Classes are (i) impaired or unimpaired by the Plan of Reorganization, (ii) entitled to vote to accept or reject the Plan of Reorganization in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to reject the Plan of Reorganization.

### 3.1. *Genesis Classes.*

| *Class* | *Designation* | *Impairment* | *Entitled to Vote* |
|---|---|---|---|
| Subclasses G1-1 through G1-12 | Genesis Other Secured Claims | Unimpaired | No |
| Subclasses G1-13 through G1-17 | Genesis Other Secured Claims | Impaired | Yes |
| Class G2 | Genesis Senior Lender Claims | Impaired | Yes |
| Class G3 | Genesis Priority Non-Tax Claims | Unimpaired | No |
| Class G4 | Genesis General Unsecured Claims | Impaired | Yes |
| Class G5 | Genesis Senior Subordinated Note Claims | Impaired | Yes |
| Class G6 | Genesis Intercompany Claims | Unimpaired | No |
| Class G7 | Genesis Punitive Damage Claims | Impaired | No (deemed to reject) |
| Class G8 | Genesis Series G Preferred Stock Interests | Impaired | No (deemed to reject) |
| Class G9 | Genesis Series H Preferred Stock Interests | Impaired | No (deemed to reject) |
| Class G10 | Genesis Series I Preferred Stock Interests | Impaired | No (deemed to reject) |
| Class G11 | Genesis Common Stock Interests | Impaired | No (deemed to reject) |

### 3.2. *Multicare Classes.*

| *Class* | *Designation* | *Impairment* | *Entitled to Vote* |
|---|---|---|---|
| Subclasses M1-1 through M1-6 | Multicare Other Secured Claims | Unimpaired | No |
| Subclass M1-7 | Multicare Other Secured Claims | Impaired | Yes |
| Class M2 | Multicare Senior Lender Claims | Impaired | Yes |
| Class M3 | Multicare Priority Non-Tax Claims | Unimpaired | No |
| Class M4 | Multicare General Unsecured Claims | Impaired | Yes |
| Class M5 | Multicare Senior Subordinated Note Claims | Impaired | Yes |
| Class M6 | Multicare Intercompany Claims | Unimpaired | No |
| Class M7 | Multicare Punitive Damage Claims | Impaired | No (deemed to reject) |
| Class M8 | Multicare Common Stock Interests | Impaired | No (deemed to reject) |

### 3.3. *Subclasses for Class G1.*

For convenience of identification, the Plan of Reorganization classifies the Allowed Claims in Class G1 as a single Class. This Class is actually a group of subclasses, depending on the underlying property securing such Allowed Claims, and each subclass is treated hereunder as a distinct Class for voting and distribution purposes. The following table identifies the material subclasses for Class G1.

| _Subclass_ | _Designation_ | _Impairment_ | _Entitled to Vote_ |
|---|---|---|---|
| G1-1 | Broad Street Office Building<br>148 West State Street, Kennett Square, Pa. (Pa. IDA) | Unimpaired | No |
| G1-2 | Broad Street Office Building<br>148 West State Street, Kennett Square, Pa. (Pa. IDA) | Unimpaired | No |
| G1-3 | Pleasant View Center (HUD) | Unimpaired | No |
| G1-4 | Country Village Center (HUD) | Unimpaired | No |
| G1-5 | Abington Manor (Lackawanna County IDA) | Unimpaired | No |
| G1-6 | Silver Lake Center (Del. EDA Bonds) | Unimpaired | No |
| G1-7 | River Street Center (Luzerne County IDA) | Unimpaired | No |
| G1-8 | Kresson View Center (NJEDA Refunding Bonds) | Unimpaired | No |
| G1-9 | Mifflin Court (ElderTrust) | Unimpaired | No |
| G1-10 | Oaks Center (ElderTrust) | Unimpaired | No |
| G1-11 | Coquina Assisted Living (ElderTrust) | Unimpaired | No |
| G1-12 | Homestead Center<br>Kimberly Hall South Center<br>Kimberly Hall North Center<br>Seaford Center<br>Milford Center<br>Windsor Center<br>(U.S. Bank, N.A., as trustee for the "Bradford Bonds") | Unimpaired | No |
| G1-13 | Brakely Park Center (HUD) | Impaired | Yes |
| G1-14 | North Cape Center (HUD) | Impaired | Yes |
| G1-15 | Oak Hill Center (HUD) | Impaired | Yes |
| G1-16 | Rittenhouse Pine Center (Meditrust) | Impaired | Yes |
| G1-17 | Atlantis Center<br>Bowmans Center<br>Fairway Center<br>Oakwood Center<br>Riverwood Center<br>Tierra Center<br>Williamsburg Center<br>Windham Center<br>Woodmont Center<br>(synthetic lease lenders) | Impaired | Yes |

Subclass G1-8 consists of the secured Claim of SunTrust Bank, as successor indenture trustee ("SunTrust") under that certain Trust Indenture, dated as of May 1, 1990 (the "SunTrust Indenture"), between the New Jersey Economic Development Authority ("NJEDA") and SunTrust, pursuant to which NJEDA issued (i) those certain $1,175,000 New Jersey Economic Development Authority Economic Development Refunding Bonds (Geriatric and Medical Services, Inc. -- Care Inn of Voorhees Project) 1990 Series A; and (ii) those certain $5,000,000 New Jersey Economic Development Authority Economic Development Refunding Bonds (Geriatric and Medical Services, Inc. -- Care Inn of Voorhees Project) 1990 Series B (collectively, the "Kresson View Center Bonds"). The secured Claim of SunTrust in Subclass G1-8 is (i) allowed in the principal amount of $5,535,000, plus accrued and unpaid

interest, and reasonable costs and expenses, as more fully provided in the SunTrust Indenture and all other documents and agreements executed in connection with the Kresson View Center Bonds, and (ii) secured by a duly perfected, first priority mortgage and lien on certain real and personal property (whether now owned or hereafter acquired) of Geriatric and Medical Services, Inc. relating to a project known as the "Kresson View Center" f/k/a "Care Inn of Voorhees" located in the Township of Voorhees, New Jersey, including without limitation, all revenues and accounts arising therefrom, among other collateral. In addition, the secured Claim of SunTrust in Subclass G1-8 is guarantied pursuant to a Guaranty Agreement (the "Kresson View Center Guaranty") by and between Geriatric & Medical Companies, Inc. (as successor to Geriatric & Medical Centers, Inc.) and SunTrust.

### 3.4. *Subclasses for Class M1.*

For convenience of identification, the Plan of Reorganization classifies the Allowed Claims in Class M1 as a single Class. This Class is actually a group of subclasses, depending on the underlying property securing such Allowed Claims, and each subclass is treated hereunder as a distinct Class for voting and distribution purposes. The following table identifies the material subclasses for Class M1.

| Class | Designation | Impairment | Entitled to Vote |
|---|---|---|---|
| M1-1 | Rosewood Center (Tyler County, WV) | Unimpaired | No |
| M1-2 | Sisterville Center (Care Haven) (Tyler County, WV) | Unimpaired | No |
| M1-3 | Raleigh Center (WV Hospital Authority) | Unimpaired | No |
| M1-4 | Westford Center (HUD) | Unimpaired | No |
| M1-5 | Willows Center Cedar Ridge Center Dawn View Center (MediTrust) | Unimpaired | No |
| M1-6 | Teays Valley (West Virginia Hospital Authority) | Unimpaired | No |
| M1-7 | Point Pleasant (Mason County WV) | Impaired | Yes |

## SECTION 4. TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1. *Genesis Other Secured Claims (Class G1).*

Except for the Genesis Other Secured Claims in Subclasses G1-8 and G1-12, the treatment of which is set forth below, on or as soon as reasonably practicable after the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Genesis Other Secured Claim becomes Allowed, each holder of an Allowed Genesis Other Secured Claim shall receive, at the option of the Reorganized Debtors, either (i) Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Genesis Other Secured Claim, (ii) the proceeds of the sale or disposition of the Collateral securing such Allowed Genesis Other Secured Claim to the extent of the value of the holder's secured interest in the Allowed Genesis Other Secured Claim, (iii) the Collateral securing such Allowed Genesis Other Secured Claim, (iv) a note with periodic Cash payments having a present value equal to the amount of the Allowed Genesis Other Secured Claim, (v) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of such Allowed Genesis Other Secured Claim is entitled, or (vi) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code. In the event the Reorganized Debtors treat a Claim under

clause (i) or (ii) of this Section, the liens securing such Genesis Other Secured Claim shall be deemed released. In particular, the following subclasses shall receive the treatment described below.

(a)     *Subclass G1-8.*  As of the Effective Date, the Genesis Debtors' obligations in connection with the Kresson View Center Bonds shall be reinstated and each and every indenture, loan agreement, mortgage, security agreement, guaranty, subordination agreement, and other document executed in connection with the Kresson View Center Bonds, including, without limitation, the Kresson View Center Guaranty and the Subordination Agreement dated May 1, 1990 executed by Mellon Bank N.A., as agent, in favor of NJEDA (all of the foregoing, together with the Kresson View Center Bonds, the "Kresson View Center Bond Documents"), shall be reinstated. All legal, equitable, and contractual rights under the Kresson View Center Bond Documents and the Kresson View Center Bonds shall remain unaltered after confirmation of the Plan. To the extent necessary to reinstate all such obligations, rights, agreements, and documents, the Genesis Debtors shall execute and obtain such replacement agreements and documents, including, without limitation, a guaranty, subordination agreements, and UCC financing statements, each in form and substance materially identical to existing agreements and documents, as SunTrust may require. As of the Effective Date, the maturity date of the Kresson View Center Bonds shall be reinstated. On the Effective Date, the Genesis Debtors shall cure any default under the Kresson View Center Bonds and the Kresson View Center Bond Documents (including, without limitation, past due payments of principal), and shall reimburse SunTrust for all reasonable fees, costs, and expenses, including legal fees and expenses, which have accrued and are required to be paid under the relevant Kresson View Center Bond Documents.

(b)     *Subclass G1-12.*  Upon confirmation of the Plan, the claim of U.S. Bank Trust National Association ("U.S. Bank"), as successor indenture trustee pursuant to the Indenture of Mortgage and Deed of Trust, dated as of September 1, 1992 (the "U.S. Bank Indenture"), shall be deemed an Allowed Genesis Other Secured Claim in the principal amount of $19,337,000, plus accrued and unpaid interest, fees, and other costs. The Plan shall leave unaltered the legal, equitable, and contractual rights to which the holders of Claims in Subclass G1-12 are entitled, and the Allowed Claim of U.S. Bank in Subclass G1-12 shall be unimpaired under the Plan. In satisfaction of their Allowed Subclass G1-12 Claim, members of Subclass G1-12 shall receive, on or before the Effective Date, (i) all accrued and unpaid interest due under the 9 1/4% First Mortgage Bonds (Series A) due 2007 in the original principal amount of $25,000,000 (the "Bradford Bonds"), whether incurred prior to or after the Commencement Date, together with interest on interest, pursuant to the terms of the U.S. Bank Indenture, and (ii) all indenture trustee fees and expenses due under the U.S. Bank Indenture, including reasonable attorneys' fees, whether incurred prior to or after the Commencement Date. U.S. Bank shall submit to the Genesis Debtors an itemization of the amounts due and owing under the U.S. Bank Indenture ten (10) days prior to the Effective Date. From and after the Effective Date, all documents relating to the Bradford Bonds, including, but not limited to, the U.S. Bank Indenture, the mortgages securing repayment of the Bradford Bonds, and the bond instruments shall be deemed reinstated in their entirety. In connection with such reinstatement and as a result of the Genesis Debtors' failure to redeem the Bradford Bonds in April 2001, any holder of a Bradford Bond shall have the right for sixty (60) days following the Effective Date to present such Bradford Bonds for redemption in accordance with Article 9 of the U.S. Bank Indenture. Thereafter, the deadline to present the Bradford Bonds for redemption shall be governed by the applicable provisions of the Indenture. All rights and liens of U.S. Bank, as indenture trustee, shall survive to the same extent, validity, and priority as existed prior to the Commencement Date. Among other things, all of the mortgages securing repayment of the Bradford Bonds shall continue to be valid and perfected, and no further notice, filing, or other act shall be required to effect such perfection.

(c)     *Subclass G1-17.*  The holders of claims in Subclass G1-17 shall receive a mortgage note in the principal amount of $50,000,000. The mortgage note will bear interest at LIBOR plus 5% and will mature on the sixth anniversary of the Effective Date. The mortgage note will be

secured by (i) the Collateral presently securing the Claims in this subclass and (ii) a lien of equal priority with the New Senior Notes on the property securing such notes. The mortgage documents will permit a junior lien on the property securing the Claims in this subclass in favor of the New Senior Notes.

### 4.2. *Genesis Senior Lender Claims (Class G2).*

Holders of the Genesis Senior Lender Claims shall receive an aggregate of (i) Cash in an amount equal to interest on the Genesis Senior Lender Claims at contractual, nondefault rates, from the Commencement Date to the Effective Date (approximately $195,979,000 of which will have already been paid by the Genesis Debtors by June 30, 2001, in connection with certain cash collateral stipulations), (ii) $94,923,000 in New Senior Notes, (iii) New Convertible Preferred Stock with an aggregate liquidation preference of $31,000,000, and (iv) 30,485,079 shares of New Common Stock, representing approximately 74.35% of the total shares of New Common Stock to be issued and outstanding as of the Effective Date, subject to dilution from stock issuances occurring after the Effective Date, including, without limitation, in connection with the conversion of the New Convertible Preferred Stock, the exercise of the New Warrants, or options granted under the New Management Incentive Plan.

### 4.3. *Genesis Priority Non-Tax Claims (Class G3).*

Except to the extent that a holder of an Allowed Genesis Priority Non-Tax Claim against any of the Genesis Debtors has agreed to a different treatment of such Claim, each such holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date such Claim becomes Allowed, and (iii) the date for payment provided by any agreement or understanding between the parties.

### 4.4. *Genesis General Unsecured Claims (Class G4).*

Except to the extent that an Allowed Genesis General Unsecured Claim is an Insured Claim, the holders of Allowed Genesis General Unsecured Claims shall receive a proportionate allocation of (i) 1,689,147 shares of New Common Stock and (ii) New Warrants to purchase 2,835,645 shares of New Common Stock, based on the aggregate amount of Allowed Claims in Classes G4 and G5. The shares of New Common Stock allocated to Classes G4 and G5 represent approximately 4.12% of the total shares of New Common Stock to be issued and outstanding on the Effective Date, subject to dilution from stock issuances occurring after the Effective Date, including, without limitation, in connection with the conversion of the New Convertible Preferred Stock, the exercise of the New Warrants, or options granted under the New Management Incentive Plan. Each holder of an Allowed Genesis General Unsecured Claim shall receive its Ratable Proportion of shares of New Common Stock allocated to this Class based on the aggregate amount of the Allowed Claims in Classes G4 and G5. A holder of an Allowed Genesis General Unsecured Claim that is an Insured Claim shall be paid in the ordinary course of the business of the Reorganized Debtors to the extent that Claim is insured and shall have an Allowed Genesis General Unsecured Claim to the extent the applicable insurance policy does not provide coverage with respect to any portion of the Insured Claim.

### 4.5. *Genesis Senior Subordinated Note Claims (Class G5).*

The holders of Allowed Genesis Senior Subordinated Note Claims shall receive a proportionate allocation of (i) 1,689,147 shares of New Common Stock and (ii) New Warrants to purchase 2,835,645 shares of New Common Stock, based on the aggregate amount of Allowed Claims in Classes G4 and G5. The shares of New Common Stock allocated to Classes G4 and G5 represent approximately 4.12% of the total shares of New Common Stock to be issued and outstanding on the Effective Date and are subject to dilution from stock issuances occurring after the Effective Date,

including, without limitation, in connection with the conversion of the New Convertible Preferred Stock, the exercise of the New Warrants, or options granted under the New Management Incentive Plan. Each holder of an Allowed Genesis Senior Subordinated Note Claim shall receive its Ratable Proportion of the shares of New Common Stock allocated to this Class, based on the aggregate amount of the Allowed Claims in Classes G4 and G5.

### 4.6. *Genesis Intercompany Claims (Class G6).*

Each holder of a Genesis Intercompany Claim shall be unimpaired.

### 4.7. *Genesis Punitive Damage Claims (Class G7).*

Each holder of a Genesis Punitive Damage Claim shall receive no distribution under the Plan of Reorganization, but shall be paid in the ordinary course of the business of the Reorganized Debtors solely to the extent such claims are covered by applicable insurance policies and such insurance is permitted under governing state law.

### 4.8. *Genesis Series G Preferred Stock Interests (Class G8).*

All Equity Interests represented by the Series G Cumulative Convertible Preferred Stock issued by Genesis, and any Claims for dividends or a preference on liquidation or other rights in connection therewith, shall be deemed canceled as of the Effective Date, and each holder of such Equity Interest shall neither receive nor retain any property or interest in property on account of such Equity Interest.

### 4.9. *Genesis Series H Preferred Stock Interests (Class G9).*

All Equity Interests represented by the Series H Senior Convertible Participating Cumulative Preferred Stock issued by Genesis, and any Claims for dividends or a preference on liquidation or other rights in connection therewith, shall be deemed canceled as of the Effective Date, and each holder of such Equity Interest shall neither receive nor retain any property or interest in property on account of such Equity Interest.

### 4.10. *Genesis Series I Preferred Stock Interests (Class G10).*

All Equity Interests represented by the Series I Senior Convertible Exchangeable Participating Cumulative Preferred Stock issued by Genesis, and any Claims for dividends or a preference on liquidation or other rights in connection therewith, shall be deemed canceled as of the Effective Date, and each holder of such Equity Interest shall neither receive nor retain any property or interest in property on account of such Equity Interest.

### 4.11. *Genesis Common Stock Interests (Class G11).*

All Genesis Common Stock Interests shall be deemed canceled as of the Effective Date, and each holder of a Genesis Common Stock Interest shall neither receive nor retain any property or interest in property on account of such Genesis Common Stock Interest.

### 4.12. *Multicare Other Secured Claims (Class M1).*

On or as soon as reasonably practicable after the later of the Effective Date and the first Business Day after the date that is thirty (30) calendar days after the date a Multicare Other Secured

Claim becomes Allowed, each holder of an Allowed Multicare Other Secured Claim shall receive, at the option of the Reorganized Debtors, either (i) Cash in an amount equal to one hundred percent (100%) of the unpaid amount of such Allowed Multicare Other Secured Claim, (ii) the proceeds of the sale or disposition of the Collateral securing such Allowed Multicare Other Secured Claim to the extent of the value of the holder's secured interest in the Allowed Multicare Other Secured Claim, (iii) the Collateral securing such Allowed Multicare Other Secured Claim, (iv) a note with periodic Cash payments having a present value equal to the amount of the Allowed Multicare Other Secured Claim, (v) such treatment that leaves unaltered the legal, equitable, and contractual rights to which the holder of such Allowed Multicare Other Secured Claim is entitled, or (vi) such other distribution as necessary to satisfy the requirements of the Bankruptcy Code. In the event the Reorganized Debtors treat a Claim under clause (i) or (ii) of this Section, the liens securing such Multicare Other Secured Claims shall be deemed released; *provided, however*, that Subclasses M1-2 and M1-4 shall receive the treatment set forth in this Section 4.12(v), and Subclass M1-7 shall receive the treatment set forth in this Section 4.12(iii).

### 4.13. *Multicare Senior Lender Claims (Class M2).*

Holders of the Multicare Senior Lender Claims shall be entitled to receive 88.37% of the shares of New Multicare Stock. Pursuant to the Plan of Merger, such holders shall be deemed to immediately exchange such common stock for (i) $25,000,000 in Cash, (ii) $147,682,000 in New Senior Notes, (iii) shares of New Convertible Preferred Stock with a liquidation preference of $11,600,000, and (iv) 7,798,917 shares of New Common Stock, representing approximately 19.02% of the total shares of New Common Stock to be issued and outstanding as of the Effective Date, subject to dilution from stock issuances occurring after the Effective Date, including, without limitation, in connection with the conversion of the New Convertible Preferred Stock, the exercise of the New Warrants, or options granted under the New Management Incentive Plan.

### 4.14. *Multicare Priority Non-Tax Claims (Class M3).*

Except to the extent that a holder of an Allowed Multicare Priority Non-Tax Claim against any of the Multicare Debtors has agreed to a different treatment of such Claim, each such holder shall receive, in full satisfaction of such Claim, Cash in an amount equal to such Claim, on or as soon as reasonably practicable after the later of (i) the Effective Date, (ii) the date such Claim becomes Allowed, and (iii) the date for payment provided by any agreement or understanding between the parties.

### 4.15. *Multicare General Unsecured Claims (Class M4).*

Except to the extent that an Allowed Multicare General Unsecured Claim is an Insured Claim, the holders of Allowed Multicare General Unsecured Claims shall receive a proportionate allocation of 11.63% of the shares of New Multicare Stock, based on the aggregate amount of Allowed Claims in Classes M4 and M5. Pursuant to the merger described in Section 5.2 hereof, the shares of New Multicare Stock allocated to Classes M4 and M5 will be exchanged for (i) 1,026,857 shares of New Common Stock and (ii) New Warrants to purchase 1,723,830 shares of New Common Stock. The shares of New Common Stock allocated to Classes M4 and M5 represent approximately 2.50% of the total shares of New Common Stock to be issued and outstanding as of the Effective Date, subject to dilution from stock issuances occurring after the Effective Date, including, without limitation, in connection with the conversion of the New Convertible Preferred Stock, the exercise of the New Warrants, or options granted under the New Management Incentive Plan. Each holder of an Allowed Multicare General Unsecured Claim shall receive its Ratable Proportion of the shares of New Common Stock and New Warrants allocated to this Class, based on the aggregate amount of Allowed Claims in Classes M4 and M5. The holder of an Allowed Multicare General Unsecured Claim that is an Insured Claim shall be paid in the ordinary course of the business of the Reorganized Debtors to the extent that Claim is insured, and

shall have an Allowed Multicare General Unsecured Claim to the extent the applicable insurance policy does not provide coverage with respect to any portion of the Insured Claim.

### 4.16. *Multicare Senior Subordinated Note Claims (Class M5).*

The holders of Allowed Multicare Senior Subordinated Claims shall receive a proportionate allocation of 11.63% of the shares of New Multicare Stock, based on the aggregate amount of Allowed Claims in Classes M4 and M5. Pursuant to the merger described in Section 5.2 hereof, the shares of New Multicare Stock allocated to Classes M4 and M5 will be exchanged for (i) 1,026,857 shares of New Common Stock and (ii) New Warrants to purchase 1,723,830 shares of New Common Stock. The shares of New Common Stock allocated to Classes M4 and M5 represent approximately 2.50% of the total shares of New Common Stock to be issued and outstanding as of the Effective Date, subject to dilution from stock issuances occurring after the Effective Date, including, without limitation, in connection with the conversion of the New Convertible Preferred Stock, the exercise of the New Warrants, or options granted under the New Management Incentive Plan. Each holder of an Allowed Multicare Senior Subordinated Claim shall receive its Ratable Proportion of shares of New Common Stock and New Warrants allocated to this Class, based on the aggregate amount of Allowed Claims in Classes M4 and M5.

### 4.17. *Multicare Intercompany Claims (Class M6).*

Each holder of a Multicare Intercompany Claim shall be unimpaired.

### 4.18. *Multicare Punitive Damage Claims (Class M7).*

Each holder of a Multicare Punitive Damage Claim shall receive no distribution under the Plan of Reorganization, but shall be paid in the ordinary course of the business of the Reorganized Debtors solely to the extent such claims are covered by applicable insurance policies and such insurance is permitted under governing state law.

### 4.19. *Multicare Common Stock Interests (Class M8).*

All Multicare Common Stock Interests shall be deemed canceled as of the Effective Date, and each holder of a Multicare Common Stock Interest shall neither receive nor retain any property or interest in property on account of such Multicare Common Stock Interests.

## SECTION 5. MEANS FOR IMPLEMENTATION

### 5.1. *Deemed Consolidation of Debtors for Plan Purposes Only.*

(a) Subject to the occurrence of the Effective Date, the Genesis Debtors shall be deemed consolidated for the following purposes under the Plan of Reorganization: (i) no distributions shall be made under the Plan of Reorganization on account of the Genesis Intercompany Claims; (ii) all guaranties by any of the Genesis Debtors of the obligations of any other Genesis Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Genesis Debtor and any guaranty thereof executed by any other Genesis Debtor and any joint and several liability of any of the Genesis Debtors shall be deemed to be one obligation of the deemed consolidated Genesis Debtors; and (iii) each and every Claim filed or to be filed in the Reorganization Case of any of the Genesis Debtors shall be deemed filed against the deemed consolidated Genesis Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Genesis Debtors.

Such deemed consolidation, however, shall not (other than for purposes related to funding distributions under the Plan of Reorganization and as set forth above in this Section) affect: (i) the legal and organizational structure of the Reorganized Debtors; (ii) intercompany Claims by and among the Genesis Debtors or Reorganized Debtors; (iii) pre- and post-Commencement Date guaranties, liens, and security interests that are required to be maintained (A) in connection with executory contracts or unexpired leases that were entered into during the Genesis Reorganization Cases or that have been or will be assumed, (B) pursuant to the Plan of Reorganization, or (C) in connection with any financing entered into, or New Senior Notes issued, by the Reorganized Debtors on the Effective Date; and (iv) distributions out of any insurance policies or proceeds of such policies.

Notwithstanding anything contained in the Plan to the contrary, the deemed consolidation of the Genesis Debtors shall not have any effect on the Claims being reinstated and unimpaired in Class G1 of the Plan, and the legal, equitable, and contractual rights to which the holders of any such Claims is entitled shall be left unaltered by the Plan.

(b)     Subject to the occurrence of the Effective Date, the Multicare Debtors shall be deemed consolidated for the following purposes under the Plan of Reorganization: (i) no distributions shall be made under the Plan of Reorganization on account of Multicare Intercompany Claims; (ii) all guaranties by any of the Multicare Debtors of the obligations of any other Multicare Debtor arising prior to the Effective Date shall be deemed eliminated so that any Claim against any Multicare Debtor and any guaranty thereof executed by any other Multicare Debtor and any joint and several liability of any of the Multicare Debtors shall be deemed to be one obligation of the deemed consolidated Multicare Debtors; and (iii) each and every Claim filed or to be filed in the Reorganization Case of any of the Multicare Debtors shall be deemed filed against the deemed consolidated Multicare Debtors and shall be deemed one Claim against and obligation of the deemed consolidated Multicare Debtors.

Such deemed consolidation, however, shall not (other than for purposes related to funding distributions under the Plan of Reorganization and as set forth above in this Section) affect: (i) the legal and organizational structure of the Reorganized Debtors; (ii) intercompany Claims by and among the Multicare Debtors or Reorganized Debtors; (iii) pre- and post-Commencement Date guaranties, liens, and security interests that are required to be maintained (A) in connection with executory contracts or unexpired leases that were entered into during the Multicare Reorganization Cases or that have been or will be assumed, (B) pursuant to the Plan of Reorganization, or (C) in connection with any financing entered into by the Reorganized Debtors on the Effective Date; and (iv) distributions out of any insurance policies or proceeds of policies.

Notwithstanding anything contained in the Plan to the contrary, the deemed consolidation of the Multicare Debtors shall not have any effect on the Claims being reinstated and unimpaired in Class M1 of the Plan, and the legal, equitable, and contractual rights to which the holders of any such Claims is entitled shall be left unaltered by the Plan.

## 5.2.     *Merger of Corporate Entities.*

In accordance with the terms of the Plan of Merger and the votes of Genesis, as the sole shareholder of Multicare Acquisition Corporation, and the holders of the Multicare Senior Lender Claims, Multicare General Unsecured Claims, and Multicare Senior Subordinated Note Claims, Multicare Acquisition Corporation shall merge into Multicare, with Multicare being the surviving entity. On such merger, (i) the New Multicare Stock shall be exchanged for $147,682,000 of New Senior Notes and shares of New Convertible Preferred Stock with an aggregate liquidation preference of $11,600,000, to be distributed to holders of Allowed Claims in Class M2, 8,825,774 shares of New Common Stock, to be distributed to holders of Allowed Claims in Classes M2, M4, and M5, and 37.81% of New Warrants, to

be distributed to holders of Allowed Claims in Classes M4 and M5, (ii) Multicare Acquisition Corporation shall cease to exist as a separate legal entity, and (iii) Reorganized Multicare shall become a wholly-owned, indirect subsidiary of Reorganized Genesis.

### 5.3. *Authorization of Plan Securities.*

Reorganized Genesis is authorized to issue the Plan Securities in accordance with Sections 4 and 5.2 hereof, without the need for any further corporate action.

### 5.4. *Exit Facility.*

The Debtors are authorized to enter into new financing arrangements for purposes of funding obligations under the Plan of Reorganization, including the payment of Administrative Expense Claims and the repayment of obligations under the Debtors' respective Revolving Credit and Guaranty Agreements described in Section 2.4 hereof, and providing for working capital requirements. The new financing arrangements may be in any form acceptable to Reorganized Genesis, including, without limitation, a new revolving credit agreement and new Term A Notes, with priority in payment and collateral senior to the New Senior Notes.

### 5.5. *Waiver of Subordination.*

The distributions under the Plan of Reorganization do not take into account the relative priority of the Claims in each Class in connection with any contractual subordination provisions relating to the Genesis Senior Subordinated Note Claims and the Multicare Senior Subordinated Note Claims. Accordingly, the distributions to the holders of Claims in Classes G5 and M5 shall not be subject to levy, garnishment, attachment, or other legal process by any holder of indebtedness senior to the indebtedness of the holders of the Claims in Classes G5 and M5, in each case by reason of claimed contractual subordination rights. On the Effective Date, all creditors shall be deemed to have waived any and all contractual subordination rights which they may have with respect to such distribution, and the Confirmation Order shall permanently enjoin, effective as of the Effective Date, all holders of senior indebtedness from enforcing or attempting to enforce any such rights with respect to the distributions under the Plan of Reorganization to the holders of Claims in Classes G5 and M5.

### 5.6. *Registration Rights Agreement.*

On the Effective Date, Reorganized Genesis shall execute and deliver a registration rights agreement in the form set forth in the Plan Supplement, obligating Reorganized Genesis to register the Plan Securities under the Securities Exchange Act of 1933, as amended, upon the demand of any holder of 10% or more of the Plan Securities or the holders of 20% or more of the Plan Securities in the aggregate, and pursuant to customary "piggyback" provisions, all at the times and in accordance with the terms set forth in such registration rights agreement.

### 5.7. *Listing of New Common Stock.*

Reorganized Genesis shall use commercially reasonable efforts to cause the shares of New Common Stock to be listed on a national securities exchange or a qualifying interdealer quotation system. Reorganized Genesis will be a public reporting company under the Securities Exchange Act of 1934 and will file periodic and current reports as required thereunder.

### 5.8.  *Management Incentive Plan.*

Reorganized Genesis shall adopt the New Management Incentive Plan. The solicitation of votes on this Plan of Reorganization shall be deemed a solicitation of the holders of New Common Stock for approval of the New Management Incentive Plan. Entry of the order confirming the Plan of Reorganization shall constitute such approval, and the order confirming the Plan of Reorganization shall so provide.

### 5.9.  *Release of Non-Debtor Affiliates.*

As of the Effective Date, the non-Debtor corporate, partnership, and joint venture subsidiaries or affiliates of the Debtors who are obligors under any of the Genesis Senior Lender Agreements or the Multicare Senior Lender Agreements shall be released from all such obligations provided that such entities become guarantors of the New Senior Notes and assuming that the net worth of such entities is not greater than an amount acceptable to the agent for the holders of the Genesis Senior Lender Claims and the Multicare Senior Lender Claims.

### 5.10.  *Release of Representatives.*

As of the Effective Date, the respective officers, directors, employees, financial advisors, professionals, accountants, and attorneys of the Genesis Debtors, the Multicare Debtors, the respective statutory committees of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Genesis Reorganization Cases and the Multicare Reorganization Cases, and Mellon Bank, N.A., as administrative agent under the Genesis Senior Lender Agreements, the Multicare Senior Lender Agreements, and the Revolving Credit and Guaranty Agreements described in Section 2.4 hereof shall be released from any and all Claims against them by the Debtors in their capacity as representatives of the Genesis Debtors, the Multicare Debtors, the statutory committees, or Mellon Bank, N.A., as applicable, except as otherwise expressly provided in the Plan of Reorganization, the Confirmation Order, or the order of the Bankruptcy Court, dated February 23, 2001, approving a senior executive retention plan for certain employees of Genesis.

### 5.11.  *Cancellation of Existing Securities and Agreements.*

Except for purposes of evidencing a right to distributions under the Plan of Reorganization or otherwise provided hereunder, on the Effective Date all the agreements and other documents evidencing the Claims or rights of any holder of a Claim against the Debtors, including all indentures and notes evidencing such Claims and any options or warrants to purchase Equity Interests, obligating the Debtors to issue, transfer, or sell Equity Interests or any other capital stock of the Debtors, shall be canceled; *provided, however*, that the indentures relating to the Genesis Senior Subordinated Note Claims and the Multicare Senior Subordinated Note Claims shall continue in effect solely for the purposes of (i) allowing the indenture trustees to make any distributions on account of Classes G5 and M5 pursuant to the Plan and to perform such other necessary administrative functions with respect thereto, and (ii) permitting the indenture trustees to maintain any rights or liens they may have for fees, costs, and expenses under the indentures.

### 5.12.  *Board of Directors.*

The initial Board of Directors of Reorganized Genesis shall consist of seven members whose names shall be disclosed at or prior to the Confirmation Hearing. Six members will be selected by the holders of the Genesis Senior Lender Claims and the Multicare Senior Lender Claims. The seventh member shall be the Chief Executive Officer of Reorganized Genesis. Each of the members of such

initial Board of Directors shall serve a one-year term. After selection of the initial Board of Directors, the holders of the New Common Stock will elect members of the Board of Directors of Reorganized Genesis in accordance with the Amended Certificate of Incorporation and Amended Bylaws and applicable nonbankruptcy law.

### 5.13. *Corporate Action.*

Reorganized Genesis shall file the Amended Certificate of Incorporation and an amended certificate of incorporation for each of the Reorganized Debtors that are corporations, other than Reorganized Genesis, with the Secretary of State of the State of Delaware on the Effective Date. The Amended Certificate of Incorporation and the certificates of incorporation for each of the Reorganized Debtors that are corporations, other than Reorganized Genesis, shall prohibit the issuance of nonvoting equity securities, subject to further amendment of such certificates of incorporation as permitted by applicable law. The Amended Bylaws shall be deemed adopted by the board of directors of Reorganized Genesis as of the Effective Date. All partnership and limited liability company agreements to which any of the Debtors are parties shall be treated in accordance with Section 8.1 hereof.

### 5.14. *Subsidiary Guaranties.*

Claims based upon guaranties of collection, payment, or performance of any obligation of the Debtors made by any direct or indirect subsidiary of Genesis or Multicare which is not a Debtor and all Claims against any such subsidiary for which any of the Debtors are jointly or severally liable, in each case which arise at any time prior to the Confirmation Date, shall be discharged, released, extinguished, and of no further force and effect, unless the appropriate Debtor otherwise agrees in writing to the beneficiary of such guaranties.

### 5.15. *Settlement with the Federal Government.*

The Settlement Agreement among the Genesis Debtors and the United States of America acting through the United States Department of Health and Human Services, the Centers for Medicare and Medicaid Services f/k/a the Health Care Financing Administration, the Office of Inspector General, the Department of Justice, and other agencies or departments of the United States concerning the resolution of certain Claims asserted by such agencies against the Genesis Debtors, in the form set forth in the Plan Supplement, is hereby made a part of the Plan of Reorganization.

### 5.16. *Settlement Between the Genesis Debtors and the Multicare Debtors.*

The settlement between Genesis and its direct and indirect subsidiaries, on the one hand, and Multicare and its direct and indirect subsidiaries, on the other hand, regarding any and all Claims against each other shall be effectuated pursuant to the terms of that certain Settlement Agreement among Genesis, Multicare, and their direct and indirect subsidiaries or affiliates, in the form set forth in the Plan Supplement. The effect of the settlement is that neither the Genesis Debtors nor the Multicare Debtors will have claims against each other.

## SECTION 6. DISTRIBUTIONS

### 6.1. *Distribution Record Date.*

As of the close of business on the Distribution Record Date, the various transfer registers for each of the Classes of Claims or Equity Interests as maintained by the Debtors, or their respective agents, shall be deemed closed, and there shall be no further changes in the record holders of any of the

Claims or Interests. The Debtors shall have no obligation to recognize any transfer of the Claims or Equity Interests occurring on or after the Distribution Record Date. The Debtors shall be entitled to recognize and deal for all purposes hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Distribution Record Date, to the extent applicable.

### 6.2. Date of Distributions.

Unless otherwise provided herein, any distributions and deliveries to be made hereunder shall be made on the Effective Date or as soon thereafter as is practicable. In the event that any payment or act under the Plan of Reorganization is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 6.3. Distributions to Classes G2, G4, G5, M2, M4, and M5.

On the Effective Date, the Disbursing Agent shall distribute the New Senior Notes, the New Convertible Preferred Stock, the New Common Stock, and any Cash allocable to Classes G2 and M2 to the individual holders of the Genesis Senior Lender Claims and Multicare Senior Lender Claims in such denominations and registered in the names of the holders as Mellon Bank, N.A. shall have directed in writing. On the Effective Date, the Disbursing Agent shall distribute the New Common Stock and the New Warrants to holders of Allowed Claims in Classes G4, G5, M4, and M5. For the purpose of calculating the amount of New Common Stock and New Warrants to be distributed to holders of Allowed Claims in Classes G4, G5, M4, and M5 on the Effective Date, all Disputed Claims in such Classes will be treated as though such Claims will be Allowed Claims in the amounts asserted, Allowed pursuant to Section 6.12 hereof, or as estimated by the Bankruptcy Court, as applicable. On the Final Distribution Date, each holder of an Allowed Claim in Classes G4, G5, M4, and M5 shall receive a Catch-up Distribution of New Common Stock and/or New Warrants, as applicable. After the Effective Date but prior to the Final Distribution Date, the Reorganized Debtors, in their sole discretion, may direct the Disbursing Agent to distribute shares of New Common Stock and/or New Warrants, as applicable, to a holder of a Disputed Claim in Class G4 or M4 which becomes an Allowed Claim after the Effective Date such that the holder of such Claim receives the same shares of New Common Stock and/or New Warrants, as applicable, that such holder would have received had its Claim been an Allowed Claim in such amount on the Effective Date.

### 6.4. Disbursing Agent.

All distributions under the Plan of Reorganization (other than distributions described in the next sentences) shall be made by the applicable Debtor as Disbursing Agent or such other entity designated by the applicable Debtor as a Disbursing Agent on or after the Effective Date. Each Indenture Trustee shall be the Disbursing Agent for its respective noteholders in Classes G5 and M5, and The Bank of New York, as indenture trustee in relation to Tyler County West Virginia Taxable Refunding Revenue Bonds (Care Haven Associates Limited Partnership Project) Series 1994B and Series 1995 (the "Care Haven Indenture Trustee") for its respective bondholders in Subclass M1-2. All distributions to the creditors of each of the Multicare Debtors under the Plan of Merger shall be made by Multicare Acquisition Corporation as Disbursing Agent or such other entity designated by Multicare Acquisition Corporation as a Disbursing Agent on or after the Effective Date. A Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that a Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the applicable Debtor.

### 6.5. *Rights and Powers of Disbursing Agent.*

(a) *Powers of the Disbursing Agent.* The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan of Reorganization, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan of Reorganization, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

(b) *Expenses Incurred on or After the Effective Date.* Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and expenses incurred by the Disbursing Agent on or after the Effective Date (including, without limitation, taxes) and any reasonable compensation and expense reimbursement claims (including, without limitation, reasonable attorneys' fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Reorganized Debtors.

### 6.6. *Surrender of Instruments.*

As a condition to receiving any distribution under the Plan of Reorganization, each holder of a certificated instrument or note must surrender such instrument or note held by it to the Disbursing Agent or its designee, unless such certificated instrument or note is being reinstated or being left unimpaired under the Plan of Reorganization. Any holder of such instrument or note that fails to (i) surrender such instrument or note, or (ii) execute and deliver an affidavit of loss and/or indemnity reasonably satisfactory to the Disbursing Agent and furnish a bond in form, substance, and amount reasonably satisfactory to the Disbursing Agent before the first anniversary of the Effective Date shall be deemed to have forfeited all rights and Claims and may not participate in any distribution under the Plan of Reorganization. Any distribution so forfeited shall become property of Reorganized Genesis.

### 6.7. *Delivery of Distributions.*

Subject to Bankruptcy Rule 9010, all distributions to any holder of an Allowed Claim except the holders of an Allowed Senior Lender Claim, shall be made at the address of such holder as set forth on the Schedules filed with the Bankruptcy Court or on the books and records of the Debtors or their agents or in a letter of transmittal unless the Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or interest by such holder that contains an address for such holder different from the address reflected on such Schedules for such holder. All distributions to any holder of an Allowed Senior Lender Claim shall be made to Mellon Bank N.A., as administrative agent under the Genesis Senior Lender Agreements and the Multicare Senior Lender Agreements. Any distribution of New Common Stock or New Warrants to any of the Indenture Trustees shall be deemed a distribution to the respective holder of a Genesis Senior Subordinated Note Claim or Multicare Senior Subordinated Note Claim. In the event that any distribution to any holder is returned as undeliverable, the Disbursing Agent shall use reasonable efforts to determine the current address of such holder, but no distribution to such holder shall be made unless and until the Disbursing Agent has determined the then current address of such holder, at which time such distribution shall be made to such holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year from the Effective Date. After such date, all unclaimed property or interest in property shall revert to Reorganized Genesis, and the Claim of any other holder to such property or interest in property shall be discharged and forever barred.

### 6.8. *Manner of Payment Under Plan of Reorganization.*

(a)     All distributions of Cash, New Senior Notes, New Convertible Preferred Stock, New Common Stock, and New Warrants to the creditors of each of the Genesis Debtors under the Plan of Reorganization shall be made by, or on behalf of, the applicable Reorganized Debtor. Where the applicable Reorganized Debtor is a subsidiary of Reorganized Genesis, Reorganized Genesis shall make a capital contribution, either directly or indirectly, to the applicable Reorganized Debtor equal to the amount distributed, but only at such time as, and to the extent, the amounts are actually distributed to holders of Allowed Claims. All distributions under the Plan of Reorganization of New Senior Notes to the creditors of the Genesis Debtors shall be made by, or on behalf of, Reorganized Genesis. To the extent that New Senior Notes are issued by Reorganized Genesis to creditors of a Reorganized Debtor that is a subsidiary of Reorganized Genesis, the portion of the Claims for which such New Senior Notes are issued shall be treated as acquired by Reorganized Genesis. Immediately thereafter, and pursuant hereto, Reorganized Genesis shall make a capital contribution, either directly or indirectly, to any applicable Reorganized Debtor, and such Claim shall be immediately cancelled and discharged. Any distributions that revert to any of the Reorganized Debtors or are otherwise canceled (such as to the extent any distributions have not been claimed within one year or are canceled pursuant to Section 6.6 hereof) shall revest solely in Reorganized Genesis, and any applicable Reorganized Debtor (other than Reorganized Genesis) shall not have (nor shall it be considered to ever have had) any ownership interest in the amounts distributed.

(b)     Subject to Section 4.13 hereof, the distribution of New Multicare Stock to the creditors of each of the Multicare Debtors immediately prior to the merger of Multicare Acquisition Corporation (a newly-formed, second tier subsidiary of Genesis) into Multicare shall be made by, or on behalf of, the applicable Multicare Debtor. Where the applicable Multicare Debtor is a subsidiary of Multicare, Multicare shall make a capital contribution, either directly or indirectly, to the applicable Multicare Debtor equal to the amount of New Multicare Stock distributed to the creditors of the Multicare Debtors.

(c)     All distributions of Cash, New Senior Notes, New Convertible Preferred Stock, New Common Stock, and New Warrants to the creditors of each of the Multicare Debtors under the Plan of Merger shall be made by, or on behalf of, Multicare Acquisition Corporation. Reorganized Genesis shall make a capital contribution to the intermediate corporate parent of Multicare Acquisition Corporation, which in turn shall make a capital contribution to Multicare Acquisition Corporation, equal to the amount distributed, with such contributions occurring only at such time as, and to the extent, the amounts are actually distributed to holders of Allowed Claims. All distributions under the Plan of New Senior Notes to the creditors of the Multicare Debtors shall be made by, or on behalf of, Reorganized Genesis. To the extent that the acquisition of the New Multicare Stock pursuant to the Plan of Reorganization and the Plan of Merger is in exchange for the New Senior Notes, such stock shall be treated as acquired by Reorganized Genesis. Immediately thereafter, and pursuant hereto, Reorganized Genesis shall contribute such stock to the intermediate corporate parent of Multicare Acquisition Corporation. Any distributions that revert to the Reorganized Debtors or are otherwise canceled (such as to the extent any distributions have not been claimed within one year or are canceled pursuant to Section 6.6 hereof) shall revest solely in Reorganized Genesis, and no Reorganized Debtor (other than Reorganized Genesis) shall have (or shall be considered to ever have had) any ownership interest in the amounts distributed.

(d)     At the option of the Debtors, any Cash payment to be made hereunder may be made by a check or wire transfer or as otherwise required or provided in applicable agreements.

### 6.9. *Fractional Shares and Fractional Warrants.*

No fractional shares of New Common Stock or New Convertible Preferred Stock, or fractional New Warrants or Cash in lieu thereof, shall be distributed. For purposes of distribution, fractional shares of New Common Stock or New Convertible Preferred Stock, or fractional New Warrants, shall be rounded down to the next whole number or zero, as applicable.

### 6.10. *Setoffs.*

Except with respect to the Genesis Senior Lender Claims and the Multicare Senior Lender Claims, the Debtors may, but shall not be required to, set off against any Claim (for purposes of determining the Allowed amount of such Claim on which distribution shall be made), any claims of any nature whatsoever that the Debtors may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors of any such claim the Debtors may have against the holder of such Claim.

### 6.11. *Allocation of Plan Distribution Between Principal and Interest.*

All distributions in respect of any Claim shall be allocated first to the principal amount of such Claim, as determined for federal income tax purposes, and thereafter, to the remaining portion of such Claim, if any.

### 6.12. *Allowance of Claims in Classes G2, G5, M2, and M5.*

The aggregate Claims in Classes G2, G5, M2, and M5 shall be deemed Allowed in the amounts of $1,193,460,000 (excluding postpetition interest and before giving effect to postpetition payments), $387,425,000, $443,400,000 (excluding postpetition interest), and $257,817,000, respectively. The Claims in Class G5 shall be deemed Allowed in the following amounts for each issue of senior subordinated notes: (i) 9-3/4% Senior Subordinated Notes due 2005: $126,077,500; (ii) 9-1/4% Senior Subordinated Notes due 2006: $133,414,931; (iii) 9-7/8% Senior Subordinated Notes due 2009: $126,303,247; and (iv) 9-3/8 Senior Subordinated Notes due 2005: $1,629,313.

## SECTION 7. PROCEDURES FOR DISPUTED CLAIMS

### 7.1. *Objections to Claims.*

The Reorganized Debtors shall be entitled to object to Claims. Any objections to Claims shall be served and filed on or before the later of (i) one hundred twenty (120) days after the Effective Date, and (ii) such date as may be fixed by the Bankruptcy Court, whether fixed before or after the date specified in clause (i) above.

### 7.2. *Payments and Distributions with Respect to Disputed Claims.*

(a)    *General.* Notwithstanding any other provision hereof, if any portion of a Claim is a Disputed Claim, no payment or distribution provided hereunder shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

(b)    *Tort Claims.* All Tort Claims shall be deemed Disputed Claims unless and until they are liquidated. Any Tort Claim which has not been liquidated prior to the date of this Plan and as to which a proof of claim was timely filed in the Reorganization Cases shall be determined and liquidated in accordance with an alternative dispute resolution procedure or if the claimant pursuing the Tort Claim has

received relief from the automatic stay (through such alternative dispute resolution procedure or otherwise), the Tort Claim shall be determined and liquidated in the administrative or judicial tribunal in which it is pending on the Confirmation Date or in any administrative or judicial tribunal of appropriate jurisdiction. Any Tort Claim determined and liquidated (i) pursuant to a judgment obtained in accordance with this Section and applicable nonbankruptcy law which is no longer appealable or subject to review, or (ii) in the alternative dispute resolution or similar proceeding approved by order of the Bankruptcy Court shall be deemed, to the extent applicable, an Allowed Claim in Class G4 or Class M4, as applicable, in such liquidated amount (*provided* that for Insured Claims, such amount shall not exceed the liquidated amount of the Claim less the amount paid by the insurer) and treated in accordance with Sections 4.4 and 4.15 hereof. Nothing contained in this Section shall constitute or be deemed a waiver of any Claim, right, or cause of action that the Debtors may have against any person in connection with or arising out of any Tort Claim, including, without limitation, any rights under section 157(b) of title 28 of the United States Code.

### 7.3. *Distributions After Allowance.*

After such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the Reorganized Debtors shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan of Reorganization. Such Cash distributions shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order, but in no event more than thirty (30) days thereafter. Shares of New Common Stock or New Warrants distributable to the holder of a Disputed Claim which becomes an Allowed Claim (in whole or in part) as a result of the entry of an order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) shall be made in accordance with Section 6.3 hereof.

### 7.4. *Estimation of Claims.*

The Reorganized Debtors may at any time request that the Bankruptcy Court estimate any contingent, unliquidated, or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether the Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court will retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates any contingent, unliquidated, or Disputed Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Reorganized Debtors may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### 7.5. *Interest and Dividends.*

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date and is entitled to a Cash distribution under the Plan of Reorganization, the holder of such Claim shall be entitled to a Cash distribution plus interest thereon, calculated at the average rate received by the Debtors in their deposit accounts, from the Effective Date to the date of distribution. In the event that dividend distributions have been made with respect to the New Common Stock distributable to a holder of a Disputed Claim that later becomes Allowed, such holder shall be entitled to receive such previously distributed dividends without any interest with respect thereto.

## SECTION 8.  EXECUTORY CONTRACTS AND UNEXPIRED LEASES

### 8.1.    *General Treatment.*

All executory contracts and unexpired leases to which any of the Debtors are parties are hereby assumed, including the bonds executed by Liberty Bond Services on behalf of the Debtors, except for an executory contract or unexpired lease that (i) has been assumed or rejected pursuant to Final Order of the Bankruptcy Court, (ii) is specifically designated as a contract or lease to be rejected on the Schedule of Rejected Contracts attached hereto, (iii) is the subject of a separate motion to assume or reject filed under section 365 of the Bankruptcy Code by the Genesis Debtors or Multicare Debtors prior to the Confirmation Date, or (iv) is an option or warrant to purchase common stock of any of the Debtors or right to convert any Equity Interest into common stock of any of the Debtors to the extent such option, warrant, or conversion right is determined not to be an Equity Interest.

### 8.2.    *Cure of Defaults.*

Except to the extent that different treatment has been agreed to by the nondebtor party or parties to any executory contract or unexpired lease to be assumed pursuant to Section 8.1 hereof, the Debtors shall, pursuant to the provisions of sections 1123(a)(5)(G) and 1123(b)(2) of the Bankruptcy Code and consistent with the requirements of section 365 of the Bankruptcy Code, within thirty (30) days of the Confirmation Date, file and serve a pleading with the Bankruptcy Court listing the cure amounts of all executory contracts or unexpired leases to be assumed. The parties to such executory contracts or unexpired leases to be assumed by the Debtors shall have fifteen (15) days from service to object to the cure amounts listed by the Debtors. If there are any objections filed, the Bankruptcy Court shall hold a hearing. The Debtors shall retain their right to reject any of their executory contracts or unexpired leases, including contracts or leases that are subject to a dispute concerning amounts necessary to cure any defaults.

### 8.3.    *Rejection Claims.*

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors pursuant to the Plan of Reorganization results in damages to the other party or parties to such contract or lease, a Claim for such damages, if not heretofore evidenced by a filed proof of claim, shall be forever barred and shall not be enforceable against the Debtors, or their respective properties or interests in property as agents, successors, or assigns, unless a proof of claim is filed with the Bankruptcy Court and served upon counsel for the Debtors on or before the date that is thirty (30) days after the Confirmation Date or such later rejection date that occurs as a result of a dispute concerning amounts necessary to cure any defaults.

### 8.4.    *Senior Executives of Reorganized Genesis.*

Reorganized Genesis shall enter into long-term employment agreements with Michael R. Walker, Richard R. Howard, David C. Barr, and George V. Hager, Jr. in the form set forth in the Plan Supplement.

### 8.5.    *Survival of the Debtors' Corporate Indemnities.*

Any obligations of the Debtors pursuant to their corporate charters and bylaws or agreements entered into any time prior to the Effective Date, to indemnify current directors, officers, agents, and/or employees with respect to all present and future actions, suits, and proceedings against the Debtors or such directors, officers, agents, and/or employees, based upon any act or omission for or on

behalf of the Debtors shall not be discharged or impaired by confirmation of the Plan of Reorganization. Such obligations shall be deemed and treated as executory contracts to be assumed by the Debtors pursuant to the Plan of Reorganization, and shall continue as obligations of the Reorganized Debtors.

## SECTION 9. CONDITION PRECEDENT TO THE EFFECTIVE DATE

The occurrence of the Effective Date of the Plan of Reorganization is subject to satisfaction of the condition precedent that the Reorganized Debtors shall enter into the new financing arrangements referred to in Section 5.4 hereof for purposes of funding obligations under the Plan of Reorganization and providing for working capital requirements and all of the conditions precedent to the initial extensions of credit thereunder shall be satisfied.

## SECTION 10. EFFECT OF CONFIRMATION

### 10.1. *Vesting of Assets.*

Upon the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors' bankruptcy estates shall vest in the Reorganized Debtors free and clear of all Claims, liens, encumbrances, charges, and other interests, except as provided herein. The Reorganized Debtors may operate their businesses and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending cases under any chapter or provision of the Bankruptcy Code, except as provided herein.

### 10.2. *Discharge of Claims and Termination of Equity Interests.*

Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan of Reorganization and the payments and distributions to be made hereunder shall discharge all existing debts and Claims, and terminate all Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan of Reorganization, upon the Effective Date, all existing Claims against the Debtors and Equity Interests in the Debtors, shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, or any of their assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of equity interest. Notwithstanding any provision of the Plan to the contrary, any valid setoff or recoupment rights held against any of the Debtors, including any such rights that HCR Manor Care, Inc., Manor Care, Inc., and/or ManorCare Health Services, Inc. may have in connection with the pending prepetition litigation actions described in section V.D of the disclosure statement for the Plan, shall not be affected by the Plan and shall be expressly preserved in the Confirmation Order.

### 10.3. *Discharge of Debtors.*

Upon the Effective Date and in consideration of the distributions to be made hereunder, except as otherwise expressly provided herein, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date. Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such

discharged Claim against or terminated Equity Interest in the Debtors. Notwithstanding any provision of the Plan to the contrary, any valid setoff or recoupment rights held against any of the Debtors, including any such rights that HCR Manor Care, Inc., Manor Care, Inc., and/or ManorCare Health Services, Inc. may have in connection with the pending prepetition litigation actions described in section V.D of the disclosure statement for the Plan, shall not be affected by the Plan and shall be expressly preserved in the Confirmation Order.

### 10.4. *Term of Injunctions or Stays.*

Unless otherwise provided, all injunctions or stays arising under or entered during the Reorganization Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the later of the Effective Date and the date indicated in such order.

### 10.5. *Injunction Against Interference With Plan.*

Upon the entry of a Confirmation Order with respect to the Plan of Reorganization, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, or principals, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan of Reorganization.

### 10.6. *Exculpation.*

Neither the Debtors, any Disbursing Agent, the respective statutory committees of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Genesis Reorganization Cases and the Multicare Reorganization Cases, Mellon Bank, N.A., as administrative agent under, and any lender under, the Genesis Senior Lender Agreements, the Multicare Senior Lender Agreements, and the Revolving Credit and Guaranty Agreements described in Section 2.4 hereof, nor any of their respective members, officers, directors, employees, agents, or professionals shall have or incur any liability to any holder of any Claim or Equity Interest for any act or omission in connection with, or arising out of, the Reorganization Cases, the confirmation of the Plan of Reorganization, the consummation of the Plan of Reorganization, or the administration of the Plan of Reorganization or property to be distributed under the Plan of Reorganization, except for willful misconduct or gross negligence.

### 10.7. *Retention of Causes of Action/Reservation of Rights.*

(a) Nothing contained in the Plan of Reorganization or the Confirmation Order shall be deemed to be a waiver or the relinquishment of any rights or causes of action that the Debtors or the Reorganized Debtors may have or which the Reorganized Debtors may choose to assert on behalf of their respective estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law, including, without limitation, (i) any and all Claims against any person or entity, to the extent such person or entity asserts a crossclaim, counterclaim, and/or Claim for setoff which seeks affirmative relief against the Debtors, the Reorganized Debtors, their officers, directors, or representatives, and (ii) the turnover of any property of the Debtors' estates; *provided, however,* that this Section does not apply with respect to the settlement agreements described in Sections 5.15 and 5.16 hereof. Notwithstanding the foregoing, the Debtors and the Reorganized Debtors waive all avoidance actions, except as set forth in the Plan Supplement.

(b) Nothing contained in the Plan of Reorganization or the Confirmation Order shall be deemed to be a waiver or relinquishment of any claim, cause of action, right of setoff, or other legal or

equitable defense which the Debtors had immediately prior to the Commencement Date, against or with respect to any Claim left unimpaired by the Plan of Reorganization. The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such claims, causes of action, rights of setoff, and other legal or equitable defenses which they had immediately prior to the Commencement Date fully as if the Reorganization Cases had not been commenced, and all of the Reorganized Debtors' legal and equitable rights respecting any Claim left unimpaired by the Plan of Reorganization may be asserted after the Confirmation Date to the same extent as if the Reorganization Cases had not been commenced.

## SECTION 11. **RETENTION OF JURISDICTION**

On and after the Effective Date, the Bankruptcy Court shall retain jurisdiction over all matters arising in, arising under, and related to the Reorganization Cases for, among other things, the following purposes:

(a)     To hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and the allowance of Claims resulting therefrom.

(b)     To determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on or commenced after the Confirmation Date.

(c)     To ensure that distributions to holders of Allowed Claims are accomplished as provided herein.

(d)     To consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, Administrative Claim, or Equity Interest.

(e)     To enter, implement, or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified, or vacated.

(f)     To issue injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any person with the consummation, implementation, or enforcement of the Plan of Reorganization, the Confirmation Order, or any other order of the Bankruptcy Court.

(g)     To hear and determine any application to modify the Plan of Reorganization in accordance with section 1127 of the Bankruptcy Code, to remedy any defect or omission or reconcile any inconsistency in the Plan of Reorganization, the disclosure statement for the Plan or Reorganization, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof.

(h)     To hear and determine all applications under sections 330, 331, and 503(b) of the Bankruptcy Code for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Confirmation Date.

(i)     To hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan of Reorganization, the Confirmation Order, any transactions or payments contemplated hereby, or any agreement, instrument, or other document governing or relating to any of the foregoing.

(j)     To take any action and issue such orders as may be necessary to construe, enforce, implement, execute, and consummate the Plan of Reorganization or to maintain the integrity of the Plan of Reorganization following consummation.

(k)     To hear any disputes arising out of, and to enforce, the order approving alternative dispute resolution procedures to resolve personal injury, employment litigation, and similar claims pursuant to section 105(a) of the Bankruptcy Code.

(l)     To determine such other matters and for such other purposes as may be provided in the Confirmation Order.

(m)     To hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code.

(n)     To hear and determine any other matters related hereto and not inconsistent with the Bankruptcy Code and title 28 of the United States Code.

(o)     To enter a final decree closing the Reorganization Cases.

(p)     To recover all assets of the Debtors and property of the Debtors' estates, wherever located.

## SECTION 12.  MISCELLANEOUS PROVISIONS

### 12.1.  *Payment of Statutory Fees.*

On the Effective Date, and thereafter as may be required, the Debtors shall pay all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

### 12.2.  *Retiree Benefits.*

On and after the Effective Date, pursuant to section 1129(a)(13) of the Bankruptcy Code, the Reorganized Debtors shall continue to pay all retiree benefits of the Debtors (within the meaning of section 1114 of the Bankruptcy Code), at the level established in accordance with section 1114 of the Bankruptcy Code, at any time prior to the Confirmation Date, for the duration of the period for which the Debtors had obligated themselves to provide such benefits.

### 12.3.  *Dissolution of Statutory Committees of Unsecured Creditors.*

The respective statutory committees of unsecured creditors appointed pursuant to section 1102 of the Bankruptcy Code in the Genesis Reorganization Cases and the Multicare Reorganization Cases shall dissolve on the Effective Date, except that such statutory committees shall have the right to review and object to any applications for compensation and reimbursement of expenses filed in accordance with Section 2.2 hereof.

### 12.4.  *Substantial Consummation.*

On the Effective Date, the Plan of Reorganization shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

## 12.5. *Amendments.*

(a)  *Plan of Reorganization Modifications.* The Plan of Reorganization may be amended, modified, or supplemented by the Debtors or the Reorganized Debtors in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law without additional disclosure pursuant to section 1125 of the Bankruptcy Code, with the prior written consent of Mellon Bank, N.A., as administrative agent under the Genesis Senior Lender Agreements, the Multicare Senior Lender Agreements, and the Revolving Credit and Guaranty Agreements described in Section 2.4 hereof and the respective statutory committee of unsecured creditors appointed in the Genesis Reorganization Cases and Multicare Reorganization Cases, to the extent that such amendment, modification, or supplement would adversely and materially affect the treatment of the Senior Lender Claims, the Genesis General Unsecured Claims, and the Multicare General Unsecured Claims, respectively, except as the Bankruptcy Court may otherwise direct. In addition, after the Confirmation Date, so long as such action does not materially adversely affect the treatment of holders of Claims or Equity Interests under the Plan of Reorganization, the Debtors may institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan of Reorganization or the Confirmation Order, with respect to such matters as may be necessary to carry out the purposes and effects of the Plan of Reorganization.

(b)  *Other Amendments.* Prior to the Effective Date the Debtors may make appropriate technical adjustments and modifications to the Plan of Reorganization without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Equity Interests.

## 12.6. *Revocation or Withdrawal of the Plan.*

The Debtors reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Debtors take such action, the Plan of Reorganization shall be deemed null and void.

## 12.7. *Severability.*

If, prior to the entry of the Confirmation Order, any term or provision of the Plan of Reorganization is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions of the Plan of Reorganization will remain in full force and effect and will in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan or Reorganization, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

## 12.8. *Governing Law.*

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an Exhibit hereto or a schedule in the Plan Supplement provides otherwise, the rights, duties, and obligations arising under the Plan of Reorganization shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

12.9. *Time.*

In computing any period of time prescribed or allowed by the Plan of Reorganization, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

12.10. *Notices.*

All notices, requests, and demands to or upon the Debtors to be effective shall be in writing (including by facsimile transmission) and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

> Genesis Health Ventures, Inc.
> 101 East State Street
> Kennett Square, Pennsylvania 19348
> Attn: James J. Wankmiller, Esq.
> Corporate Secretary and General Counsel
> Telephone: (610) 444-6350
> Telecopier: (610) 444-3365

> - and -

> Weil, Gotshal & Manges LLP
> 767 Fifth Avenue
> New York, New York 10153
> Attn: Michael F. Walsh, Esq.
>       Gary T. Holtzer, Esq.
> Telephone: (212) 310-8000
> Telecopier: (212) 310-8007

> - and -

> Richards, Layton & Finger P.A.
> One Rodney Square
> P.O. Box 551
> Wilmington, Delaware 19899
> Attn: Mark D. Collins, Esq.
> Telephone: (302) 658-6541
> Telecopier: (302) 658-6548

> - and –

> The Multicare Companies, Inc.
> 101 East State Street
> Kennett Square, Pennsylvania 19348
> Attn: James J. Wankmiller, Esq.
> Corporate Secretary and General Counsel
> Telephone: (610) 444-6350
> Telecopier: (610) 444-3365

- and –

Willkie Farr & Gallagher
787 Seventh Avenue
New York, New York 10019-6099
Attn: Marc Abrams, Esq.
      Paul V. Shalhoub, Esq.
Telephone: (212) 728-8000
Telecopier: (212) 728-8111

- and –

Young Conaway Stargatt & Taylor
11th Floor, Wilmington Trust Company
P.O. Box 391
Wilmington, Delaware 19899-0391
Attn: James J. Patton, Esq.
      Robert S. Brady, Esq.
Telephone: (302) 571-6600
Telecopier: (302) 571-1253

Dated: Wilmington, Delaware
       July 6, 2001

Respectfully submitted,

GENESIS HEALTH SERVICES CORPORATION
GENESIS HEALTH VENTURES, INC.
ACCUMED, INC.
ASCO HEALTHCARE, INC.
ASCO HEALTHCARE OF NEW ENGLAND, INC.
BRINTON MANOR, INC.
BURLINGTON WOODS CONVALESCENT CENTER, INC.
CARECARD, INC.
CAREFLEET, INC.
CHELTENHAM LTC MANAGEMENT, INC.
COMPASS HEALTH SERVICES, INC.
CONCORD HEALTHCARE CORPORATION
CONCORD PHARMACY SERVICES, INC.
CRESTVIEW CONVALESCENT HOME, INC.
CRESTVIEW NORTH, INC.
CRYSTAL CITY NURSING CENTER, INC.
DELCO APOTHECARY, INC.
DERBY NURSING CENTER CORPORATION
DIANE MORGAN AND ASSOCIATES, INC.
DOVER HEALTHCARE ASSOCIATES, INC.
EASTERN MEDICAL SUPPLIES, INC.
EASTERN REHAB SERVICES, INC.
EIDOS, INC.

ENCARE OF MASSACHUSETTS, INC.
GENESIS ELDERCARE ADULT DAY HEALTH SERVICES, INC.
GENESIS ELDERCARE DIAGNOSTIC SERVICES, INC.
GENESIS ELDERCARE HOME CARE SERVICES, INC.
GENESIS ELDERCARE HOME HEALTH SERVICES-
    SOUTHERN, INC.
GENESIS ELDERCARE HOSPITALITY SERVICES, INC.
GENESIS ELDERCARE MANAGEMENT SERVICES, INC.
GENESIS ELDERCARE NETWORK SERVICES, INC.
GENESIS ELDERCARE NATIONAL CENTERS, INC.
GENESIS ELDERCARE NETWORK SERVICES OF
    MASSACHUSETTS, INC.
GENESIS ELDERCARE PHYSICIAN SERVICES, INC.
GENESIS ELDERCARE PROPERTIES, INC.
GENESIS ELDERCARE REHABILITATION
    MANAGEMENT SERVICES, INC.
GENESIS ELDERCARE REHABILITATION SERVICES,
    INC.
GENESIS ELDERCARE STAFFING SERVICES, INC.
GENESIS ELDERCARE TRANSPORTATION SERVICES,
    INC.
GENESIS HEALTH VENTURES OF ARLINGTON, INC.
GENESIS HEALTH VENTURES OF BLOOMFIELD, INC.
GENESIS HEALTH VENTURES OF CLARKS SUMMIT,
    INC.
GENESIS HEALTH VENTURES OF INDIANA, INC.
GENESIS HEALTH VENTURES OF LANHAM, INC.
GENESIS HEALTH VENTURES OF MASSACHUSETTS,
    INC.
GENESIS HEALTH VENTURES OF NAUGATUCK, INC.
GENESIS HEALTH VENTURES OF NEW GARDEN, INC.
GENESIS HEALTH VENTURES OF POINT PLEASANT,
    INC.
GENESIS HEALTH VENTURES OF WAYNE, INC.
GENESIS HEALTH VENTURES OF WEST VIRGINIA, INC.
GENESIS HEALTH VENTURES OF WILKES-BARRE, INC.
GENESIS HEALTH VENTURES OF WINDSOR, INC.
GENESIS HEALTHCARE CENTERS HOLDINGS, INC.
GENESIS HOLDINGS, INC.
GENESIS IMMEDIATE MED CENTER, INC.
GENESIS PROPERTIES OF DELAWARE CORPORATION
GENESIS SELECTCARE CORP.
GERIATRIC & MEDICAL COMPANIES, INC.
GERIATRIC AND MEDICAL SERVICES, INC.
GERIATRIC AND MEDICAL INVESTMENTS
    CORPORATION
GERIMED CORP.
GMC LEASING CORPORATION
GMC MEDICAL CONSULTING SERVICES, INC.
GMS MANAGEMENT-TUCKER, INC.
GMS MANAGEMENT, INC.

GOVERNOR'S HOUSE NURSING HOME, INC.
HEALTH CONCEPTS AND SERVICES, INC
HEALTHCARE RESOURCES CORP.
HEALTHOBJECTS CORPORATION
HILLTOP HEALTH CARE CENTER, INC.
HORIZON MEDICAL EQUIPMENT AND SUPPLY, INC.
INNOVATIVE HEALTH CARE MARKETING, INC.
INNOVATIVE PHARMACY SERVICES, INC.
INSTITUTIONAL HEALTH CARE SERVICES, INC.
KEYSTONE NURSING HOME, INC.
KNOLLWOOD MANOR, INC.
KNOLLWOOD NURSING HOME, INC.
LIFE SUPPORT MEDICAL EQUIPMENT, INC.
LIFE SUPPORT MEDICAL, INC.
LINCOLN NURSING HOME, INC.
MANOR MANAGEMENT CORP. OF GEORGIAN MANOR,
        INC.
MCKERLEY HEALTH CARE CENTERS, INC.
MEDICAL SERVICES GROUP, INC.
MERIDIAN HEALTH, INC.
MERIDIAN HEALTHCARE, INC.
METRO PHARMACEUTICALS, INC.
NATIONAL PHARMACY SERVICE, INC.
NEIGHBORCARE INFUSION SERVICES, INC.
NEIGHBORCARE-MEDISCO, INC.
NEIGHBORCARE OF NORTHERN CALIFORNIA, INC.
NEIGHBORCARE OF OKLAHOMA, INC.
NEIGHBORCARE OF VIRGINIA, INC.
NEIGHBORCARE OF WISCONSIN, INC.
NEIGHBORCARE PHARMACIES, INC.
NEIGHBORCARE PHARMACY SERVICES, INC.
NEIGHBORCARE-ORCA, INC.
NEIGHBORCARE-TCI, INC.
NETWORK AMBULANCE SERVICES, INC.
OAK HILL HEALTH CARE CENTER, INC.
PHARMACY EQUITIES, INC.
PHILADELPHIA AVENUE CORPORATION
PROFESSIONAL PHARMACY SERVICES, INC.
PROSPECT PARK LTC MANAGEMENT, INC.
STATE STREET ASSOCIATES, INC.
SUBURBAN MEDICAL SERVICES, INC.
THE TIDEWATER HEALTHCARE SHARED SERVICES
        GROUP, INC.
THERAPY CARE, INC.
TRANSPORT SERVICES, INC.
UNITED HEALTH CARE SERVICES, INC.
VALLEY MEDICAL SERVICES, INC.
VALLEY TRANSPORT AMBULANCE SERVICE, INC.
VERSALINK, INC.
VILLAS REALTY & INVESTMENTS, INC.
WALNUT LTC MANAGEMENT, INC.

WAYSIDE NURSING HOME, INC.
WEISENFLUH AMBULANCE SERVICE, INC.
WEST PHILA. LTC MANAGEMENT, INC.
WYNCOTE HEALTHCARE CORP.
YORK LTC MANAGEMENT, INC.

BY: GENESIS HEALTH VENTURES, INC., as agent and attorney-in-fact for
each of the foregoing entities

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


ASCO HEALTHCARE OF NEW ENGLAND, LIMITED PARTNERSHIP

BY: ASCO HEALTHCARE OF NEW ENGLAND, INC., its
General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


BREVARD MERIDIAN LIMITED PARTNERSHIP
CATONSVILLE MERIDIAN LIMITED PARTNERSHIP
EASTON MERIDIAN LIMITED PARTNERSHIP
GREENSPRING MERIDIAN LIMITED PARTNERSHIP
HAMMONDS LANE MERIDIAN LIMITED PARTNERSHIP
MERIDIAN EDGEWOOD LIMITED PARTNERSHIP
MERIDIAN PERRING LIMITED PARTNERSHIP
MERIDIAN VALLEY LIMITED PARTNERSHIP
MERIDIAN VALLEY VIEW LIMITED PARTNERSHIP
MERIDIAN/CONSTELLATION LIMITED PARTNERSHIP
MILLVILLE MERIDIAN LIMITED PARTNERSHIP

BY: MERIDIAN HEALTHCARE, INC., as General Partner of
each of the foregoing limited partnerships

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer

CARE4, L.P.

BY: INSTITUTIONAL HEALTH CARE SERVICES, INC., its
    General Partner

    By: _____
        Name: George V. Hager, Jr.
        Title: Executive Vice President, Chief Financial Officer


EDELLA STREET ASSOCIATES

BY: GENESIS HEALTH VENTURES OF CLARK SUMMIT,
    INC., its General Partner

    By: _____
        Name: George V. Hager, Jr.
        Title: Executive Vice President, Chief Financial Officer


GENESIS-GEORGETOWN SNF/JV, LIMITED LIABILITY
    COMPANY
RESPIRATORY HEALTH SERVICES, L.L.C.

BY: GENESIS HEALTH VENTURES, INC., its Member

    By: _____
        Name: George V. Hager, Jr.
        Title: Executive Vice President, Chief Financial Officer


GENESIS ELDERCARE EMPLOYMENT SERVICES, LLC

BY: GENESIS ELDERCARE MANAGEMENT SERVICES,
    INC., its Member

    By: _____
        Name: George V. Hager, Jr.
        Title: Executive Vice President, Chief Financial Officer

GENESIS HEALTH VENTURES OF WEST VIRGINIA,
LIMITED PARTNERSHIP

BY: GENESIS HEALTH VENTURES OF WEST VIRGINIA,
INC., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


GENESIS PROPERTIES LIMITED PARTNERSHIP

BY: GENESIS HEALTH VENTURES OF ARLINGTON,
INC., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


GENESIS PROPERTIES OF DELAWARE LTD.
PARTNERSHIP, L.P.

BY: GENESIS PROPERTIES OF DELAWARE
CORPORATION, its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


HALLMARK HEALTHCARE LIMITED PARTNERSHIP

BY: PHARMACY EQUITIES, INC., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


MAIN STREET PHARMACY, L.L.C.

BY: PROFESSIONAL PHARMACY SERVICES, INC., its
Member

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer

MCKERLEY HEALTH CARE CENTER-CONCORD LIMITED
PARTNERSHIP

BY: MCKERLEY HEALTH CARE CENTER-CONCORD,
INC., its General Partner

By:

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


MCKERLEY HEALTH FACILITIES
SEMINOLE MERIDIAN LIMITED PARTNERSHIP
VOLUSIA MERIDIAN LIMITED PARTNERSHIP

BY: MERIDIAN HEALTH, INC., as General Partner of each of
the foregoing Limited Partnerships

By:

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


NORRISTOWN NURSING AND REHABILITATION CENTER ASSOCIATES,
LIMITED PARTNERSHIP

BY: GMC-LTC MANAGEMENT, INC., its General Partner

By:

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


NORTH CAPE CONVALESCENT CENTER ASSOCIATES,
L. P.
NORTHWEST TOTAL CARE CENTER ASSOCIATES, L. P.

BY: GERIATRIC AND MEDICAL SERVICES, INC., as
General Partner for each of the foregoing Limited
Partnerships

By:

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer

PHILADELPHIA AVENUE ASSOCIATES

BY: PHILADELPHIA AVENUE CORPORATION, its General
     Partner

     By:
           _____
           Name: George V. Hager, Jr.
           Title: Executive Vice President, Chief Financial Officer


RIVER RIDGE PARTNERSHIP
RIVER STREET ASSOCIATES

BY: GENESIS HEALTH VENTURES OF WILKES-BARRE,
     INC., as General Partner for each of the foregoing Limited
     Partnerships

     By:
           _____
           Name: George V. Hager, Jr.
           Title: Executive Vice President, Chief Financial Officer


STATE STREET ASSOCIATES, L.P.

BY: STATE STREET ASSOCIATES, INC., its General Partner

     By:
           _____
           Name: George V. Hager, Jr.
           Title: Executive Vice President, Chief Financial Officer


THERAPY CARE SYSTEMS, LP

BY: GENESIS ELDERCARE REHABILITATION
     SERVICES, INC., its General Partner

     By:
           _____
           Name: George V. Hager, Jr.
           Title: Executive Vice President, Chief Financial Officer


MULTICARE AMC, INC.
ADS PALM CHELMSFORD, INC.
ADS RESERVOIR WALTHAM, INC.
MARKGLEN, INC.
ACADEMY NURSING HOME, INC.
ADS CONSULTING, INC.
ADS HINGHAM ALF, INC.
ADS HOME HEALTH, INC.
ADS VILLAGE MANOR, INC.

ANR, INC.
APPLEWOOD HEALTH RESOURCES, INC.
ASL, INC.
AUTOMATED PROFESSIONAL ACCOUNTS, INC.
BERKS NURSING HOME, INC.
BETHEL HEALTH RESOURCES, INC.
BREYUT CONVALESCENT CENTER, INC.
BRIGHTWOOD PROPERTY, INC.
CENTURY CARE CONSTRUCTION, INC.
CENTURY CARE MANAGEMENT, INC.
CHEATEAU VILLAGE HEALTH RESOURCES, INC.
CHG INVESTMENT CORP., INC.
CHNR - 1, INC.
COLONIAL HALL HEALTH RESOURCES, INC.
COLONIAL HOUSE HEALTH RESOURCES, INC.
CONCORD CAMPANION CARE, INC.
CONCORD HEALTHCARE SERVICES, INC.
CONCORD HEALTH GROUP, INC.
CONCORD HOME HEALTH, INC.
CONCORD REHAB, INC.
CONCORD SERVICE CORPORATION
CVNR, INC.
DAWN VIEW MANOR, INC.
DELM NURSING, INC.
ELDERCARE RESOURCES CORP.
ELMWOOD HEALTH RESOURCES, INC.
ENCARE OF MENDHAM, INC.
ENCARE OF PENNYPACK, INC.
ENR, INC.
GENESIS ELDERCARE CORP.
GLENMARK ASSOCIATES - DAWN VIEW MANOR, INC.
GLENMARK PROPERTIES, INC.
GMA - BRIGHTWOOD, INC.
GMA - MADISON, INC.
GMA - CONSTRUCTION, INC.
GMA UNIONTOWN, INC.
HEALTH RESOURCES OF ACADEMY MANOR, INC.
HEALTH RESOURCES OF BOARDMAN, INC.
HEALTH RESOURCES OF BRIDGETON, INC.
HEALTH RESOURCES OF BROOKLYN, INC.
HEALTH RESOURCES OF CEDAR GROVE, INC.
HEALTH RESOURCES OF CINNAMINSON, INC.
HEALTH RESOURCES OF COLCHESTER, INC.
HEALTH RESOURCES OF COLUMBUS, INC.
HEALTH RESOURCES OF CRANBURY, INC.
HEALTH RESOURCES OF ENGLEWOOD, INC.
HEALTH RESOURCES OF EATONTOWN, INC.
HEALTH RESOURCES OF EWING, INC.
HEALTH RESOURCES OF FARMINGTON, INC.
HEALTH RESOURCES OF GARDNER, INC.
HEALTH RESOURCES OF GLASTONBURY, INC.

HEALTH RESOURCES OF JACKSON, INC.
HEALTH RESOURCES OF KARAMENTA AND MADISON, INC.
HEALTH RESOURCES OF LAKEVIEW, INC.
HEALTH RESOURCES OF LEMONT, INC.
HEALTH RESOURCES OF LYNN, INC.
HEALTH RESOURCES OF MARCELLA, INC.
HEALTH RESOURCES OF MONTCLAIR, INC.
HEALTH RESOURCES OF MORRISTOWN, INC.
HEALTH RESOURCES OF NORFOLK, INC
HEALTH RESOURCES OF NORTH ANDOVER, INC.
HEALTH RESOURCES OF NORWALK, INC.
HEALTH RESOURCES OF PENNINGTON, INC.
HEALTH RESOURCES OF RIDGEWOOD, INC.
HEALTH RESOURCES OF ROCKVILLE, INC.
HEALTH RESOURCES OF SOLOMONT/BROOKLINE, INC.
HEALTH RESOURCES OF SOUTH BRUNSWICK, INC.
HEALTH RESOURCES OF TROY HILL, INC.
HEALTH RESOURCES OF VOORHEES, INC.
HEALTH RESOURCES OF WESTWOOD, INC.
HEALTHCARE REHAB SYSTEMS, INC.
HELSTAT, INC.
HMNR REALTY, INC.
HNCA, INC.
HORIZON MOBILE, INC.
HORIZON REHABILITATION, INC.
SCHUYLKILL NURSING HOMES, INC.
SCHUYLKILL PARTNERSHIP ACQUISITION CORPORATION
SCOTCHWOOD MASS. HOLDING CO., INC.
SENIOR LIVING VENTURES, INC.
SENIOR SOURCE, INC.
SNOW VALLEY HEALTH RESOURCES, INC.
SVNR, INC.
THE ADS GROUP, INC.
RIDGELAND HEALTH RESOURCES, INC.
RIVER PINES HEALTH RESOURCES, INC.
RIVERSHORES HEALTH RESOURCES, INC.
RLNR, INC.
ROPHEL CONVALESCENT CENTER, INC.
ROSE HEALTHCARE, INC.
ROSE VIEW MANOR, INC.
ROXBOROUGH NURSING HOME, INC.
RSNR, INC.
LWNR, INC.
MABRI CONVALESCENT CENTER, INC.
MARSHFIELD HEALTH RESOURCES, INC.
MHNR, INC.
MNR, INC.
MONTGOMERY NURSING HOMES, INC.
MULTICARE HOME HEALTH OF ILLINOIS, INC.
NORTHWESTERN MANAGEMENT SERVICES, INC.
NURSING AND RETIREMENT CENTER OF THE ANDOVERS, INC.

ARACADIA ASSOCIATES
PHC OPERATING CORP.
POCOHANTAS CONTINUOUS CARE CENTER, INC.
POMPTON CARE, INC.
PRESCOTT NURSING HOME, INC.
PROGRESSIVE REHABILITATION CENTERS, INC.
PROVIDENCE FUNDING CORPORATION
PROVIDENCE HEALTH CARE, INC.
PROVIDENCE MEDICAL, INC.
REST HAVEN NURSING HOME, INC.
HR OF CHARLESTON, INC.
HRWV HUNTINGTON, INC.
LAKEWOOD HEALTH RESOURCES, INC.
LAUREL HEALTH RESOURCES, INC.
LEHIGH NURSING HOMES, INC.
LRC HOLDING COMPANY
S.T.B. INVESTORS, LTD.
THE ASSISTED LIVING ASSOCIATES OF BERKSHIRE, INC.
THE ASSISTED LIVING ASSOCIATES OF LEHIGH, INC.
THE ASSISTED LIVING ASSOCIATES OF SANATOGA, INC.
THE ASSISTED LIVING ASSOCIATES OF WALL, INC.
THE HOUSE OF CAMPBELL, INC.
TM ACQUISITION CORP.
TRI-STATE MOBILE MEDICAL SERVICES, INC.
WILLOW MANOR NURSING HOME, INC.
WESTFORD NURSING AND RETIREMENT CENTER, INC.
RVNR, INC.
HORIZON ASSOCIATES, INC.
HEALTH RESOURCES OF WARWICK, INC.
HEALTH RESOURCES OF WALLINGFORD, INC.
HEALTH RESOURCES OF MIDDLETOWN (RI), INC.
HEALTH RESOURCES OF GROTON, INC.
HEALTH RESOURCES OF CUMBERLAND, INC.
HEALTH RESOURCES OF ARCADIA, INC.
ENCARE OF WYNCOTE, INC.
ENCARE OF QUAKERTOWN, INC.
ADS SENIOR HOUSING, INC.
ADS RECUPERATIVE CENTER, INC.
ADS HINGHAM NURSING FACILITY, INC.
ADS APPLE VALLEY, INC.
ADS/MULTICARE, INC.
GLENMARK ASSOCIATES, INC.
GMA PARTNERSHIP HOLDING COMPANY, INC.
STAFFORD CONVALESCENT CENTER, INC.

THE MULTICARE COMPANIES, INC.
NORTH MADISON, INC.

BY: GENESIS ELDERCARE CORPORATION, as agent and attorney-in-
    fact for each of the foregoing entities

    By:           _____

               Name: George V. Hager, Jr.
               Title: Executive Vice President, Chief Financial Officer


CARE HAVEN ASSOCIATES LIMITED PARTNERSHIP
GLENMARK PROPERTIES I, LIMITED PARTNERSHIP
POINT PLEASANT HAVEN LIMITED PARTNERSHIP
RALEIGH MANOR LIMITED PARTNERSHIP
ROMNEY HEALTH CARE CENTER LTD. LIMITED PARTNERSHIP
SISTERVILLE HAVEN LIMITED PARTNERSHIP
TEAYS VALLEY HAVEN LIMITED PARTNERSHIP

BY: GLENMARK ASSOCIATES, INC., as General Partner of each of the
    foregoing limited partnerships

    By:           _____.

               Name: George V. Hager, Jr.
               Title: Executive Vice President, Chief Financial Officer


ADS HINGHAM LIMITED PARTNERSHIP

BY: ADS HINGHAM NURSING FACILITY, INC., its General Partner

    By:           _____

               Name: George V. Hager, Jr.
               Title: Executive Vice President, Chief Financial Officer


ADS RECUPERATIVE CENTER LIMITED PARTNERSHIP

BY: ADS RECUPERATIVE CENTER, INC., its General Partner

    By:           _____

               Name: George V. Hager, Jr.
               Title: Executive Vice President, Chief Financial Officer

WESTFORD NURSING AND RETIREMENT CENTER, LIMITED PARTNERSHIP

BY: WESTFORD NURSING AND RETIREMENT CENTER, INC., its
General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


ADS APPLE VALLEY LIMITED PARTNERSHIP

BY: ADS APPLE VALLEY, INC., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


HOLLY MANOR ASSOCIATES OF NEW JERSEY, L.P.

BY: ENCARE OF MENDHAM, L.L.C., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer
of The Multicare Companies, Inc. for and as the
Majority Member of Encare of Mendham, L.L.C.


MERCERVILLE ASSOCIATES OF NEW JERSEY, L.P.

BY: BREYUT CONVALESCENT CENTER, L.L.C., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


MIDDLETOWN (RI) ASSOCIATE OF RHODE ISLAND, L.P.

BY: HEALTH RESOURCES OF MIDDLETOWN (RI), INC., its General
Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer

POMPTON ASSOCIATES, L.P.

BY: POMPTON CARE, L.L.C., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer
of The Multicare Companies, Inc. for and as Majority
Member of Pompton Care, L.L.C.


THE STRAUS GROUP - OLD BRIDGE, L.P.

BY: HEALTH RESOURCES OF EMERY, L.L.C., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer
of The Multicare Companies, Inc. for and as Majority
Member of Health Resources of Emery, L.L.C.


THE STRAUS GROUP - RIDGEWOOD, L.P.

BY: HEALTH RESOURCES OF RIDGEWOOD, L.L.C., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer
of The Multicare Companies, Inc. for and as Majority
Member of Health Resources of Ridgewood, L.L.C.


WALLINGFORD ASSOCIATES OF CONNECTICUT, L.P.

BY: HEALTH RESOURCES OF WALLINGFORD, INC., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer

WARWICK ASSOCIATES OF RHODE ISLAND, L.P.

BY: HEALTH RESOURCES OF WARWICK, INC., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


THE STRAUS GROUP - HOPKINS HOUSE, L.P.

BY: ENCARE OF WYNCOTE, INC., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


THE STRAUS GROUP - QUAKERTOWN MANOR, L.P.

BY: ENCARE OF QUAKERTOWN, INC., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


CUMBERLAND ASSOCIATES OF RHODE ISLAND, L.P

BY: HEALTH RESOURCES OF CUMBERLAND, INC., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


GROTON ASSOCIATES OF CONNECTICUT, L.P.

BY: HEALTH RESOURCES OF GROTON INC., its General Partner

By: _____

Name: George V. Hager, Jr.
Title: Executive Vice President, Chief Financial Officer


HEALTH RESOURCES OF BRIDGETON, L.L.C.
HEALTH RESOURCES OF CINNAMINSON, L.L.C.

HEALTH RESOURCES OF CRANBURY, L.L.C.
HEALTH RESOURCES OF ENGLEWOOD, L.L.C.
HEALTH RESOURCES OF EWING, L.L.C.
HEALTH RESOURCES OF FAIRLAWN, L.L.C.
HEALTH RESOURCES OF JACKSON, L.L.C.
HEALTH RESOURCES OF WEST ORANGE, L.L.C.
ROEPHEL CONVALESCENT CENTER, L.L.C.
TOTAL REHABILITATION CENTER, L.L.C.
POMPTON CARE, L.L.C.
HEALTH RESOURCES OF LAKEVIEW, L.L.C.
HEALTH RESOURCES OF RIDGEWOOD,   L.L.C.
HEALTH RESOURCES OF EMERY, L.L.C.
ENCARE OF MENDHAM. L.L.C.
BREYUT CONVALESCENT CENTER, L.L.C.

BY: THE MULTICARE COMPANIES, INC., as Member of the foregoing
    Limited Liability Companies

By: _____

        Name: George V. Hager, Jr.
        Title: Executive Vice President, Chief Financial Officer


GLENMARK LIMITED LIABILITY COMPANY I

BY: GLENMARK ASSOCIATES, INC., its Member

By: _____

        Name: George V. Hager, Jr.
        Title: Executive Vice President, Chief Financial Officer

**EXHIBITS AND SCHEDULE
TO THE PLAN OF REORGANIZATION**

# EXHIBIT A

## GENESIS DEBTORS

1. Genesis Health Services Corporation.
2. Genesis Health Ventures, Inc.
3. Asco Healthcare of New England, Limited Partnership
4. Brevard Meridian Limited Partnership
5. Care4, L.P.
6. Catonsville Meridian Limited Partnership
7. Easton Meridian Limited Partnership
8. Edella Street Associates
9. Genesis-Georgetown SNF/JV, Limited Liability Company
10. Genesis Eldercare Employment Services, LLC
11. Genesis Health Ventures of West Virginia, Limited Partnership
12. Genesis Properties Limited Partnership
13. Genesis Properties of Delaware Ltd. Partnership, LP
14. Greenspring Meridian Limited Partnership
15. Hallmark Healthcare Limited Partnership
16. Hammonds Lane Meridian Limited Partnership
17. Main Street Pharmacy, L.L.C.
18. McKerley Health Care Center-Concord Limited Partners
19. McKerley Health Facilities
20. Meridian Edgewood Limited Partnership
21. Meridian Perring Limited Partnership
22. Meridian Valley Limited Partnership
23. Meridian Valley View Limited Partnership
24. Meridian/Constellation Limited Partnership
25. Millville Meridian Limited Partnership
26. Norristown Nursing and Rehabilitation Center Associates, Limited Partnership
27. North Cape Convalescent Center Associates, L.P.
28. Northwest Total Care Center Associates, L.P.
29. Philadelphia Avenue Associates
30. Respiratory Health Services, LLC
31. River Ridge Partnership
32. River Street Associates
33. Seminole Meridian Limited Partnership
34. State Street Associates, L.P.
35. Therapy Care Systems, LP

36. Volusia Meridian Limited Partnership
37. Accumed, Inc.
38. Asco Healthcare, Inc.
39. Asco Healthcare of New England, Inc.
40. Brinton Manor, Inc.
41. Burlington Woods Convalescent Center, Inc.
42. Carecard, Inc.
43. Carefleet, Inc.
44. Cheltenham LTC Management, Inc.
45. Compass Health Services, Inc.
46. Concord Healthcare Corporation
47. Concord Pharmacy Services, Inc.
48. Crestview Convalescent Home, Inc.
49. Crestview North, Inc.
50. Crystal City Nursing Center, Inc.
51. Delco Apothecary, Inc.
52. Derby Nursing Center Corporation
53. Diane Morgan and Associates, Inc.
54. Dover Healthcare Associates, Inc.
55. Eastern Medical Supplies, Inc.
56. Eastern Rehab Services, Inc.
57. Eidos, Inc.
58. Encare of Massachusetts, Inc.
59. Genesis Eldercare Adult Day Health Services, Inc.
60. Genesis Eldercare Diagnostic Services, Inc.
61. Genesis Eldercare Home Care Services, Inc.
62. Genesis Eldercare Home Health Services-Southern, Inc.
63. Genesis Eldercare Hospitality Services, Inc.
64. Genesis Eldercare Management Services, Inc.
65. Genesis Eldercare Network Services, Inc.
66. Genesis Eldercare National Centers, Inc.
67. Genesis Eldercare Network Services of Massachusetts, Inc.
68. Genesis Eldercare Physician Services, Inc.
69. Genesis Eldercare Properties, Inc.
70. Genesis Eldercare Rehabilitation Management Services, Inc.
71. Genesis Eldercare Rehabilitation Services, Inc.
72. Genesis Eldercare Staffing Services, Inc.
73. Genesis Eldercare Transportation Services, Inc.

74. Genesis Health Ventures of Arlington, Inc.
75. Genesis Health Ventures of Bloomfield, Inc.
76. Genesis Health Ventures of Clarks Summit, Inc.
77. Genesis Health Ventures of Indiana, Inc.
78. Genesis Health Ventures of Lanham, Inc.
79. Genesis Health Ventures of Massachusetts, Inc.
80. Genesis Health Ventures of Naugatuck, Inc.
81. Genesis Health Ventures of New Garden, Inc.
82. Genesis Health Ventures of Point Pleasant, Inc.
83. Genesis Health Ventures of Wayne, Inc.
84. Genesis Health Ventures of West Virginia, Inc.
85. Genesis Health Ventures of Wilkes-Barre, Inc.
86. Genesis Health Ventures of Windsor, Inc.
87. Genesis Healthcare Centers Holdings, Inc.
88. Genesis Holdings, Inc.
89. Genesis Immediate Med Center, Inc.
90. Genesis Properties of Delaware Corporation
91. Genesis Selectcare Corp.
92. Geriatric & Medical Companies, Inc.
93. Geriatric and Medical Services, Inc.
94. Geriatric and Medical Investments Corporation
95. Gerimed Corp.
96. GMC Leasing Corporation
97. GMC Medical Consulting Services, Inc.
98. GMS Management-Tucker, Inc.
99. GMS Management, Inc.
100. Governor's House Nursing Home, Inc.
101. Health Concepts and Services, Inc.
102. Healthobjects Corporation
103. Hilltop Health Care Center, Inc.
104. Horizon Medical Equipment and Supply, Inc.
105. Innovative Health Care Marketing, Inc.
106. Innovative Pharmacy Services, Inc.
107. Institutional Health Care Services, Inc.
108. Keystone Nursing Home, Inc.
109. Knollwood Manor, Inc.
110. Knollwood Nursing Home, Inc.
111. Life Support Medical Equipment, Inc.
112. Life Support Medical, Inc.
113. Lincoln Nursing Home, Inc.
114. Manor Management Corp. of Georgian Manor, Inc.
115. McKerley Health Care Centers, Inc.

116. Medical Services Group, Inc.
117. Meridian Health, Inc.
118. Meridian Healthcare, Inc.
119. Metro Pharmaceuticals, Inc.
120. National Pharmacy Service, Inc.
121. Neighborcare Infusion Services, Inc.
122. Neighborcare-Medisco, Inc.
123. Neighborcare of Northern California, Inc.
124. Neighborcare of Oklahoma, Inc.
125. Neighborcare of Virginia, Inc.
126. Neighborcare of Wisconsin, Inc.
127. Neighborcare Pharmacies, Inc.
128. Neighborcare Pharmacy Services, Inc.
129. Neighborcare-Orca, Inc.
130. Neighborcare-TCI, Inc.
131. Network Ambulance Services, Inc.
132. Oak Hill Health Care Center, Inc.
133. Pharmacy Equities, Inc.
134. Philadelphia Avenue Corporation
135. Professional Pharmacy Services, Inc.
136. Prospect Park LTC Management, Inc.
137. State Street Associates, Inc.
138. Suburban Medical Services, Inc.
139. The Tidewater Healthcare Shared Services Group, Inc.
140. Therapy Care, Inc.
141. Transport Services, Inc.
142. United Health Care Services, Inc.
143. Valley Medical Services, Inc.
144. Valley Transport Ambulance Service, Inc.
145. Versalink, Inc.
146. Villas Realty & Investments, Inc.
147. Walnut LTC Management, Inc.
148. Wayside Nursing Home, Inc.
149. Weisenfluh Ambulance Service, Inc.
150. West Phila. LTC Management, Inc.
151. Wyncote Healthcare Corp.
152. York LTC Management, Inc.
153. Healthcare Resources Corp.

## EXHIBIT B

## MULTICARE DEBTORS

1. Multicare AMC, Inc.
2. ADS Hingham Limited Partnership
3. ADS Palm Chelmsford, Inc.
4. ADS Reservoir Waltham, Inc.
5. Arcadia Associates
6. Health Resources of Lakeview, L.L.C.
7. Care Haven Associates Limited Partnership
8. Cumberland Associates of Rhode Island, L.P.
9. Glenmark Limited Liability Company I
10. Glenmark Properties I, Limited Partnership
11. Groton Associates of Connecticut, L.P.
12. Health Resources of Bridgeton, L.L.C.
13. Health Resources of Cinnaminson, L.L.C.
14. Health Resources of Cranbury, L.L.C.
15. Health Resources of Englewood, L.L.C.
16. Health Resources of Ewing, L.L.C.
17. Health Resources of Fairlawn, L.L.C.
18. Health Resources of Jackson, L.L.C.
19. Health Resources of West Orange, L.L.C.
20. Holly Manor Associates of New Jersey, L.P.
21. Markglen, Inc.
22. Mercerville Associates of New Jersey, L.P.
23. Middletown (RI) Associate of Rhode Island, L.P.
24. Point Pleasant Haven Limited Partnership
25. Raleigh Manor Limited Partnership
26. Roephel Convalescent Center, L.L.C.
27. Romney Health Care Center Ltd. Limited Partnership
28. Sisterville Haven Limited Partnership
29. Teays Valley Haven Limited Partnership
30. The Straus Group - Hopkins House, L.P.
31. The Straus Group - Old Bridge, L.P.
32. The Straus Group - Quakertown Manor, L.P.
33. The Straus Group - Ridgewood, L.P.
34. Total Rehabilitation Center, L.L.C.
35. Wallingford Associates of Connecticut, L.P.
36. Warwick Associates of Rhode Island, L.P.
37. Academy Nursing Home, Inc.
38. ADS Consulting, Inc.
39. ADS Hingham ALF, Inc.
40. ADS Home Health, Inc.
41. ADS Village Manor, Inc.
42. ANR, Inc.
43. Applewood Health Resources, Inc.
44. ASL, Inc.

45. Automated Professional Accounts, Inc.
46. Berks Nursing Home, Inc.
47. Bethel Health Resources, Inc.
48. Breyut Convalescent Center, Inc.
49. Brightwood Property, Inc.
50. Century Care Construction, Inc.
51. Century Care Management, Inc.
52. Cheateau Village Health Resources, Inc.
53. CHG Investment Corp., Inc.
54. CHNR - 1, Inc.
55. Colonial Hall Health Resources, Inc.
56. Colonial House Health Resources, Inc.
57. Concord Campanion Care, Inc.
58. Concord Healthcare Services, Inc.
59. Concord Health Group, Inc.
60. Concord Home Health, Inc.
61. Concord Rehab, Inc.
62. Concord Service Corporation
63. CVNR, Inc.
64. Dawn View Manor, Inc.
65. DELM Nursing, Inc.
66. Eldercare Resources Corp.
67. Elmwood Health Resources, Inc.
68. Encare of Mendham, Inc.
69. Encare of Pennypack, Inc.
70. ENR, Inc.
71. Genesis Eldercare Corp.
72. Glenmark Associates - Dawn View Manor, Inc.
73. Glenmark Properties, Inc.
74. GMA - Brightwood, Inc.
75. GMA - Madison, Inc.
76. GMA - Construction, Inc.
77. GMA Uniontown, Inc.
78. Health Resources of Academy Manor, Inc.
79. Health Resources of Boardman, Inc.
80. Health Resources of Bridgeton, Inc.
81. Health Resources of Brooklyn, Inc.
82. Health Resources of Cedar Grove, Inc.
83. Health Resources of Cinnaminson, Inc.
84. Health Resources of Colchester, Inc.
85. Health Resources of Columbus, Inc.
86. Health Resources of Cranbury, Inc.
87. Health Resources of Englewood, Inc.
88. Health Resources of Eatontown, Inc.
89. Health Resources of Ewing, Inc.

i

90. Health Resources of Farmington, Inc.
91. Health Resources of Gardner, Inc.
92. Health Resources of Glastonbury, Inc.
93. Health Resources of Jackson, Inc.
94. Health Resources of Karamenta and
    Madison, Inc.
95. Health Resources of Lakeview, Inc.
96. Health Resources of Lemont, Inc.
97. Health Resources of Lynn, Inc.
98. Health Resources of Marcella, Inc.
99. Health Resources of Montclair, Inc.
100. Health Resources of Morristown, Inc.
101. Health Resources of Norfolk, Inc.
102. Health Resources of North Andover, Inc.
103. Health Resources of Norwalk, Inc.
104. Health Resources of Pennington, Inc.
105. Health Resources of Ridgewood, Inc.
106. Health Resources of Rockville, Inc.
107. Health Resources of Solomont/Brookline,
     Inc.
108. Health Resources of South Brunswick, Inc.
109. Health Resources of Troy Hill, Inc.
110. Health Resources of Voorhees, Inc.
111. Health Resources of Westwood, Inc.
112. Healthcare Rehab Systems, Inc.
113. Helstat, Inc.
114. HMNR Realty, Inc.
115. HNCA, Inc.
116. Horizon Mobile, Inc.
117. Horizon Rehabilitation, Inc.
118. HR of Charleston, Inc.
119. HRWV Huntington, Inc.
120. Lakewood Health Resources, Inc.
121. Laurel Health Resources, Inc.
122. Lehigh Nursing Homes, Inc.
123. LRC Holding Company
124. LWNR, Inc.
125. Mabri Convalescent Center, Inc.
126. Marshfield Health Resources, Inc.
127. MHNR, Inc.
128. MNR, Inc.
129. Montgomery Nursing Homes, Inc.
130. Multicare Home Health of Illinois, Inc.
131. Northwestern Management Services, Inc.
132. Nursing and Retirement Center of the
     Andovers, Inc.
133. PHC Operating Corp.
134. Pocohantas Continuous Care Center, Inc.
135. Pompton Care, Inc.
136. Prescott Nursing Home, Inc.
137. Progressive Rehabilitation Centers, Inc.

138. Providence Funding Corporation
139. Providence Health Care, Inc.
140. Providence Medical, Inc.
141. Rest Haven Nursing Home, Inc.
142. Ridgeland Health Resources, Inc.
143. River Pines Health Resources, Inc.
144. Rivershores Health Resources, Inc.
145. RLNR, Inc.
146. Rophel Convalescent Center, Inc.
147. Rose Healthcare, Inc.
148. Rose View Manor, Inc.
149. Roxborough Nursing Home, Inc.
150. RSNR, Inc.
151. S.T.B. Investors, LTD.
152. Schuylkill Nursing Homes, Inc.
153. Schuylkill Partnership Acquisition
     Corporation
154. Scotchwood Mass. Holding Co., Inc.
155. Senior Living Ventures, Inc.
156. Senior Source, Inc.
157. Snow Valley Health Resources, Inc.
158. SVNR, Inc.
159. The ADS Group, Inc.
160. The Assisted Living Associates of
     Berkshire, Inc.
161. The Assisted Living Associates of  Lehigh,
     Inc.
162. The Assisted Living Associates of
     Sanatoga, Inc.
163. The Assisted Living Associates of  Wall,
     Inc.
164. The House of Campbell, Inc.
165. TM Acquisition Corp.
166. Tri-State Mobile Medical Services, Inc.
167. Westford Nursing and Retirement  Center,
     Limited Partnership
168. Willow Manor Nursing Home, Inc.
169. Pompton Associates, L.P.
170. Pompton Care, L.L.C.
171. Health Resources of Ridgewood,    L.L.C.
172. Health Resources of Emery, L.L.C.
173. Encare of Mendham. L.L.C.
174. Breyut Convalescent Center, L.L.C.
175. ADS Recuperative Center Limited
     Partnership
176. Westford Nursing and Retirement Center,
     Inc.
177. RVNR, Inc.
178. Horizon Associates, Inc.
179. Health Resources of Warwick, Inc.
180. Health Resources of Wallingford, Inc.

181. Health Resources of Middletown (RI), Inc.
182. Health Resources of Groton, Inc.
183. Health Resources of Cumberland, Inc.
184. Health Resources of Arcadia, Inc.
185. Encare of Wyncote, Inc.
186. Encare of Quakertown, Inc.
187. ADS Senior Housing, Inc.
188. ADS Recuperative Center, Inc.
189. ADS Hingham Nursing Facility, Inc.

190. ADS Apple Valley, Inc.
191. ADS/Multicare, Inc.
192. Glenmark Associates, Inc.
193. GMA Partnership Holding Company, Inc.
194. Stafford Convalescent Center, Inc.
195. The Multicare Companies, Inc.
196. North Madison, inc.
197. ADS Apple Valley Limited Partnership

**SCHEDULE OF REJECTED CONTRACTS**

**GENESIS DEBTORS**

1. Vending services agreement, dated as of March 21, 1998, between Genesis Health Ventures, Inc. and Take-A-Break

2. Postage meter lease agreement, dated as of January 10, 2000, between NeighborCare of Oklahoma, Inc. and Pitney Bowes Credit Corporation

3. Computer lease agreement, dated as of November 3, 1999, between Geriatric & Medical Services, Inc. and Dell Financial Services

4. Radiology agreement, dated as of July 2, 1997, between Meridian Healthcare, Inc. and Radiation Physics

5. Dental agreement, dated as of July 23, 1997, between Meridian Healthcare, Inc. and Anthony Gregorio DDS

6. Elevator maintenance agreement, dated as of July 8, 1997, between Meridian Healthcare, Inc. and General Elevator

7. Exterminator service agreement, dated as of December 28, 1998, between Meridian Healthcare, Inc. and Western Pest

8. Generator agreement, dated as of September 17, 1998, between Meridian Healthcare, Inc. and Advanced Equipment

9. Lawn exterminator agreement, dated as of November 1, 1999, between Meridian Healthcare, Inc. and TruGreen ChemLawn

10. Diagnostic lab agreement, dated as of January 1, 1999, between Meridian Healthcare, Inc. and Quest Laboratories

11. Medical record consulting agreement, dated as of November 28, 1997, between Meridian Healthcare, Inc. and Clinical Record Consulting

12. Social services agreement, dated as of December 8, 1998, between Meridian Healthcare, Inc. and Laurie Trusty, MSW, ACSW, and LCSW-C

13. Vending machine agreement, dated as of July 6, 1997, between Meridian Healthcare, Inc. and Black Tie Service

14. Hazardous waste removal agreement, dated as of June 1, 1997, between Meridian Healthcare, Inc. and Waste Management of Montgomery County

15. Sprinkler system agreement, dated as of February 17, 1997, between Meridian Healthcare, Inc. and Livingston Fire Protection, Inc.

16. Transfer agreement, dated as of February 1, 1998, between Meridian Healthcare, Inc. and Montgomery General Hospital

## MULTICARE DEBTORS

1. Cable television agreement, dated as of September 27, 1999, between Health Resources of Kamenta & Madison, Inc. and SkyCable TV of Madison, LLC

2. Medical staffing agreement, dated as of June 1, 2000, between Health Resources of Kamenta & Madison, Inc. and Healthcare Specialists, Inc.

3. Staffing agreement, dated as of June 20, 2000, between Health Resources of Kamenta & Madison, Inc. and Country Nurses, Inc.

4. HCFA information review agreement, dated as of January 7, 2000, between Health Resources of Kamenta & Madison, Inc. and MetaStar, Inc.

5. Medical director agreement, dated as of December 1, 1998, between Health Resources of Kamenta & Madison, Inc. and Dr. Leroy Walsh

6. Health care consulting agreement, dated as of November 8, 1999, between Health Resources of Kamenta & Madison, Inc. and Dorothy Anderson ART/ Anderson Consulting Services

7. Insurance provider agreement, dated as of February 15, 1999, between Health Resources of Kamenta & Madison, Inc. and Premier/Dean Health Plan, Inc.

8. Security agreement, dated as of September 14, 1995, between Health Resources of Kamenta & Madison, Inc. and ADT Security Systems West, Inc.

9. Bird watching agreement, dated as of October 6, 1994, between Health Resources of Kamenta & Madison, Inc. and Living Design, Inc.

10. Hair care agreement, dated as of February 26, 1999, between Health Resources of Kamenta & Madison, Inc. and Classic Hair Care, LLC

11. Medicaid electronic data system billing agreement, dated as of October 2, 1995, between Health Resources of Kamenta & Madison, Inc. and State of Wisconsin, Department of Heath Services

12. Fire protection agreement, dated as of February 12, 1999, between Health Resources of Kamenta & Madison, Inc. and Grinnell

13. Optometry agreement, dated as of March 2, 1999, between Health Resources of Kamenta & Madison, Inc. and Health Drive Medical & Dental Practices

14. Podiatry agreement, dated as of April 2, 1999, between Health Resources of Kamenta & Madison, Inc. and Health Drive Medical & Dental Practices

15. Pay Phone agreement, dated as of August 1, 1996, between Health Resources of Kamenta & Madison, Inc. and Ameritech

16. Bio-Med waste agreement, dated as of March 29, 1999, between Health Resources of Kamenta & Madison, Inc. and Stericycle, Inc.

17. Medical infectious waste disposal agreement, dated as of August 17, 1998, between Health Resources of Kamenta & Madison, Inc. and Madison Energy Recovery, Inc.

18. Respite Care agreement, dated as of October 1, 1999, between Health Resources of Kamenta & Madison, Inc. and Community Living Alliance

19. Staffing agreement, dated as of May 2, 2000, between Health Resources of Columbus, Inc. and Healthcare Staffing

20. Service agreement, dated as of April 26, 2000, between Health Resources of Columbus, Inc. and Heartline Medix, Inc.

21. Service agreement, dated as of November 3, 1993, between Health Resources of Columbus, Inc. and Divine Savior Hospital/Audiology

22. Service agreement, dated as of February 15, 1995, between Health Resources of Columbus, Inc. and Muzak-Advertising On Hold

23. Service agreement, dated as of December 6, 1993, between Health Resources of Columbus, Inc. and Living Design

24. Service agreement, dated as of April 1, 1998, between Health Resources of Columbus, Inc. and Shelia Niggemeier

25. Equipment agreement, dated as of January 18, 1989, between Health Resources of Columbus, Inc. and Ecolab

26. Service agreement, dated as of March 12, 1999, between Health Resources of Columbus, Inc. and Stericycle

27. Equipment agreement, dated as of February 8, 1999, between Health Resources of Columbus, Inc. and Grinnell Fire Protection

28. Vehicle lease agreement, dated as of December 12, 1998, between Health Resources of Columbus, Inc. and PNC

29. Consulting agreement, dated as of January 20, 1998, between Health Resources of Columbus, Inc. and Healthdrive Medical

30. Hospitalization service agreement, dated as of October 6, 1998, between Health Resources of Columbus, Inc. and Columbus Community Hospital

31. Laboratory service agreement, dated as of October 6, 1998, between Health Resources of Columbus, Inc. and Columbus Community Hospital

32. Medical director agreement, dated as of September 30, 1996, between Health Resources of Columbus, Inc. and Dr. Bruce A. Kraus

33. Service agreement, dated as of October 1, 1998, between Health Resources of Columbus, Inc. and Sandy Roof

34. Service agreement, dated as of May 1, 2000, between Health Resources of Columbus, Inc. and Preferred Podiatry

35. Service agreement, dated as of February 26, 1998, between Health Resources of Columbus, Inc. and Marla Davis Psychotherapy

36. Equipment agreement, dated as of January 9, 1997, between Health Resources of Columbus, Inc. and Storage Plus

37. Service agreement, dated as of January, 2000, between Health Resources of Columbus, Inc. and Safeco

38. Equipment agreement, dated as of December, 1994, between Health Resources of Columbus, Inc. and Lake City Vending

39. Service agreement, dated as of July 22, 1999, between Health Resources of Columbus, Inc. and Wil-Kil Pest

40. Participation agreement, dated as of November 1, 1999, between Health Resources of Columbus, Inc. and Department of Health & Social Services

41. Participation agreement, dated as of September 1, 1992, between Health Resources of Columbus, Inc. and State of Wisconsin

42. Participation agreement, dated as of March 11, 1998, between Health Resources of Columbus, Inc. and Dean Health Plan

43. Participation agreement, dated as of March 8, 1996, between Health Resources of Columbus, Inc. and Group Health Cooperative

44. Service agreement, dated as of June 21, 2000, between Health Resources of Columbus, Inc. and Country Nurses

45. Service agreement, dated as of November 8, 1999, between Health Resources of Columbus, Inc. and 1 Health Plan

**EXHIBIT B**

-------------------------------------------------------X
                  :

In re                            :     Chapter 11 Case No.
                  :

GENESIS HEALTH VENTURES, INC., *et al.*,  :    00-2692 (JHW)
                  :

        Debtors.          :
                  :     (Jointly Administered)

-------------------------------------------------------X
                  :

In re                            :     Chapter 11 Case No.
                  :

MULTICARE AMC, INC., *et al.*,        :    00-2494 (JHW)
                  :

        Debtors.          :
                  :     (Jointly Administered)

-------------------------------------------------------X

## TECHNICAL AMENDMENTS TO
## DEBTORS' JOINT PLAN OF REORGANIZATION

Genesis Health Ventures, Inc. ("Genesis"), The Multicare Companies, Inc.

("Multicare"), and the other above-captioned debtors and debtors in possession

(collectively with Genesis and Multicare, the "Debtors") hereby file these Technical

Amendments to the Debtors' Joint Plan of Reorganization, dated July 6, 2001 (the

"Plan").[1]

      1.     Section 1.31 of the Plan (Definitions/Genesis Other Secured

Claim) is amended as follows: at the end of the second line after the words "Genesis

Senior Lender Claim", insert the words ", but including Secured Claims in the amount of

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings
ascribed thereto in the Plan.

$50,000,000 of the lender parties to the documents described in clause (ii) of the definition of Genesis Senior Lender Agreements."

2. Section 1.36 of the Plan (Definitions/Genesis Senior Lender Claim) is amended as follows: at the end of the sixth line after the number "$17,290,962", insert the words ", and the Claims of the lender parties to the documents described in clause (ii) of the definition of Genesis Senior Lender Agreements are Genesis Senior Lender Claims to the extent of $28,236,000."

3. Section 1.57 of the Plan (Definitions/Plan Documents) is amended as follows:

a. in the sixth line after the designation (viii), delete the words "the settlement agreement referred to in Section 5.15 hereof, (ix)"

b. in the seventh line, replace the designation "(x)" with the designation "(ix)".

4. Section 2.3 of the Plan (Administrative Expense Claims and Priority Tax Claims/Priority Tax Claims) is amended as follows: in the eighth line after the words "Allowed Priority Tax Claim" insert the words "; *provided, however,* that any Allowed Priority Tax Claim belonging to the Internal Revenue Service shall receive quarterly, rather than annual, Cash payments".

5. Section 3.3 of the Plan (Classification of Claims and Equity Interests/Subclasses for Class G1) is amended as follows: insert the words "101 E. State Street, Kennett Square, Pa." in the second to last line of the second column of the table underneath the words "Woodmont Center."

6.    Section 4.1 of the Plan (Treatment of Claims and Equity

Interests/Genesis Other Secured Claims (Class G1)) is amended as follows:

a.    insert the words "G1-5, G1-6, G1-7," in the first line after

the words "Except for the Genesis Other Secured Claims in Subclasses."

b.    add the following subparagraphs (d), (e), and (f) after

subparagraph (c):

> (d)    *Subclass G1-5.* As of the Effective Date, all
> of the Genesis Debtors' obligations under, pursuant to, and
> in connection with (i) the 8.875% First Mortgage Revenue
> Refunding Bonds (Edella Street Associates Project), Series
> 1992, due September 1, 2014 (the "Lackawanna Bonds"),
> issued pursuant to that certain Trust Indenture, dated as of
> June 1, 1992 (the "Lackawanna Indenture"), between the
> Lackawanna County Industrial Development Authority and
> Fidelity Bank, National Association ("Fidelity",
> predecessor to Allfirst Bank ("Allfirst")), as indenture
> trustee, and (ii) any and all documents, agreements, and
> instruments executed in connection with the Lackawanna
> Bonds, including, without limitation, the Lackawanna
> Indenture and that certain Mortgage And Security
> Agreement dated as of June 1, 1992 (collectively, the
> "Lackawanna Bond Documents"), shall be reinstated and
> shall be the obligations of the Reorganized Debtors. As of
> the Effective Date, the Lackawanna Bond Documents shall
> be deemed reinstated in their entirety, and all legal,
> equitable, and contractual rights under the Lackawanna
> Bond Documents and the Lackawanna Bonds shall be and
> remain unaltered by confirmation and consummation of the
> Plan, including, without limitation, the extent, validity,
> priority, and perfection of all liens and security interests
> granted thereunder. No further filing, notice, or other
> action shall be required to effect the reinstatement of the
> Lackawanna Bond Documents and the Lackawanna Bonds,
> including, without limitation, the perfection of liens granted
> in respect thereof; *provided,* that the Genesis Debtors
> and/or the Reorganized Debtors shall obtain and execute, or
> cause to be obtained and executed, such replacement
> documents, agreements, and instruments as reasonably
> requested in writing by either Allfirst, as indenture trustee,

or by holders of the Lackawanna Bonds. On or as soon as reasonably practicable after the Effective Date, the Genesis Debtors and/or the Reorganized Debtors shall (y) cure any and all defaults under the Lackawanna Bonds and the Lackawanna Bond Documents (including, without limitation, any past due payments of principal and interest (at the nondefault rate), whether incurred prior to or after the Commencement Date), and (z) reimburse Allfirst, as indenture trustee, for all fees, expenses, and costs (including reasonable attorneys' fees and expenses) which have accrued and are required to be paid under the Lackawanna Bonds and the Lackawanna Bond Documents.

(e)     *Subclass G1-6.* As of the Effective Date, all of the Genesis Debtors' obligations under, pursuant to, and in connection with (i) The Delaware Economic Development Authority First Mortgage Revenue Refunding Bonds Series of 1993 (Dover Health Care Associates Inc. Project) (the "Delaware Bonds"), issued pursuant to that certain Trust Indenture dated as of February 1, 1993 (the "Delaware Indenture"), between The Delaware Economic Development Authority and Fidelity Bank, National Association ("Fidelity," as predecessor to Allfirst, as indenture trustee, and (ii) any and all documents, agreements and instruments executed in connection with the Delaware Bonds, including, without limitation, the Delaware Indenture, that certain Mortgage and Security Agreement dated as of February 1, 1993, and that certain Guaranty Agreement dated as of February 1, 1993, the provisions of Section 5.1 herein notwithstanding (collectively, the "Delaware Bond Documents"), shall be reinstated and shall be the obligations of the Reorganized Debtors. As of the Effective Date, the Delaware Bond Documents shall be deemed reinstated in their entirety, and all legal, equitable, and contractual rights under the Delaware Bond Documents and the Delaware Bonds shall be and remain unaltered by confirmation and consummation of the Plan, including, without limitation, the extent, validity, priority, and perfection of all liens and security interests granted thereunder. No further filing, notice, or other action shall be required to effect the reinstatement of the Delaware Bond Documents and the Delaware Bonds, including, without limitation, the perfection of liens granted in respect thereof; *provided*, that the Genesis Debtors and/or the Reorganized Debtors shall

obtain and execute, or cause to be obtained and executed, such replacement documents, agreements, and instruments as reasonably requested in writing by either Allfirst, as indenture trustee, or by holders of the Delaware Bonds. On or as soon as reasonably practicable after the Effective Date, the Genesis Debtors and/or the Reorganized Debtors shall (y) cure any and all defaults under the Delaware Bonds and the Delaware Bond Documents (including, without limitation, any past due payments of principal and interest (at the nondefault rate), whether incurred prior to or after the Commencement Date), and (z) reimburse Allfirst as indenture trustee, for all expenses and costs (including reasonable attorneys' fees and expenses) which have accrued and are required to be paid under the Delaware Bonds and the Delaware Bond Documents.

(f)     *Subclass G1-7.*  As of the Effective Date, all of the Genesis Debtors' obligations under, pursuant to, and in connection with (i) the 8.75% First Mortgage Revenue Refunding Bonds (River Street Associates Project), Series 1992, due June 15, 2007 (the "Luzerne Bonds"), issued pursuant to that certain Trust Indenture, dated as of June 1, 1992 (the "Luzerne Indenture"), between the Luzerne County Industrial Development Authority and Fidelity (predecessor to Allfirst), as indenture trustee, and (ii) any and all documents, agreements, and instruments executed in connection with the Luzerne Bonds, including, without limitation, the Luzerne Indenture and that certain Mortgage And Security Agreement dated as of June 1, 1992 (collectively, the "Luzerne Bond Documents"), shall be reinstated and shall be the obligations of the Reorganized Debtors. As of the Effective Date, the Luzerne Bond Documents shall be deemed reinstated in their entirety, and all legal, equitable, and contractual rights under the Luzerne Bond Documents and the Luzerne Bonds shall be and remain unaltered by confirmation and consummation of the Plan, including, without limitation, the extent, validity, priority, and perfection of all liens and security interests granted thereunder. No further filing, notice, or other action shall be required to effect the reinstatement of the Luzerne Bond Documents and the Luzerne Bonds, including, without limitation, the perfection of liens granted in respect thereof; *provided,* that the Genesis Debtors and/or the Reorganized Debtors shall obtain and execute, or cause to be obtained

and executed, such replacement documents, agreements, and instruments as reasonably requested in writing by either Allfirst, as indenture trustee, or by holders of the Luzerne Bonds. On or as soon as reasonably practicable after the Effective Date, the Genesis Debtors and/or the Reorganized Debtors shall (y) cure any and all defaults under the Luzerne Bonds and the Luzerne Bond Documents (including, without limitation, any past due payments of principal and interest (at the nondefault rate)), whether incurred prior to or after the Commencement Date), and (z) reimburse Allfirst, as indenture trustee, for all fees, expenses, and costs (including reasonable attorneys' fees and expenses) which have accrued and are required to be paid under the Luzerne Bonds and the Luzerne Bond Documents..

7.    Section 5.11 of the Plan (Means for Implementation/Cancellation

of Existing Securities and Agreements) is amended as follows: in the last line after the word "indentures", add the words "; *provided, further, however,* that the relevant indentures, notes, and other instruments relating to Allowed Claims being reinstated and unimpaired in Class M1 shall not be canceled by this Section 5.11.

8.    Section 5.12 of the Plan (Means for Implementation/Board of Directors) is amended as follows:

a.    Replace the word "seven" in the first line with the word "eight".

b.    In the fourth line after the sentence ending with the words "of Reorganized Genesis." add the following sentence: "The eighth member will be selected by the Chief Executive Officer of Reorganized Genesis."

9.    Section 5.15 of the Plan (Means for Implementation/Settlement with the Federal Government) is amended as follows:

a.    delete the words ", in the form set forth in the Plan Supplement," in the fifth and sixth lines.

b.    add the words ", subject to obtaining Bankruptcy Court approval" in the sixth line after the words "Plan of Reorganization".

10.    Section 6.10 of the Plan (Distributions/Setoffs) is amended as follows: at the end of the sixth line after the word "Claim" insert the words "*provided, that in the event the Debtors seek to exercise such setoff rights against the holder of a Claim that is a debtor in a case under the Bankruptcy Code, the Debtors shall comply with the requirements of the Bankruptcy Code, including seeking relief from the automatic stay.*".

11.    Section 8.1 of the Plan (Executory Contracts and Unexpired Leases/General Treatment) is amended as follows: insert the words "and Leases" after the words "Schedule of Rejected Contracts" in the fifth line.

12.    Schedule 8.1 to the Plan (Schedule of Rejected Contracts/Genesis Debtors) is amended as follows:

a.    insert the words "and Leases" after "Schedule of Rejected Contracts" in the title.

b.    add the following contracts after "16. Transfer agreement, dated as of February 1, 1998, between Meridian Healthcare, Inc. and Montgomery General Hospital":

17. Contract for the Sale of Anthony Wayne School, dated December 8, 2000, between Walnut LTC Management, Inc. and Altman General Corporation[2]

18. Vehicle lease #93080, dated as of February 21, 1996, between NeighborCare – TCI, Inc. and Mike Albert Leasing, Inc.

19. Vehicle lease #93082, dated as of February 21, 1996, between NeighborCare – TCI, Inc. and Mike Albert Leasing, Inc.

20. Vehicle lease #93083, dated as of February 21, 1996, between NeighborCare – TCI, Inc. and Mike Albert Leasing, Inc.

21. Vehicle lease #93084, dated as of February 21, 1996, between NeighborCare – TCI, Inc. and Mike Albert Leasing, Inc.

22. Printer lease, dated as of April 1998, between Network Ambulance Services and Pitney Bowes

23. Pumps lease, dated January 17, 1994, between ASCO Healthcare, Inc. and Medela, Inc.

13.    Section 10.6 of the Plan (Effect of Confirmation/Exculpation) is

amended as follows: delete the words "any Disbursing Agent," in the first line.

14.    Except as expressly amended hereby, all other provisions of the

Plan shall remain unaffected and in full force and effect.

Dated: August 27, 2001
      Wilmington, Delaware


WEIL, GOTSHAL & MANGES LLP          WILLKIE FARR & GALLAGHER
767 Fifth Avenue                    787 Seventh Avenue
New York, New York 10153            New York, New York 10019-6099
(212) 310-8000                      (212) 728-8000
Michael F. Walsh                    Marc Abrams
Gary T. Holtzer                     Paul V. Shalhoub

-and-                               -and-

---

[2] This is a postpetition agreement which the Genesis Debtors are terminating.

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 658-6541

By: _Mark Coll (No. 3780)_

Mark D. Collins (No. 2981)

ATTORNEYS FOR THE GENESIS
DEBTORS AND DEBTORS IN
POSSESSION

YOUNG CONAWAY STARGATT &
TAYLOR
11th Floor, Wilmington Trust Company
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

By: _Robert Brady by DLE w/permission_

Robert S. Brady (No. 2847)

ATTORNEYS FOR THE MULTICARE
DEBTORS AND DEBTORS IN
POSSESSION



**EXHIBIT C**

-----------------------------------------------------------------x
                                          :
**In re**                                 :     **Chapter 11 Case No.**
                                          :
**GENESIS HEALTH VENTURES, INC.,** *et al.,*   :     **00-2692 (JHW)**
                                          :
                       **Debtors.**       :
                                          :     **(Jointly Administered)**
-----------------------------------------------------------------x
                                          :
**In re**                                 :     **Chapter 11 Case No.**
                                          :
**MULTICARE AMC, INC.,** *et al.,*         :     **00-2494 (JHW)**
                                          :
                       **Debtors.**       :
                                          :     **(Jointly Administered)**
-----------------------------------------------------------------x

## AMENDMENTS TO DEBTORS' JOINT PLAN OF REORGANIZATION
## TO COMPLY WITH OPINION ON CONFIRMATION

Genesis Health Ventures, Inc. ("Genesis"), The Multicare Companies, Inc.

("Multicare"), and the other above-captioned debtors and debtors in possession

(collectively with Genesis and Multicare, the "Debtors"), hereby file these Amendments

to the Debtors' Joint Plan of Reorganization, dated July 6, 2001 (the "Plan"),[1] to Comply

with the Court's Opinion on Confirmation.

1.      Section 5.10 of the Plan (Release of Representatives) is amended

by replacing the entire paragraph with the following paragraphs:

> (a) As of the Effective Date, the respective officers,
> directors, employees, financial advisors, professionals,
> accountants, and attorneys of the Genesis Debtors, the
> Multicare Debtors, and the respective statutory committees
> of unsecured creditors appointed pursuant to section 1102

---

[1] Unless otherwise defined, capitalized terms used herein shall have the meanings
ascribed thereto in the Plan.

of the Bankruptcy Code in the Genesis Reorganization
Cases and the Multicare Reorganization Cases shall be
released by the Debtors from any and all Claims arising on
or after the Commencement Date against them in their
capacity as representatives of the Genesis Debtors, the
Multicare Debtors, or the statutory committees, as
applicable, except (i) for willful misconduct or gross
negligence and (ii) as otherwise expressly provided in the
order of the Bankruptcy Court, dated February 23, 2001,
approving a senior executive retention plan for certain
employees of Genesis.

(b) As of the Effective Date, the respective officers,
directors, employees, financial advisors, professionals,
accountants, and attorneys of Mellon Bank, N.A., as
administrative agent under the Genesis Senior Lender
Agreements, the Multicare Senior Lender Agreements, and
the Revolving Credit and Guaranty Agreements described
in Section 2.4 hereof shall be released by the Debtors from
any and all Claims against them in their capacity as
representatives of Mellon Bank, N.A.

2.    Section 10.6 of the Plan (Exculpation) is amended as follows:

in the fourth line after the words "agent under" delete the words ", and any lender under".

3.    Except as expressly amended hereby, all other provisions of the

Plan, as modified by the Technical Amendments to the Plan, dated August 27, 2001,

shall remain unaffected and in full force and effect.

Dated: September 13, 2001
       Wilmington, Delaware


WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
(212) 310-8000
Michael F. Walsh
Gary T. Holtzer

-and-

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
(302) 658-6541

By: _____
Mark D. Collins (No. 2981)

ATTORNEYS FOR THE GENESIS
DEBTORS AND DEBTORS IN
POSSESSION


WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, New York 10019-6099
(212) 728-8000
Marc Abrams
Paul V. Shalhoub

-and-

YOUNG CONAWAY STARGATT &
TAYLOR
11th Floor, Wilmington Trust Company
P.O. Box 391
Wilmington, Delaware 19899-0391
(302) 571-6600

By: _____
Robert S. Brady (No. 2847)

ATTORNEYS FOR THE MULTICARE
DEBTORS AND DEBTORS IN
POSSESSION

# EXHIBIT D

# Objections to Confirmation

1.  AGE Institute of Pennsylvania, Inc., AGE Institute of Massachusetts, Inc., AGE Institute of Florida, Inc., Delaware Valley Convalescent Homes, Inc., and AGE Holding, Inc.

2.  Bexar County

3.  Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Employer Tax Operations

4.  Commonwealth of Pennsylvania, Department of Revenue

5.  GMS Group LLC

6.  Indiana Department of Revenue

7.  James J. Hayes

8.  JSM Company

9.  Massachusetts Housing Finance Agency

10. Michael Goff, *et al.* Tort Claimants

11. Mr. Charles L. Grimes

12. Odessa Packaging

13. Office of the United States Trustee

14. Steven T. Sapperstein

15. Susquehanna Center, Inc.

16. THCI Company LLC

17. Todd W. Martin, III

18. Tort Claimants Represented by Wilkes & McHugh, P.A.

# EXHIBIT E

# **Resolved Objections**

1.   Bexar County

2.   Commonwealth of Pennsylvania, Department of Labor and Industry, Bureau of Employer Tax Operations

3.   Commonwealth of Pennsylvania, Department of Revenue

4.   Michael Goff, *et al.* Tort Claimants (other than with respect to Punitive Damage Claims)

5.   Indiana Department of Revenue

6.   JSM Company

7.   Massachusetts Housing Finance Agency

8.   Susquehanna Center, Inc.

9.   THCI Company LLC



**EXHIBIT F**

# UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------------x
                                              :
In re                                         :          Chapter 11 Case No.
                                              :
GENESIS HEALTH VENTURES, INC., et al.,        :          00-2692 (JHW)
                                              :
                                              :          (Jointly Administered)
                     Debtors.                 :
-------------------------------------------------------------x
                                              :
In re                                         :          Chapter 11 Case No.
                                              :
MULTICARE AMC, INC., et al.,                  :          00-2494 (JHW)
                                              :
                                              :          (Jointly Administered)
                     Debtors.                 :
-------------------------------------------------------------x
```

## NOTICE OF EXTENDED DEADLINE FOR: (i) OBJECTING TO CONFIRMATION OF THE DEBTORS' JOINT PLAN OF REORGANIZATION TO ALL HOLDERS OF CLASS M1-2 AND M1-7 CLAIMS; AND (ii) VOTING ON THE PLAN OF REORGANIZATION TO ALL HOLDERS OF CLASS M1-7 CLAIMS

PLEASE TAKE NOTICE THAT:

       1.     Pursuant to the order, dated July 13, 2001 (the "Order"), of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"): (i) approving the form and manner of notice of a disclosure statement hearing and the disclosure statement; (ii) establishing a record date; (iii) establishing notice and objection procedures for confirmation of the joint plan of reorganization, dated July 6, 2001 (as amended, the "Plan") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"); (iv) approving solicitation packages and procedures for distribution; (v) approving forms of ballots and establishing procedures for voting on the Plan; and (vi) authorizing the retention of Poorman-Douglas Corporation ("Poorman-Douglas") as voting agent, the Debtors were required to serve you with a Solicitation Package, including a Ballot or a Notice of Non-Voting Status, as applicable, on or before July 18, 2001.[1]

---

[1]     Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Order.

2. The documents in the Solicitation Package indicate that the Ballots must be delivered to Poorman-Douglas so that they are received no later than 5:00 p.m. Pacific Time on August 17, 2001 (the "Voting Deadline").

3. The documents in the Solicitation Package also indicate that any objections to confirmation of the Plan must be filed and served so that they are actually received no later than 4:00 p.m. Eastern Time on August 17, 2001 (the "Objection Deadline").

4. Because you may not have received the Solicitation Package in a timely manner in accordance with the Order, the Debtors are: (a) extending the Objection Deadline with respect to holders of (i) M1-2 Claims (Multicare Other Secured Claims – Care Haven Bonds), and (ii) M1-7 Claims (Multicare Other Secured Claims - Point Pleasant Bonds); and (b) extending the Voting Deadline with respect to holders of M1-7 Claims, as provided below, notwithstanding any statement to the contrary contained anywhere in the Solicitation Package.[2]

5. If you are a holder of a Class M1-7 Claim, for your vote to accept or reject the Plan to be counted, you must complete all requested information on the Ballot, execute the Ballot, and return the completed Ballot to the address indicated on the Ballot by **5:00 p.m. Pacific Daylight Savings Time, on August 24, 2001**. Any failure to follow the voting instructions included with the Ballot (as modified by this Notice) may disqualify your Ballot and your vote.

6. For holders of either Class M1-2 *or* Class M1-7 Claims, objections, if any, to the confirmation of the Plan must: (i) be in writing, (ii) state the name and address of the objecting party and the nature of the claim or interest of such party, (iii) state with particularity the basis and nature of any objection or proposed modification, and (iv) be filed, together with proof of service, with the Court and served so that they are received no later than **4:00 p.m., Eastern Daylight Savings Time, on August 24, 2001** by: (a) the Clerk of the Court; (b) attorneys for the Genesis Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq.) and Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899 (Attn: Mark D. Collins, Esq.); (c) attorneys for the Multicare Debtors, Willkie Farr & Gallagher, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Paul V. Shalhoub, Esq.) and Young Conaway Stargatt &Taylor, 11th Floor, Wilmington Trust Company, P.O. Box 391, Wilmington, Delaware 19899-0391 (Attn: Robert S. Brady, Esq.); (d) attorneys for Mellon Bank, N.A., as agent for the Genesis Debtors' prepetition senior lenders and postpetition lenders and the Multicare Debtors' prepetition senior lenders and postpetition lenders (the "Agent"), Morgan, Lewis & Bockius, 101 Park Avenue, New York, New York, 10178 (Attn: Richard S. Toder, Esq.) and Klett Rooney Lieber & Schorling, The Brandywine Building, 1000

---

[2]     The Voting Deadline has not been extended with respect to holders of claims in class M1-2 because, pursuant to the Plan, such creditors are not entitled to vote.

West Street, Wilmington, Delaware 19801 (Attn: Teresa Currier, Esq.); (e) attorneys for the statutory committee of unsecured creditors appointed in the Genesis Debtors' chapter 11 cases (the "Genesis Committee"), Akin, Gump, Strauss, Hauer & Feld, L.L.P., 590 Madison Avenue, New York, New York 10022 (Attn: Lisa Beckerman, Esq.) and Pachulski, Stang, Ziehl, Young, & Jones, P.C., 919 N. Market Street, 16th Floor, P.O. Box 8075, Wilmington, Delaware 19899-8705 (Attn: Laura Davis Jones, Esq.); (f) attorneys for the statutory committee of unsecured creditors appointed in the Multicare Debtors' chapter 11 cases (the "Multicare Committee"), Kasowitz, Benson, Torres & Friedman LLP, 1633 Broadway, New York, New York 10019 (Attn: David S. Rosner, Esq.) and Saul Ewing LLP, 222 Delaware Avenue, Suite 1200, P.O. Box 1266, Wilmington, Delaware 19899 (Attn: Mark Minuti, Esq.); and (g) the United States Trustee for the District of Delaware, 601 Walnut Street, Curtis Center, Suite 950 West, Philadelphia, Pennsylvania 19106 (Attn: Joseph McMahon, Esq.). Objections not timely filed and served in the manner set forth above shall not be considered and shall be overruled.

Dated: July 31, 2001

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Michael F. Walsh
Gary T. Holtzer

WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, New York 10019-6099
Paul V. Shalhoub
Steven Wilamowsky

-and-

-and-

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Mark D. Collins (No. 2981)

YOUNG CONAWAY STARGATT &
TAYLOR
11th Floor, Wilmington Trust Company
P.O. Box 391
Wilmington, Delaware 19899-0391
Robert S. Brady (No. 2847)

ATTORNEYS FOR THE GENESIS
DEBTORS AND DEBTORS IN
POSSESSION

ATTORNEYS FOR THE MULTICARE
DEBTORS AND DEBTORS IN
POSSESSION

# EXHIBIT G

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

```
------------------------------------------------------x
                                                       :
In re                                                  :
                                                       :
GENESIS HEALTH VENTURES, INC., et al.,                 :
                                                       :
                                                       :
                          Debtors.                     :
------------------------------------------------------x
                                                       :
In re                                                  :
                                                       :
MULTICARE AMC, INC., et al.,                           :
                                                       :
                                                       :
                          Debtors.                     :
------------------------------------------------------x
```

Chapter 11 Case No.

00-2692 (JHW)

(Jointly Administered)


Chapter 11 Case No.

00-2494 (JHW)

(Jointly Administered)

## NOTICE OF EXTENDED DEADLINE FOR (i) OBJECTING TO CONFIRMATION OF THE DEBTORS' PLAN OF REORGANIZATION AND (ii) VOTING ON THE PLAN OF REORGANIZATION

TO CERTAIN HOLDERS OF 9 7/8% GENESIS SENIOR SUBORDINATED NOTES DUE 2009.

PLEASE TAKE NOTICE THAT:

        1.      Pursuant to the order, dated July 13, 2001 (the "Order"), of the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (i) approving the form and manner of notice of a disclosure statement hearing and the disclosure statement; (ii) establishing a record date; (iii) establishing notice and objection procedures for confirmation of the joint plan of reorganization, dated July 6, 2001 (the "Plan") of the above-captioned debtors and debtors in possession (collectively, the "Debtors"); (iv) approving solicitation packages and procedures for distribution; (v) approving forms of ballots and establishing procedures for voting on the Plan; and (vi) authorizing the retention of Poorman-Douglas Corporation ("Poorman-Douglas") as voting agent, you should have already received a Solicitation Package, including a Ballot.[1]

---

[1] Capitalized terms used herein but not defined shall have the meanings ascribed to such terms in the Order.

2.      The documents in the Solicitation Package indicate that the Ballots must be delivered to Poorman-Douglas so that they are received no later than 5:00 p.m. Pacific Time on August 17, 2001 (the "Voting Deadline").

3.      The documents in the Solicitation Package also indicate that any objections to confirmation of the Plan must be filed and served so that they are actually received no later than 4:00 p.m. Eastern Time on August 17, 2001 (the "Objection Deadline").

4.      Because you may not have received the Solicitation Package in a timely manner in accordance with the Order, the Debtors are extending the Voting Deadline and the Objection Deadline with respect to certain holders of 9 7/8% Genesis Senior Subordinated Notes due 2009 in Class G5 (Genesis Subordinated Note Claims) as provided below.

5.      For your vote to accept or reject the Plan to be counted, you must complete all requested information on the Ballot, execute the Ballot, and return the completed to the address indicated on the Ballot by **5:00 p.m. Pacific Time, on August 24, 2001**. Any failure to follow the voting instructions included with the Ballot may disqualify your Ballot and your vote.

6.      Objections, if any, to the confirmation of the Plan must (i) be in writing, (ii) state the name and address of the objecting party and the nature of the claim or interest of such party, (iii) state with particularity the basis and nature of any objection or proposed modification, and (iv) be filed, together with proof of service, with the Court and served so that they are received no later than **4:00 p.m. Eastern Time on August 24, 2001** by (a) the Clerk of the Court, (b) attorneys for the Genesis Debtors, Weil, Gotshal & Manges LLP, 767 Fifth Avenue, New York, New York 10153 (Attn: Gary T. Holtzer, Esq.) and Richards, Layton & Finger, P.A., One Rodney Square, P.O. Box 551, Wilmington, Delaware 19899 (Attn: Mark D. Collins, Esq.), (c) attorneys for the Multicare Debtors, Willkie Farr & Gallagher, 787 Seventh Avenue, New York, New York 10019-6099 (Attn: Paul V. Shalhoub, Esq.) and Young Conaway Stargatt & Taylor, 11th Floor, Wilmington Trust Company, P.O. Box 391, Wilmington, Delaware 19899-0391 (Attn: Robert S. Brady, Esq.), (d) attorneys for Mellon Bank, N.A., as agent for the Genesis Debtors' prepetition senior lenders and postpetition lenders and the Multicare Debtors' prepetition senior lenders and postpetition lenders (the "Agent"), Morgan, Lewis & Bockius, 101 Park Avenue, New York, New York, 10178 (Attn: Richard S. Toder, Esq.) and Klett Rooney Lieber & Schorling, The Brandywine Building, 1000 West Street, Wilmington, Delaware 19801 (Attn: Teresa Currier, Esq.), (e) attorneys for the statutory committee of unsecured creditors appointed in the Genesis Debtors' chapter 11 cases (the "Genesis Committee"), Akin, Gump, Strauss, Hauer & Feld, L.L.P., 590 Madison Avenue, New York, New York 10022 (Attn: Lisa Beckerman, Esq.) and Pachulski, Stang, Ziehl, Young, & Jones, P.C., 919 N. Market Street, 16th Floor, P.O. Box 8075, Wilmington, Delaware 19899-8705 (Attn: Laura Davis Jones, Esq.), (f) attorneys for the statutory committee of unsecured creditors appointed in the Multicare Debtors' chapter 11 cases (the "Multicare Committee"), Kasowitz, Benson,

Torres & Friedman LLP, 1633 Broadway, New York, New York 10019 (Attn: David S. Rosner, Esq.) and Saul Ewing LLP, 222 Delaware Avenue, Suite 1200, P.O. Box 1266, Wilmington, Delaware 19899 (Attn: Mark Minuti, Esq.), and (g) the United States Trustee for the District of Delaware, 601 Walnut Street, Curtis Center, Suite 950 West, Philadelphia, Pennsylvania 19106 (Attn: Joseph McMahon, Esq.). Objections not timely filed and served in the manner set forth above shall not be considered and shall be overruled.

Dated: July 31, 2001

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Michael F. Walsh
Gary T. Holtzer

-and-

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
P.O. Box 551
Wilmington, Delaware 19899
Mark D. Collins (No. 2981)

ATTORNEYS FOR THE GENESIS
DEBTORS AND DEBTORS IN
POSSESSION

WILLKIE FARR & GALLAGHER
787 Seventh Avenue
New York, New York 10019-6099
Marc Abrams
Paul V. Shalhoub

-and-

YOUNG CONAWAY STARGATT &
TAYLOR
11th Floor, Wilmington Trust Company
P.O. Box 391
Wilmington, Delaware 19899-0391
Robert S. Brady (No. 2847)

ATTORNEYS FOR THE MULTICARE
DEBTORS AND DEBTORS IN
POSSESSION